1    William Lee Kelly

2    6126 Leaning Rock Ct. N. Las Vegas, NV 89031

3    P: 702-427-2763

4    Email: William.Lee.Kelly@gmail.com

5    Pro Se Plaintiff

6

7                    **IN THE UNITED STATES DISTRICT COURT**
8                        **FOR THE DISTRICT OF NEVADA**

9

10   William Lee Kelly                              2:25-cv-01195-APG-DJA
11   Plaintiff,                                **COMPLAINT**

12   vs.

13   Financial Industry Regulatory Authority      DEMAND FOR JURY TRIAL
14   (FINRA)                                       Yes ☑   No ☐
15   Defendant.

16                              **JURISDICTION**

17   1.   This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331**
18        because the claims arise under the Constitution and laws of the United States, including
19        alleged violations of the **Due Process Clause of the Fifth Amendment** and relevant
20        provisions of the Securities Exchange Act of 1934. Jurisdiction is also proper under
21        **diversity jurisdiction** because none of the plaintiffs live in the same state as any of the
22        defendants and the amount of damages is more than $75,000.

23                                **VENUE**

24   2.   Venue is proper in the District of Nevada under **28 U.S.C. § 1391**(b)(2) because a
25        substantial part of the events or omissions giving rise to the claim occurred within this
26        District. Plaintiff resides in this District, and the harm resulting from Defendant's conduct
27        was felt here.

28   3.   FINRA maintains its principal place of business in Washington, D.C., but its conduct had
29        direct and harmful effects on investors nationwide, including the Plaintiff in this District.

30

31

## INTRADISTRICT ASSIGNMENT

4.  Because this lawsuit arose in Clark County, it should be assigned to the Southern
    Division of this Court.

## PARTIES

5.  Plaintiff is a United States Army veteran residing at 6126 Leaning Rock Ct. North Las
    Vegas, Nevada 89031 and can be contacted at 702-427-2763. Plaintiff was an investor in
    the security known as MMTLP and suffered direct financial harm and due process
    violations as a result of actions taken by Defendant FINRA.

6.  Defendant Financial Industry Regulatory Authority, Inc. (FINRA) is a private corporation
    acting under Congressional mandate as a self-regulatory organization (SRO) for broker-
    dealers in the United States. FINRA is headquartered at 1735 K Street NW, Washington,
    D.C. 20006. It is tasked with overseeing securities markets, regulating broker-dealers,
    and enforcing compliance with financial industry rules. FINRA operates under the
    oversight of the U.S. Securities and Exchange Commission ("SEC").

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

7.  This action is brought by Plaintiff, a retail investor and shareholder of MMTLP, seeking
    redress for actions taken by the Financial Industry Regulatory Authority, Inc. ("FINRA")
    that exceeded the scope of its lawful authority and resulted in significant financial harm
    and constitutional due process violations.

8.  Plaintiff alleges that on or around December 8, 2022, FINRA published a revised
    corporate action notice regarding the security MMTLP. This notice omitted the *Pay Date*
    for the distribution of shares in Next Bridge Hydrocarbons, Inc., and stated that the
    MMTLP symbol would be deleted effective December 13, 2022 (Exhibit C). This
    contradicted the public statements made by Meta Materials Inc., which had clearly
    communicated that the record date would be December 12, 2022, and the distribution
    (Pay) date would occur after market close on December 14, 2022 (Exhibit A).

9.  Rather than correcting the confusion introduced by the revised corporate action, FINRA
    imposed a **U3 trading halt** on MMTLP effective December 9, 2022—prior to the record
    date—freezing trading activity and preventing shareholders from buying, selling, or
    managing their positions in what would have been the final days of trading (Exhibit E).

10. Plaintiff contends that FINRA's publication of an incomplete and misleading corporate
    action notice, and its subsequent decision to halt trading based on the very instability it
    helped create, constitutes an abuse of discretion, a violation of procedural due process,

67  and an overreach beyond its statutory and delegated authority as a self-regulatory
68  organization.

11. Plaintiff seeks declaratory relief, damages, and other appropriate remedies to hold FINRA
    accountable for the harm caused by its mismanagement and failure to adhere to
    fundamental principles of fairness, accuracy, and transparency.

## FACTUAL BACKGROUND

12. The preferred share known as MMTLP was created as a result of the reverse merger
    between Torchlight Energy Resources, Inc. ("TRCH") and Meta Materials Inc. ("Meta
    Materials" or "MMAT"), in which TRCH shareholders were issued preferred shares to
    retain rights to TRCH's legacy oil and gas assets. These assets were later designated for
    spinoff into a new entity, Next Bridge Hydrocarbons, Inc. ("Next Bridge"). In connection
    with the planned spinoff, Meta Materials issued a corporate communication to its
    shareholders stating that the distribution date of Next Bridge shares would be December
    14, 2022, with a record date of December 12, 2022. Following the distribution, Next
    Bridge would become a privately held company, and the Series A Preferred shares
    (MMTLP) would be canceled (Exhibit A).

13. On December 6, 2022, FINRA published an initial Corporate Action Notice that
    incorrectly stated MMTLP shares would be canceled effective December 13, 2022, one
    day prior to the issuer's stated Pay Date. This misalignment with Meta Materials' public
    disclosures caused immediate concern among investors and market participants (Exhibit
    B).

14. On December 7, 2022, Jeff Mendl, Vice President of OTC Markets, publicly stated that
    the last day for trading MMTLP would be December 12, 2022, aligning with Meta
    Materials' record date. During the interview, Mendl used the term "deleted," which did
    not appear in FINRA's initial corporate action notice but was later introduced in FINRA's
    revised notice on December 8, 2022. This suggests that Mendl may have had prior
    knowledge of the upcoming revision to the corporate action notice. His emphasis on the
    December 12 trading date underscores the disruption caused by FINRA's premature U3
    trading halt on December 9, 2022, and highlights the confusion surrounding FINRA's
    action. (Exhibit AF)

15. On December 8, 2022, FINRA published a revised Corporate Action Notice that further
    compounded the confusion. The revised notice omitted any reference to the distribution
    or pay date of December 14th and changed the status of MMTLP shares from being
    "cancelled" to "deleted," still listing the effective date as December 13, 2022 (Exhibit C).
    The omission of the Pay Date, along with the premature deletion date, created a material
    inconsistency with the issuer's guidance. By effectively terminating trading one day prior

104 to the correct distribution date and omitting critical information, this revised notice
105 introduced market confusion, undermined fair access, and contributed to the basis for the
106 U3 trading halt.

107 16. As a result of this discrepancy, concern grew regarding how unsettled trades would be
108 handled, and whether purchasers in the final trading days would receive the distribution.
109 FINRA cited these concerns—created by its own corporate action notices—as
110 justification to implement a U3 trading halt on MMTLP effective December 9, 2022,
111 three days prior to the final anticipated trading day of December 12, the record date. This
112 decision effectively froze all trading activity and blocked investors from managing or
113 liquidating positions ahead of the spinoff. (Exhibit E)

114 17. The halt became permanent. MMTLP was never reopened for trading, and investors were
115 forcibly transitioned into holding shares of a non-traded, privately held company—Next
116 Bridge Hydrocarbons—without an opportunity to respond, exit, or otherwise manage
117 their investments during the final days of public trading. (Exhibit AA)

118 18. FINRA later issued a public FAQ attempting to justify the U3 halt on the basis of risks to
119 orderly settlement (Exhibit D). However, the disruption cited by FINRA was directly
120 caused by its own failure to accurately reflect the issuer's timeline in the December 8
121 Corporate Action Notice and failures to adhere to FINRA Rule 6490 and FINRA Rule
122 3110 (Exhibit I). This flawed revision introduced market uncertainty, failed to include the
123 critical Pay Date, and conflicted with Meta Materials' public guidance.

124 19. Prior to the trading halt, the Next Bridge Hydrocarbons prospectus, filed with the SEC,
125 explicitly referenced the potential for a short squeeze and the possibility that the value of
126 MMTLP shares could "rise significantly" (Exhibit AH). This statement, which was
127 specifically required by the SEC before approval, reveals the significant market pressure
128 and potential volatility that FINRA "ignored" when it decided to impose the U3 trading
129 halt on December 9, 2022. By failing to account for the real possibility of a short
130 squeeze, and by instead protecting the interests of those involved in the manipulation of
131 MMTLP—including naked short selling—FINRA acted with willful disregard for its duty
132 to protect investors and ensure market fairness. This coordinated failure to act on the
133 potential for market volatility and manipulation further supports the claim that FINRA's
134 actions were not only arbitrary but may have been designed to shield certain market
135 participants from the consequences of their illegal activities, including the failure to cover
136 short positions. As a result, Plaintiff and other investors were deprived of their rights to
137 manage their investments without due process, further amplifying the harm caused by
138 FINRA's actions.

139

20. In the 9 days leading up to the reverse merger between TRCH and MMAT, an estimated 320 million shares were shorted (Exhibit AL) despite a TRCH float of only 165 million shares (Exhibit AM), indicating naked short selling and potential market manipulation. When MMTLP began trading shortly after the merger, it opened at $0.01, with about 3 million shares quickly bought at that price, allowing hedge funds to cover their massive short positions at the lowest possible price. This trading event, which was initially intended to be a non-tradable preferred share (Exhibit AN), directly correlates with the failure to cover short positions prior to the merger and further underscores the manipulation that FINRA failed to address. By allowing MMTLP to become tradable without an accurate Form 211, FINRA effectively facilitated the protection of illegal short selling activities and deprived investors of their property rights through the U3 halt.

21. Furthermore, on February 8, 2024, Greg McCabe, CEO of Next Bridge Hydrocarbons, publicly disclosed that foreign firms had approached Next Bridge seeking to purchase shares far exceeding the 2.65 million short shares FINRA reported (Exhibit AJ). McCabe also pointed out the limitations of FINRA's ability to oversee foreign firms and disputed FINRA's characterization of the short interest position as "nominal." This disclosure directly contradicts FINRA's short interest estimate, highlighting the significant investor demand that FINRA failed to account for when imposing the trading halt. The failure to recognize the scale of investor interest, coupled with the inability to properly oversee foreign firms involved in the transaction, further underscores the unjustified and arbitrary nature of FINRA's actions and the continuing harm caused by its decision to halt trading.

22. Greg McCabe also disputes FINRA's role in the corporate actions, emphasizing the discrepancy between Meta Materials' stated distribution date of December 14, 2022, and FINRA's deletion date of December 13, 2022 (Exhibit AK). McCabe pointed out that this discrepancy exacerbated confusion for investors and further highlights the flaws in FINRA's handling of the corporate action. This misalignment in dates further supports the claim that FINRA's actions were arbitrary, violated FINRA rule 6490, and led to the deprivation of investors' rights without due process.

23. Moreover, in April 2024, a Schedule 13D filed by BiTech Technologies Corporation disclosed the reuse of CUSIP 89102U103 (Exhibit X)— the same identifier originally assigned to Torchlight Energy Resources which eventually became MMTLP during the reverse-merger (Exhibit Y & Z). This duplication, occurring well over a year after the U3 trading halt, reflects a continuing breakdown in regulatory oversight by FINRA and the SEC. The failure to prevent the reassignment of a known, controversial CUSIP—without investor notice, guidance, or corrective action—demonstrates ongoing procedural negligence. This event further underscores Plaintiff's claim that FINRA has not only deprived investors of property without due process but continues to perpetuate systemic confusion and harm within the marketplace.

24. Plaintiff contends that FINRA's conduct constituted more than administrative error; it represented a misuse of regulatory discretion. By publishing materially incomplete and misleading corporate action data—and subsequently using that misinformation as justification for halting all trading—FINRA acted in a manner inconsistent with its duties to protect market integrity and ensure fair access.

25. Additionally, Plaintiff asserts that the following FINRA Rules may have been violated throughout FINRA's handling of MMTLP—from the initial phases of its trading through the U3 halt and beyond. These potential violations include systemic regulatory failures and a pattern of conduct that undermined transparency, trading integrity, and shareholder rights.

**Rule 6490(d)(3)**: Failure to verify that issuer documentation supported corporate action timing. (Exhibit A, B, & C)

**Rule 6440**: Imposing a U3 halt without sufficient transparency or justified extraordinary circumstances. (Exhibit D, E, & I)

**Rule 6432**: Failure to ensure compliance with required Form 211 filings prior to quoting or trading a security. (Exhibit G & AN)

**Rule 4320**: Mishandling of trading in OTC securities subject to corporate actions. (Exhibit A, B, C, & K)

**Rule 2010**: Failure to observe high standards of commercial honor and just and equitable principles of trade. (Exhibit H, L, M, X, Y & Z)

**Rule 3310**: Potential failure to maintain an adequate anti-money laundering compliance program amid irregular trading behavior. (Exhibit H)

**Rule 2261**: Failure to make financial and operational condition disclosures to investors. (Exhibit K)

**Rule 3110**: Inadequate supervisory systems in reviewing and approving the corporate action timeline. (Exhibit A, B, C, & I)

**Rule 6140**: Misleading dissemination of trading information. (Exhibit B, C, & K)

**Rule 8210**: Failure to respond fully and transparently to lawful requests for information by investors and third parties. (Exhibit H & F)

26. Moreover, FINRA's conduct may implicate the following SEC Rules and Regulations:

**SEC Rule 10b-5**: Engaging in manipulative or deceptive practices by failing to disclose material information accurately. (Exhibit C, J, K, L, X, Y, & Z)

**SEC Rule 17a-4**: Failure to maintain required records related to the corporate action and halt decision. (Exhibit K)

**SEC Rule 15c2-11**: Potential irregularities in initiating or continuing quotations in MMTLP without adequate issuer information. (Exhibit G, X, Y, Z, & AN)

**SEC Rule 15(b)(6)**: Failure to enforce compliance with rules designed to prevent fraudulent and manipulative acts, promote just and equitable principles of trade, and protect investors, thereby abdicating statutory responsibilities delegated by the SEC. (Exhibit L & M)

**Reg SHO Rule 204**: Concerns of persistent settlement failures and failure to close out short positions in MMTLP. (Exhibit J, K, L, & M)

27. The lack of corrective action, public transparency, or investor remedies by FINRA over the subsequent two and a half years has resulted in sustained financial and procedural harm to Plaintiff and thousands of similarly situated investors. As of the filing of this complaint, the U3 trading halt remains unresolved, and affected investors have not been afforded due process or restitution. This ongoing neglect has drawn concern from members of Congress (Exhibit F), including Congresswoman Barbara Lee, who in a letter dated December 4, 2023, called for accountability and transparency regarding the handling of MMTLP and the unresolved trading halt (Exhibit AE).

28. These failures represent not merely a technical misstep, but a systemic breakdown in FINRA's execution of its regulatory duties. All the events leading up to and following the U3 halt merit judicial scrutiny, declaratory relief, and legal redress.

## CLAIMS FOR RELIEF

### Count I: Abuse of Regulatory Authority Resulting in Due Process Violations committed by FINRA

23. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein

24. The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." This constitutional guarantee applies not only to governmental entities but also to quasi-governmental organizations, such as FINRA, when acting under the color of federal authority.

25. FINRA, acting in its capacity as a self-regulatory organization (SRO) under delegated authority from the U.S. Securities and Exchange Commission (SEC), issued a revised Corporate Action Notice on or around December 8, 2022, which removed the issuer-designated Pay Date of December 14, 2022, and instead listed the MMTLP symbol as

245    "deleted" effective December 13, 2022 (Exhibit C). This directly contradicted the
246    distribution schedule publicly disclosed by Meta Materials Inc. (Exhibit A & AO),
247    generated widespread confusion among market participants, and destabilized orderly
248    trading.

249    26. FINRA subsequently imposed a sudden an indefinite U3 trading halt on December 9,
250    2022 (Exhibit E), three days before the final anticipated trading day and record date. This
251    abrupt action deprived Plaintiff and other shareholders of the opportunity to sell, transfer,
252    or manage their securities, effectively locking their assets without advance notice, an
253    opportunity to be heard, or any form of recourse.

254    27. The trading halt was justified by FINRA on the grounds of uncertainty in settlement and
255    clearance processes (Exhibit I), including DTC ineligibility and the potential for trades
256    not to settle before the record and distribution dates. However, the very uncertainty
257    FINRA cited was a direct consequence of its own flawed notice—which omitted the Pay
258    Date, designated a premature share deletion, and failure to adhere to applicable SEC &
259    FINRA regulations.

260    28. In issuing that notice and then citing the resulting confusion as justification for halting the
261    market, FINRA acted as both the cause and enforcer of the disruption — thereby abusing
262    its regulatory discretion. Brokers, including TradeZero (Exhibit AB), Interactive Brokers
263    (Exhibit AC), and Ameritrade (Exhibit AG) had already communicated to holders that
264    MMTLP would remain tradable through December 12 and that Short Positions would be
265    forcibly closed (Exhibit AB). Even OTC Markets Vice President Jeff Mendl publicly
266    affirmed trading continuity as late as December 7 on Trader TV Live (Exhibit AF). The
267    halt thus interrupted a knowingly functional market, making FINRA's action even more
268    arbitrary and harmful. These actions violated the Fifth Amendment guarantee of due
269    process by depriving Plaintiff of property rights without proper notice or legal procedure.
270    The ability to buy, sell, or liquidate securities is a fundamental economic liberty protected
271    under the Constitution when government-delegated entities act in ways that carry the
272    force of law.

273    29. FINRA is not immune from judicial review when it operates beyond the scope of its
274    delegated authority, or in a manner that is arbitrary, capricious, or contrary to law. Its
275    conduct in this case represents a gross overreach and a fundamental breakdown of its
276    duty to maintain market integrity and protect investors.

277    30. As a direct result, Plaintiff has suffered financial losses (Exhibit N), emotional distress,
278    and an ongoing deprivation of property rights, and seeks compensatory and equitable
279    relief as determined by this Court.

280

281

282

283

284  **Count II: Negligent Failure to Adhere to Mandated Regulatory Procedures committed by**
285  **FINRA**

286  20. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully
287  set forth herein.

288  21. As a self-regulatory organization operating under the authority of the Securities Exchange
289  Act of 1934, FINRA is required to adhere to established regulatory protocols, including
290  its own rules—such as FINRA Rules 6490, 6440, and 2010—as well as relevant SEC
291  oversight and guidance. These rules exist to ensure transparency, accuracy, and investor
292  protection in market activity.

293  22. In publishing a Corporate Action Notice for MMTLP on December 8, 2022, that omitted
294  the issuer-designated Pay Date and prematurely listed the MMTLP symbol as deleted
295  effective December 13, 2022 (Exhibit C), FINRA failed to align its notice with the
296  information publicly disclosed by Meta Materials Inc. (Exhibit A). This discrepancy
297  breached FINRA Rule 6490(d)(3), which mandates verification of issuer-submitted data
298  for completeness and accuracy prior to publication.

299  23. Rather than correcting this procedural failure, FINRA invoked Rule 6440 to impose a U3
300  trading halt, citing the very confusion and settlement disruption caused from the flawed
301  corporate action (Exhibit I). This action amplified the harm to investors and created an
302  immediate market closure that denied Plaintiff and others the opportunity to manage or
303  divest their positions.

304  24. FINRA's conduct reflects gross regulatory negligence, a failure to supervise and
305  communicate transparently, and a dereliction of its duty to ensure orderly market
306  functioning. This negligence directly contributed to the deprivation of property rights, a
307  collapse in investor trust, and market dysfunction. Internal communications obtained via
308  FOIA reveal that Sam Draddy, FINRA's Head of Market Regulation, was aware of "fraud
309  detected" related to MMTLP prior to the halt, yet no meaningful enforcement, disclosure,
310  or investor protection followed (Exhibit AD). This failure to act on known indicators of
311  fraud further exemplifies the depth of FINRA's regulatory breakdown and abandonment
312  of its oversight responsibilities.

313  25. As a direct result, Plaintiff suffered economic damages (Exhibit N), emotional distress,
314  and loss of due process protections. FINRA's failure to fulfill its procedural obligations is
315  actionable under both statutory and constitutional principles and warrants judicial
316  intervention and appropriate remedies.

317  **Count III: Deprivation of Property Without Due Process of Law (Fifth Amendment**
318  **Violation) Committed by FINRA**

319   26. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully
320        set forth herein.

321   27. The Fifth Amendment to the United States Constitution provides that no person shall be
322        "deprived of life, liberty, or property, without due process of law." This constitutional
323        guarantee applies not only to governmental entities but also to quasi-governmental
324        organizations, such as FINRA, when acting under the color of federal authority.

325   28. Plaintiff held a legitimate property interest in MMTLP securities—lawfully acquired and
326        publicly traded shares—which entitled Plaintiff to sell, transfer, or otherwise dispose of
327        these securities in the open market.

328   29. By imposing a sudden, indefinite U3 trading halt on December 9, 2022 (Exhibit E),
329        FINRA effectively froze Plaintiff's assets, denying all market access, communications,
330        and transactional options—without prior notice, public justification, or an opportunity for
331        investors to be heard.

332   30. This halt was not triggered by external volatility or issuer misconduct, but by FINRA's
333        own conflicting and inaccurate corporate action notices—first on December 6, which
334        incorrectly indicated cancellation prior to the actual distribution date, and then on
335        December 8, which omitted the distribution date entirely and introduced further
336        ambiguity. These procedural missteps manufactured the settlement concerns FINRA
337        subsequently cited to justify the halt, rendering it both the architect and executor of the
338        disruption.

339   31. Despite FINRA's acknowledgment that over 2.6 million short positions exist in the now-
340        private Next Bridge Hydrocarbons (Exhibit L), no resolution or path to restitution has
341        been offered (Exhibit AI). This prolonged inaction demonstrates a failure to fulfill
342        FINRA's core regulatory obligations and reflects a disregard for its statutory duty to
343        protect investors, ensure market fairness, and remedy harm caused under its supervision.
344        Such inaction supports claims of violations under SEC Rule 15A(b)(6), showing a failure
345        to enforce compliance with anti-fraud provisions and to uphold just and equitable
346        principles of trade. The absence of corrective action, clear investor communication, or
347        meaningful post-halt remedies—despite widespread outcry and repeated requests—
348        reflects a deliberate indifference to the procedural protections guaranteed by law.

349   32. Plaintiff has submitted formal complaints to multiple oversight and enforcement
350        authorities regarding FINRA's conduct in connection with the MMTLP trading halt,
351        including the U.S. Securities and Exchange Commission (SEC) (Exhibit O), the SEC
352        Office of Inspector General (OIG)(Exhibit P), the SEC Office of the Ombudsman
353        (Exhibit Q), the Internet Crime Complaint Center (IC3) affiliated with the Federal Bureau
354        of Investigation (Exhibit R), the Nevada Secretary of State (Exhibit S), and the Nevada

355 Attorney General (Exhibit T). Additionally, Plaintiff has written letters to U.S.
356 Congressman Steven Horsford (Exhibit U & V) and U.S. Senator Catherine Cortez Masto
357 (Exhibit W) seeking intervention and transparency. Despite these extensive efforts, no
358 corrective action, formal investigation findings, or meaningful restitution has been
359 provided. This widespread institutional inaction further underscores the denial of
360 procedural protections and supports Plaintiff's claim of a Fifth Amendment due process
361 violation.

362 33. FINRA's conduct constitutes a clear violation of the Fifth Amendment, as Plaintiff and
363 similarly situated investors were deprived of property without due process of law through
364 actions taken under the color of delegated federal authority.

365 34. As a direct and proximate result of this constitutional violation, Plaintiff has suffered
366 monetary loss (Exhibit N), emotional harm, and a profound erosion of trust in the
367 institutions charged with safeguarding investor rights and market integrity.

368

369        **PRAYER FOR RELIEF**

370 WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and
371 against Defendant FINRA, and grant the following relief:

372 I. **Declaratory Relief** – A judicial declaration that Defendant FINRA acted ultra vires
373  (beyond the scope of its regulatory authority) and in violation of applicable laws, rules,
374  and constitutional protections in connection with the publication of the MMTLP
375  corporate actions and the imposition of the U3 trading halt, specifically including a
376  failure to adhere to relevant SEC and FINRA rules and regulations.

377 II. **Compensatory Damages** – An award of compensatory damages in an amount to be
378  determined at trial, but not less than the total value of Plaintiff's MMTLP shares as of the
379  date of the U3 trading halt (December 9, 2022). This includes, but is not limited to, any
380  loss of investment value, unrealized gains, and the financial harm caused by the inability
381  to manage or liquidate Plaintiff's MMTLP shares due to FINRA's actions, including the
382  loss of opportunity during the trading halt.

383 III. **Punitive Damages** – An award of punitive damages in an amount sufficient to punish
384  and deter similar future conduct by FINRA and other self-regulatory organizations
385  operating under governmental oversight.

386 IV. **Equitable Relief**

387   a. An order compelling FINRA to produce all records, communications, and internal
388    documentation related to its handling of the MMTLP corporate action, the U3 halt

389          decision, and any known anomalies in short interest, broker-dealer conduct, or
390          settlement failures.

391       b.   Correct and clarify the mistakes and omissions in the corporate action notices and
392          provide affected investors with a mechanism to regain control over their
393          investments or receive restitution, including potential financial compensation for
394          the ongoing freeze on MMTLP shares.

395   V.    **Costs and Fees** – An award of all reasonable costs incurred in bringing this action,
396          including court filing fees and any future litigation-related expenses. Attorney's fees are
397          not requested at this time but may be sought if counsel is retained during the course of
398          this action

399   VI.    **Any Further Relief** – Any other and further relief that the Court deems just, proper, and
400          equitable under the circumstances.

401   VII.    **Reservation of Rights to Amend** – Plaintiff reserves the right to amend this Complaint,
402          including the demand for damages, upon the discovery or disclosure of additional
403          material facts. This includes, but is not limited to, evidence of MMTLP trades executed at
404          significantly higher valuations that were reversed, blocked, or otherwise interfered with
405          as a result of Defendant FINRA's actions.

406                           **DEMAND FOR JURY TRIAL**

407     ◉ Plaintiff demands a jury trial on all issues.

408   Respectfully Submitted,

409   Dated: July 2, 2025

410   **William Lee Kelly**
411   **Plaintiff, Pro Se**
412   6126 Leaning Rock Ct.
413   North Las Vegas, NV 89031
414   Email: William.Lee.Kelly@gmail.com
415   Phone: (702)427-2763         Signature: _____

416

417

418

419

420    **EXHIBIT INDEX**

421    **Exibit**              **Description**

422    A              Meta Materials Inc. Press Release – November 23, 2022

423    B              FINRA Corporate Action Notice – December 6, 2022

424    C              FINRA Corporate Action Notice – December 8, 2022

425    D              FINRA MMTLP Trading Halt FAQ – Released March 16, 2023

426    E              FINRA Uniform Practice Advisory #35-22 – December 9, 2022 (U3 Halt)

427    F              74 Member Congressional Letter to the SEC & FINRA – Dec. 22, 2023

428    G              Response from FINRA CEO to Congressional Letter – Jan. 31, 2024

429    H              Response from FINRA CEO to Congressional Letter – Jan. 31, 2024

430    I              Response from FINRA CEO to Congressional Letter – Jan. 31, 2024

431    J              Market Frauds Article claiming Anson Funds admits to Short Selling

432    K              FINRA MMTLP Trading Halt FAQ Referencing FTD's – March 16, 2023

433    L              FINRA FAQ - Short Positions In a Private Company – Nov. 6, 2023

434    M              FINRA FAQ – "Naked" Short Selling FTD Estimates – Nov. 6, 2023

435    N              Charles Schwab Personal Account Statement -  Dec. 31, 2022

436    O              Copy of Complaint submitted to the SEC – Dec. 12, 2022

437    P              Copy of Complaint submitted to SEC OIG – May 6, 2025

438    Q              Copy of Complaint submitted to SEC OMBUD – Feb. 18, 2025

439    R              Copy of Complaint to FBI IC3 – Feb. 14, 2025

440    S              Copy of Complaint to Nevada Secretary of State – Jan. 28, 2025

441    T              Copy of Complaint to Nevada Attorney General – June 14, 2024

442    U              Initial Response letter from Congressman Horsford – June 6, 2024

443    V              Second Response letter from Congressman Horsford – June 12, 2024

444    W              Response letter from the office of Senator Cortez-Maso – May 15, 2025

445    X              BiTech Technologies utilization of MMTLP CUSIP – April 24, 2024

446    Y              TRCH/MMTLP filing verifying CUSIP Number – December 31, 2020

447    Z              Further Verification of the TRCH/MMTLP CUSIP – June 25, 2021

| 448 | **Exhibit** | **Description** |
|---|---|---|
| 449 | AA | Trading Data for MMTLP from Nov 21, 2022 to the U3 Halt |
| 450 | AB | TradeZero's Correspondence to MMTLP Holders Pre-Halt |
| 451 | AC | Interactive Brokers Correspondence to MMTLP Holders |
| 452 | AD | FOIA Request Showing Sam Draddy's Correspondence With the SEC |
| 453 | AE | Letter From Congresswoman Barbara Lee – Dec. 4, 2023 |
| 454 | AF | VP of OTC Jeff Mendl Video discussing MMTLP Deletion - Dec. 7, 2022 |
| 455 | AG | Ameritrade Correspondence to MMTLP Holders Pre-Halt |
| 456 | AH | Next Bridge Prospectus referencing an MMTLP Short Squeeze |
| 457 | AI | NBH acknowledgement of Attempts to Resolve Share Imbalance |
| 458 | AJ | NBH Disputes 2.65m Short Estimated Provided by FINRA in FAQ |
| 459 | AK | NBH Disputes FINRA's Role in the Corporate Actions |
| 460 | AL | Short Volume Data for TRCH Final days Before Reverse Merger |
| 461 | AM | Outstanding Share count of the Series A Preferred Share (MMTLP) |
| 462 | AN | Former CEO of TRCH Discussing Trading of the Series A preferred Share |
| 463 | AO | Legal Statement by George Palikaras regarding FINRA's Corp. Action |
| 464 | | |
| 465 | | |
| 466 | | |
| 467 | | |
| 468 | | |
| 469 | | |
| 470 | | |
| 471 | | |
| 472 | | |
| 473 | | |
| 474 | | |

475    **EXHIBIT A**

476    **Meta Material Inc. Press Release – November 23, 2022**

477    **Subject:** Announcement of Distribution of Next Bridge Hydrocarbons, Inc. Shares and Series A
478    Preferred Stock Cancellation (Support for violating FINRA Rule 6490)

479    **Source:** https://metamaterial.com/meta-materials-inc-board-of-directors-approves-
480    planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-
481    inc/?utm_source=chatgpt.com

482

# META MATERIALS INC. BOARD OF DIRECTORS APPROVES PLANNED COMPLETION OF THE SPIN-OFF OF NEXT BRIDGE HYDROCARBONS INC.

**HALIFAX, NS / ACCESSWIRE / November 23, 2022 /** Meta Materials Inc. (the "Company" or "META®") (NASDAQ:MMAT, FSE:MMAT), a developer of high-performance functional materials and nanocomposites, today announced that its board of directors has approved the distribution to the holders of META's Series A Non-Voting Preferred Stock ("Series A Preferred Stock" which is currently traded over-the-counter, or OTC, under the symbol MMTLP) of 100% of the common stock of META's wholly owned subsidiary, Next Bridge Hydrocarbons, Inc. ("Next Bridge") in accordance with the Distribution Agreement between META and Next Bridge. Upon completion of the distribution, Next Bridge will be an independent public reporting company, but the Next Bridge common stock is not and will not be publicly traded and will not be eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation.

Subject to certain conditions, including, among others, completion of all necessary actions and filings with regard to applicable state securities or "blue sky" laws and final FINRA approval, for which there can be no assurances that such approval will be given, each holder of Series A Preferred Stock as of 4 p.m. ET on December 12, 2022, (the record date for the distribution), will be entitled to receive one share of Next Bridge common stock for every one share of Series A Preferred Stock held as of the record date. The shares of Next Bridge common stock will be distributed on December 14, 2022 after the close of the trading markets, at which time (i) all of the shares of Series A Preferred Stock will be automatically cancelled, (ii) the holders of such Series A Preferred Stock will cease to have any rights with respect to such shares and (iii) the shares of Series A Preferred Stock, MMTLP, will no longer be tradable on the OTC market.

**Archives**

2024
2023
2022
2021
2020
2019
2018
2017
2016
2014

483
484
485
486

487    **EXHIBIT B**

488    **FINRA Corporate Action Notice – December 6, 2022**

489    **Subject:** Initial Corporate Action for MMTLP – Cancellation Date and Distribution Terms
490    (Support for violating FINRA Rule 6490, Rule 6140)

491    **Source:** https://otce.finra.org/otce/dailyList

492



493
494
495
496

497    **EXHIBIT C**

498    **FINRA Corporate Action Notice – December 8, 2022**

499    **Subject:** Revised Corporate Action for MMTLP – Symbol Deletion Effective 12/13/2022

500    (support for violating FINRA rule 6490 and 6140 and SEC Rule 10b-17)

501    **Source:** https://otce.finra.org/otce/dailyList

502



503

504

505

506

507

508     **EXHIBIT D**

509     **FINRA Frequently Asked Questions (FAQ) Regarding the MMTLP Trading Halt – March**

510     **16, 2023** (Support for Violating FINRA Rule 6440)

511     **Subject:** FINRA's Public Explanation for the U3 Trading Halt and Related Market Disruption

512     **Source:** https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-

513     halt?utm_source=chatgpt.com

### 1. Why did FINRA halt trading in MMTLP?

FINRA is permitted under its rules to impose a quoting and trading halt in an OTC equity security where FINRA determines that an extraordinary event has occurred or is ongoing that has had a material effect on the market for the security or has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process. FINRA made such a determination for MMTLP and halted trading on December 9.

Among FINRA's concerns were the facts that, after December 12, the MMTLP shares would cease to be DTC-eligible; MMTLP shares would be cancelled at the time of the distribution (*i.e.*, December 14); and Next Bridge common stock was not expected to be DTC-eligible—raising uncertainty regarding how transactions executed after December 8 would settle in an orderly manner in relation to these dates. Had MMTLP continued trading after December 8, there was the possibility that investors buying MMTLP during that time period may not have realized that those shares were about to be cancelled by Meta Materials, that they may not receive MMTLP shares before they were cancelled, and that they would not be recorded on December 12 as MMTLP holders eligible to receive Next Bridge common stock in the distribution.

### 2. Why did FINRA halt trading on December 9 if shareholders as of December 12 were entitled to receive the Next Bridge distribution?

FINRA halted trading in MMTLP on Friday, December 9, because securities transactions typically must settle within two business days in accordance with SEC rules. This means that trades in MMTLP executed on December 8 typically would settle on December 12, while trades executed on December 9 or December 12 typically would not settle until after December 12. This is important because a seller ceases to be a holder of shares and a purchaser becomes a holder of shares only after a transaction settles. Therefore, for purposes of the Next Bridge / MMTLP corporate action, only those trades in MMTLP that were executed on or before December 8 typically would have settled in time to establish the purchaser as a new holder of the shares as of December 12.

In addition, after December 12, the MMTLP shares would no longer be DTC-eligible (and the Next Bridge shares were not expected to be DTC-eligible). This means that, after December 12, any unsettled trades in MMTLP would have needed to be handled through broker-to-broker processes outside of DTC. Thus, there was uncertainty about whether trades executed *after* December 8 would settle in an orderly manner, including whether they would settle before the MMTLP shares were cancelled on December 14.

In other words, for trades in MMTLP executed after December 8, the seller of MMTLP shares would still have been recorded as the holder eligible to receive Next Bridge shares as part of the corporate action distribution, and the buyer would not be recorded as eligible to receive Next Bridge shares in the distribution. Moreover, the buyer would have purchased shares that would be cancelled on December 14, and there was uncertainty as to whether these trades would be settled in an orderly manner before the

514     cancellation date. *See also* Question # 7 below.

515

516  **EXHIBIT E**

517  **Subject:** FINRA Trading Halt Advisory – U3 Halt and Symbol Deletion of MMTLP  - December
518  9, 2022 (Support for Violating FINRA Rule 6440)

519  **Source:** https://www.finra.org/sites/default/files/2022-12/UPC-35-2022-
520  MMTLP%28Halt%29_2.pdf?utm_source=chatgpt.com

521



**Attn: Trading and Market Making/Legal and Compliance/Operations/Systems**
**UNIFORM PRACTICE ADVISORY (UPC # 35-22) 12/09/2022**

**Trading and Quotation Halt for META MATERIALS PFD SER A (MMTLP)**

Effective Friday, December 09, 2022, the Financial Industry Regulatory Authority, Inc.
("FINRA") halted trading and quoting in the Series A preferred shares of Meta Materials Inc.
(OTC Symbol: MMTLP). Pursuant to Rule 6440(a)(3), FINRA has determined that an
extraordinary event has occurred or is ongoing that has caused or has the potential to cause
significant uncertainty in the settlement and clearance process for shares in MMTLP and
that, therefore, halting trading and quoting in MMTLP is necessary to protect investors and
the public interest.

The trading and quoting halt will end concurrent with the deletion of the symbol effective
Tuesday, December 13, 2022. *See* updated FINRA Daily List announcement of December 8,
2022, regarding MMTLP; available here: https://otce.finra.org/otce/dailyList.

*See also* Form S1 Registration Statement for Next Bridge Hydrocarbons, Inc. stating that
**"...immediately after the Spin-Off, all shares of Series A Non-Voting Preferred
Stock of Meta shall be cancelled."** Available here:
https://www.sec.gov/Archives/edgar/data/1936756/000119312522281275/d302576ds1a.ht
m.

Questions regarding this notice can be directed to: FINRA Market Operations at
(866) 776-0800, Option 2.

522

523

524

525

526    **EXHIBIT F**

527    **Subject:** Letter from Congressman Ralph Norman to FINRA CEO Robert Cook and SEC Chair
528    Gary Gensler - December 22, 2023 (Support for Violating FINRA Rule 8210)

529    **Source:** https://norman.house.gov/uploadedfiles/rep-norman-mmtlp-letter-2023-12-22-
530    final.pdf?utm_source=chatgpt.com

Please provide a response to the following questions and requests no later than January 31, 2024:

1.  Provide a timeline of trading of MMTLP on the OTC markets; the actions taken by the
    SEC, self-regulatory organizations, the issuers, the transfer agent, and any other relevant
    parties during the time MMTLP was traded; and the transaction that produced Next
    Bridge Hydrocarbon shares.

2.  The Former CEO of Torchlight Energy Resources stated that "MMTLP was never
    designed to trade."[5] Please provide a detailed explanation, including the relevant statutory
    authority and procedures, that allowed for MMTLP shares to trade on the OTC market.

3.  Provide the relevant statutory authority, jurisdiction, and adherence to established
    industry standards regarding the U3 trading halt of MMTLP issued on December 9, 2022.

4.  Provide the exact date and circumstances surrounding FINRA's determination to
    implement the U3 halt, including all unredacted communications between FINRA, SEC,
    governmental agencies, any outside organizations, FINRA members and non-FINRA
    members, and any other individuals. Also include all information surrounding the SEC or
    FINRA's knowledge of the share price in any public or non-public exchange before
    issuance of the U3 halt.

5.  Provide the first date and time that FINRA or its agents advised any market participant in
    any manner that MMTLP would no longer trade on December 9, 2022. Include any
    relevant documents or communication.

6.  Did FINRA issue a Blue Sheet request for MMTLP during the period of October 2021
    through December 2022? Why or why not?

7.  How many questions, complaints, and/or inquiries have you received regarding MMTLP?

8.  Provide the statutory or legal justification used by the SEC and FINRA to ignore public
    requests and congressional inquiries regarding MMTLP.

9.  Provide the delivery of a certified audited and consolidated count of shares that were held
    by all U.S. and foreign financial institutions, together with their clearing firm counter-
    brokers including trades not reported in the consolidated audit trail (CAT), related to
    MMTLP on the date of December 12, 2022. Please include all shares/holdings of long
    and short positions, as well as IOUs held by each participating broker and market
    participant as record owner, beneficial owner, or in any other capacity (each reported
    separately) including but not limited to: all shares registered at AST, all shares held in

531
532
533

534    **EXHIBIT G**

535    **Subject:** Letter from FINRA CEO Robert Cook to Congressman Ralph Norman - Jan. 31, 2024

536    (Support for violating FINRA Rule 6432 & SEC Rule 15c2-11)

537    **Source:** https://norman.house.gov/uploadedfiles/2024-01-31-finra-response-to-rep-norman-

538    regarding-mmtlp.pdf?utm_source=chatgpt.com

539

- Assigning the "MMTLP" symbol upon request of a broker-dealer was standard
  practice given the circumstances, and appropriate to further market transparency.
  When a security trades OTC, FINRA broker-dealers are required by FINRA rules to
  request a stock symbol (if one does not already exist) and report the trade. Then they
  must electronically report the price and size of the executed transaction, which
  FINRA disseminates to the public to provide transparency. This is what occurred in
  the case of MMTLP. Given that a trade had been executed and the company had
  obtained a unique identifier for the security,[4] FINRA assigned the "MMTLP" symbol
  in October 2021. The MMTLP symbol was *not* assigned in connection with a Form

---

[3]   "Examining the Agenda of Regulators, SROs, and Standards-Setters for Accounting, Auditing,"
      Tuesday, December 12, 2023, Capital Markets Subcommittee, House Committee on Financial
      Services. Testimony of Mr. Robert Cook, President and CEO, Financial Industry Regulatory
      Authority (FINRA), available at https://docs.house.gov/meetings/BA/BA16/20231212/116638/HHRG-
      118-BA16-Wstate-CookR-20231212.pdf.

[4]   The issuer had obtained a CUSIP number for the Series A Preferred Shares, which is a unique
      identifier for a security assigned by CUSIP Global Services and used to facilitate trading and
      settlement.

████████████████████████████████████████████████████████

The Honorable Ralph Norman
January 31, 2024
Page 3

211 submission, contrary to some claims made on social media that trading in
MMTLP began based on a Form 211 submitted using fraudulent information.

540

541

542    **EXHIBIT H**

543    **Subject:** Letter from FINRA CEO Robert Cook to Congressman Ralph Norman - Jan. 31, 2024
544    (Support for violating FINRA Rule 2010, Rule 3310, Rule 8210)

545    **Source:** https://norman.house.gov/uploadedfiles/2024-01-31-finra-response-to-rep-norman-
546    regarding-mmtlp.pdf?utm_source=chatgpt.com

-    FINRA has reviewed its members' U.S. trading activity in MMTLP, including short
     sale activity, and has found no evidence that there was significant naked short selling
     (which some social media sources refer to as "counterfeit shares") in MMTLP.  The
     total number of U.S. short positions identified at FINRA members represent only a
     nominal percentage of the total shares issued and outstanding as of December 12,
     2022.  Further, U.S. reported short positions at FINRA members dramatically
     decreased leading up to the last regular day of trading in MMTLP.  In sum, FINRA is
     not aware of any data that supports social media claims of significant naked short
     selling or "counterfeit shares."

-    FINRA cannot perform a "certified audited and consolidated count of shares."
     FINRA's regulatory authority does not extend to domestic or foreign non-member
     entities that could act as custodians or agents holding securities for others, including
     foreign-registered broker-dealers.  Further, the regulatory tools available to FINRA
     do not provide the data that would enable FINRA to perform a share count (*e.g.*, the
     Consolidated Audit Trail, Electronic Blue Sheets, and FINRA's trade reporting
     facilities do not contain information about securities *positions* as described in more
     detail below).  The transfer agent[5] retained by Next Bridge would be the best source
     of information regarding recordholders in Next Bridge common stock.

547

548

549

550

551

552

553

554

555

556

557

558

559  **EXHIBIT I**

560  **Subject:** Letter from FINRA CEO Robert Cook to Congressman Ralph Norman - Jan. 31, 2024

561  (support for violating FINRA Rule 6440)

562  **Source:** https://norman.house.gov/uploadedfiles/2024-01-31-finra-response-to-rep-norman-

563  regarding-mmtlp.pdf?utm_source=chatgpt.com

Some investors continue to question FINRA's reasons for imposing the halt, and we continue to observe inaccurate information circulating on some social media about trading in MMTLP and the trading halt. While we discuss these questions in greater detail below and in our FAQs, it is helpful to first highlight several key facts about trading in MMTLP and FINRA's role:

- FINRA's decision to halt trading was due to clearance and settlement concerns in light of the structure and timing of the corporate action. As a result, ongoing trades after December 8, 2022 would not be settled by December 12, 2022, or predictably thereafter, risking significant investor confusion and harm. Contrary to some theories circulated on social media, FINRA did not initiate the halt because there were problems with a "share imbalance" and "counterfeit shares," or because of short positions held by hedge funds. FINRA also did not provide advance notice of the trading halt to broker-dealers, hedge funds, or any other market participant.

- Investors have expressed confusion regarding whether Meta Materials needed to approve the commencement of trading in MMTLP. Generally, an issuer's approval is not needed for a security to trade outside of a securities exchange, *i.e.*, "over the counter" (OTC), although an issuer may take steps to limit such trading. The issue of whether a security can be publicly traded is governed by the Securities Act and SEC rules; for purposes of these provisions, it does not appear that Meta Materials took effective steps to restrict public trading in MMTLP.

564

565

566

567

568

569

570

571

572

573

574

575    **EXHIBIT J**

576    **Subject:** Article claiming to have documented Evidence of Anson Funds request to cover 10
577    million shorted shares 6 months after MMTLP U3 Halt (Support for violating FINRA Rule 2010,
578    3310, SEC Rule 17a-4 and REG SHO 204)

579    **Source:** https://marketfrauds.to/anson-funds-naked-short-fraud-with-mmtlp/

580

**Anson Funds admits it was naked short 10 million shares**

What happened 6 months later (after Nextbridge was halted) was also interesting: Anson Funds contacted Roth Capital seeking to buy shares of Nextbridge. 10 million shares at $0.30 cents a share to cover their short position. This is all documented

Roth's response was, wait a second, don't you have a borrow?

Anson's response was "no". And the Fund claimed that it wasn't necessary to have a borrow because it was doing an arbitrage play. (This is utterly meaningless and doesn't even make sense, but it was their excuse.)

**Anson Funds openly admitted it had a 10 million share naked short position that had been failing for years, without a borrow.**

Anson pretends to be naive and fumbling its way through the markets, which couldn't be further from the truth. The Fund has top law firms representing it in every endeavor, and is well aware of the legality or illegality of every action. Quite simply, Anson believes it is above the law and can get away with it. And so far, the Fund HAS been operating above the law, with high-level collaborators.

Anson's standard argument is that it didn't understand the rules correctly, and this is what it did with the American Airlines trade, claiming the Fund merely made a mistake on the understanding of the rules which it was subsequently fined for.

https://www.sec.gov/files/litigation/admin/2023/34-98775.pdf

581

582

583

584

585

586

587

588

589

590

591    **EXHIBIT K**

592    **Subject:** FINRA MMTLP Trading Halt FAQ Referencing FTD`s – March 16, 2023

593    **Source:** https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-
594    halt?utm_source=chatgpt.com

595

*Fails-to-Deliver:* The SEC publishes data on the total quantity of "fails-to-deliver" per security as of each reporting settlement date. As the SEC has explained, a fail-to-deliver can occur as the result of either a long or a short sale. For example, a fail-to-deliver can result from a "naked" short sale—where the seller does not borrow or arrange to borrow shares in time to make delivery to the buyer within the standard settlement period. A fail-to-deliver also may result from a long sale where there was a delay in the delivery of shares within the standard settlement period.

Among other things, SEC Regulation SHO imposes close-out requirements for fails-to-deliver in equity securities. These requirements include close-outs of fails-to-deliver in threshold securities. A "threshold security" is a security that meets defined criteria designed to address concerns regarding large and persistent failures to deliver and potentially abusive "naked" short selling. Regulation SHO's threshold security criteria include quantitative standards that apply to the securities of issuers that are SEC-reporting companies. FINRA has a separate rule, with a different quantitative threshold, for the securities of issuers that are not SEC-reporting companies.

Due to a systems coding issue, FINRA incorrectly classified MMTLP as the security of a non-SEC-reporting company and, as a result, incorrectly published its "Threshold Securities List" showing that MMTLP met the FINRA threshold standard from October 22, 2021, through January 4, 2022, and from October 17, 2022, through December 13, 2022. While MMTLP did meet the quantitative criteria under FINRA Rule 4320, it was subject to the Regulation SHO standard instead because MMTLP was issued by an SEC-reporting company. Since it began trading in October 2021, MMTLP did not have fails-to-deliver of the size or duration that would have rendered it a threshold security under Regulation SHO, and it was therefore an error to publish it on the Threshold Securities List. FINRA has now removed MMTLP from the Threshold Securities List.

596

597

598

599

600

601

602

603

604   **EXHIBIT L**

605   **Subject:** FINRA FAQ - Short Positions In a Private Company – Nov. 6, 2023

606   **Source:** https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-
607   trading-halt

608

### 14. How much short selling was there in MMTLP around the time of the Next Bridge / MMTLP corporate action? Was there a large short position in MMTLP shares?

FINRA periodically collects short interest information from broker-dealers and publishes short interest reports twice each month based on that information. As explained in the March 16, 2023, MMTLP FAQs, Question No. 8, these reports reflect a snapshot of the total open short positions existing in a security on the books and records of broker-dealers on a given reporting settlement date. The last short interest reporting settlement date available for MMTLP was November 30, 2022, because the issuer cancelled the MMTLP shares and the symbol was deleted prior to the next short interest reporting settlement date. Thus, short interest data for MMTLP around the time of the corporate action was not made publicly available.[11]

Based on FINRA's subsequent regulatory efforts, FINRA estimates that there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12[12] of approximately 2.65 million shares out of 165.47 million total shares outstanding, which is not a significant percentage—only 1.6%—of the total shares outstanding.[13] The short interest position in MMTLP had therefore decreased substantially—by nearly 60%—between November 15 and December 12. Specifically, short interest in MMTLP as of November 15, 2022, (approximately 6.4 million shares) declined around 27% to approximately 4.7 million shares as of November 30, 2022, and declined about a further 32% to approximately 2.65 million shares as of December 12.

609

610

611

612

613

614

615

616

617

618

619

620 **EXHIBIT M**

621 **Subject:** FINRA FAQ – "Naked" Short Selling FTD Estimates – Nov. 6, 2023

622 **Source:** https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-
623 trading-halt

**15. Was there excessive "naked" short selling resulting in "counterfeit shares" in MMTLP at the time of the corporate action?**

While it is not clear what is meant by the term "counterfeit shares," it has been used in social media when discussing "naked" short selling and FTDs in a security.[15] A "naked" short sale is generally understood to mean a short sale where the seller does not borrow or arrange to borrow the securities in time to make delivery within the standard settlement period—resulting in a FTD[16] when delivery is due.[17]While certain trades are required to be marked "short" pursuant to SEC Regulation SHO, "naked" short sales are not identified as such in the relevant short sale data.[18] Nonetheless, where there is significant "naked" short selling in a security, we would expect to see indicators in the data—particularly, a high number of FTDs. The SEC publishes data obtained from the National Securities Clearing Corporation's (NSCC) Continuous Net Settlement (CNS) system on the total quantity of FTDs per security as of each reporting settlement date.[19]

FINRA has found no evidence that there was significant naked short selling in MMTLP at the end of its trading, which appears to run counter to the social media claims regarding "counterfeit shares." The SEC did not publish FTD data for MMTLP for December 12 because transactions in MMTLP executed on the last day of its trading—December 8—were not cleared through CNS. However, FTDs as of December 9 were very low—215,238 shares. In addition, while CNS FTD data is not available for transactions in MMTLP due to settle on December 12, FINRA estimates that a very small number (0.03% of MMTLP's total shares outstanding) of the short positions in MMTLP as of December 12, 2022, would have potentially resulted in FTDs. Broker-dealers had stock borrows or margin securities available to cover almost 100% of the open short positions.

The limited number of FTDs through December 9 together with other factors—such as the availability of shares (stock borrows or margin securities) to cover almost 100% of the open short positions on December 12 (as discussed above), the successful distribution of Next Bridge shares (as discussed above in Question No. 12), and the low amount of short interest positions in MMTLP relative to total shares outstanding as of December 12 (as discussed above in Question No. 14)—run counter to claims that there was extensive "naked" short selling near the end of trading resulting in "counterfeit shares," or that the distribution of Next Bridge common stock to many MMTLP shareholders was disrupted by such activity.

624

625

626

627

628

629

630

631

632   **EXHIBIT N**

633   **Subject:** Charles Schwab Personal Account Statement -  Dec. 31, 2022

634   **Source:** https://client.schwab.com/app/accounts/statements/#/



| | Schwab One® Account of<br>**WILLIAM LEE KELLY** | | **Account Number**<br>1712-6093 | **Statement Period**<br>December 1-31, 2022 |

**Account Value as of 12/31/2022: $ 174.19**

| Change in Account Value | This Period | Year to Date |
|---|---|---|
| Starting Value | $ 187,445.87 | $ 36,815.47 |
| Credits | 0.02 | 0.07 |
| Debits | 0.00 | (0.02) |
| Transfer of Securities (In/Out) | 0.00 | 0.00 |
| Income Reinvested | 0.00 | 0.00 |
| Change in Value of Investments | (187,271.70) | (36,641.33) |
| Ending Value on 12/31/2022 | $ 174.19 | $ 174.19 |
| **Total Change in Account Value** | **$ (187,271.68)**<br>**(99.91)%** | **$ (36,641.28)**<br>**(99.53)%** |



Account Value [in Thousands]

| Asset Composition | Market Value | % of Account Assets |
|---|---|---|
| Bank Sweep | $ 58.65 | 34% |
| Equities | 103.15 | 59% |
| Exchange Traded Funds | 12.39 | 7% |
| **Total Assets Long** | **$ 174.19** | |
| Net Loan Balance | 0.00 | |
| **Total Account Value** | **$ 174.19** | **100%** |



■ 34% Bank Sweep [X,Z]
▨ 59% Equities
□ 7% Exchange Traded Funds

635

636

637

638

639

640

641

642   **EXHIBIT O**

643   **Subject:** Initial Complaint Filed with the U.S. Securities and Exchange Commission (SEC)

644   **Source:** Personal Email Account

SEC Response HO::~01271164~::HO  Inbox ×   MMTLP Lawsuit ×                              🖶

"Help" <help@sec.gov> <help@sec.gov>                Mon, Dec 12, 2022, 10:18 AM    ☆   ☺   ↩   ⋮
to me ▾

Dear William Kelly:

Thank you for contacting the U.S. Securities and Exchange Commission (SEC).

The SEC's Office of Investor Education and Advocacy processes many comments from individual investors and others. We keep records of the correspondence we receive in a searchable database that SEC staff may make use of in inspections, examinations, and investigations. In addition, some of the correspondence we receive is referred to other SEC offices and divisions for their review. If they have any questions or wish to respond directly to your comments, they will contact you.

Please note that securities exchanges and self-regulatory organizations (SROs), not the SEC, determine whether to impose a trading halt in a stock. Please see https://www.finra.org/investors/investing/investment-products/stocks/trading-halts-delays-suspensions for more information.

Information regarding the trading halt of Meta Materials (MMTLP) is available at https://www.finra.org/sites/default/files/2022-12/UPC-35-2022-MMTLP%28Halt%29_2.pdf

Sincerely,

Office of Investor Education and Advocacy
U.S. Securities and Exchange Commission
(800) 732-0330
www.sec.gov
www.investor.gov

645   www.twitter.com/SEC_Investor_Ed

646

647

648

649

650

651    **EXHIBIT P**

652    **Subject:** Complaint Filed with the SEC Office of Inspector General (OIG)

653    **Source:** Personal Email Account

Complaint received by the SEC OIG; Hotline Report No. 2025066507    MMTLP Lawsuit ×    🖨

OIG    Wed, Jun 11, 10:54 AM (6 days ago)    ☆    ☺    ↩    ⋮
to me ▾

Thank you for contacting the U.S. Securities and Exchange Commission (SEC) Office of Inspector General (OIG). We received the report of your complaint.

We will evaluate the information provided and determine an appropriate action. Options include opening an OIG review; referring the matter to a SEC Division or Office for review, if warranted; and taking no further action. In this regard, please note the following:

- The SEC OIG is an independent office within the SEC that conducts audits and evaluations of SEC programs and operations and investigates allegations of fraud, waste, or abuse at or against the SEC.
- The OIG derives its authority from the Inspector General Act of 1978, as amended. In accordance with that statute, we cannot perform SEC operating responsibilities, such as investigation of alleged securities law violations.
- Our authority is limited to issues that relate to SEC programs, operations, and personnel.
- We have no authority to direct SEC action with regard to SEC operations, such as (1) change its policies, (2) commence or conclude any particular investigation, (3) implement new securities rules for market participants, or (4) initiate administrative disciplinary action.
- Due to privacy interests, we do not provide complainants with updates on, or the results of, a complaint or investigative matter. However, our audit reports are published on www.sec.gov/office-inspector-general.
- General questions about the Federal securities laws and complaints about financial investment professionals can be directed to the SEC's Office of Investor Education and Advocacy at www.sec.gov/oiea/QuestionsAndComments.html, www.sec.gov/oiea/Complaint.html, help@sec.gov, 202-551-6500 or 1-800-732-0330. [Note: The SEC staff cannot act as a personal representative or attorney. Thus, they cannot represent investors and may be unable to assist you in private disputes with other parties.]
- Allegations of Federal securities law violations should be reported using the online Web form located at www.sec.gov/tcr. You should detail how the individual(s) violated U.S. Federal securities laws. Tips, Complaints, and Referral Filing Guidance is available at www.sec.gov/complaint/info. [Note: SEC investigations are conducted confidentially. As a result, the SEC generally will not confirm or deny the existence of an investigation unless and until it becomes a matter of public record. www.sec.gov/answers/investg.htm.]

Respectfully,

The Office of Inspector General
U.S. Securities and Exchange Commission
100 F Street, NE, Washington, DC 20549-2977

654    oig@sec.gov

655

656

657

658

659

660

661   **EXHIBIT Q**

662   **Subject:** Submission to the SEC Office of the Ombudsman

663   **Source:** Personal Email Account

SEC Ombuds Matter Management System (OMMS) Submission - Matter ID Number 20250214-00015901   MMTLP Lawsuit ×

**Ombuds OMMS** <ombudsmanommsɑsec.gov>                Tue, Feb 18, 9:22 AM
to me ▾

U.S. SECURITIES AND
EXCHANGE COMMISSION

Dear William Kelly:

Thank you for contacting the Ombuds of the U.S. Securities and Exchange Commission (SEC) regarding your concerns about preferred shares issued by Meta Materials Inc. (Meta Materials) previously trading over-the-counter as MMTLP. The Office of the Ombuds handles retail investor recommendations, questions and complaints about the SEC and the self-regulatory organizations (SROs) that it oversees.

The Ombuds generally treats matters as confidential and takes reasonable steps to maintain the confidentiality of communications. However, our Office may need to contact other SEC divisions or offices, SROs, entities, and/or individuals to disclose information without permission under certain circumstances including, but not limited to: a threat of imminent risk or serious harm; assertions, complaints, or information relating to violations of the securities laws; allegations of government fraud, waste, or abuse; or if otherwise required by law. Information received by the Ombuds may also be used in future recommendations to the SEC.

With regard to your specific requests, seeking: (1) "a complete independently audited share count of the TOTAL outstanding shares of MMTLP and the 2 days of trading that investors should have had, so all outstanding positions can be closed and settled"; and (2) "answers from the SEC regarding their oversight of FINRA for breaking rule 6490, FINRA Rule 6432, SEC Rule 15c2-11, FINRA Rule 2010, and FINRA Rule 6440 which they used to issue the U3 Halt," please be advised that our Office has been, and continues to be, in communication with certain individuals, Offices, and Divisions here at the SEC regarding these and similar investor concerns.

664   Thank you again for contacting the SEC Ombuds. We appreciate your views.

665

666

667

668

669

670

671

672

673

674    **EXHIBIT R**

675    **Subject:** FBI IC3 Complaint Submission

676    **Source:** Personal Email Account



**IC3** Complaint    MMTLP Lawsuit ✕

**William Kelly** <william.lee.kelly@gmail.com>                    Fri, Feb 14, 4:22 PM
to me ▾

**Submission ID:**
02eda4cc184849d5b5ee772771514181
**Date Filed:**
2/14/2025 7:20:36 PM EST
**Were you the one affected in this incident?**
Yes

↩ Reply     ↪ Forward     ☺

677

678

679

680

681

682

683

684

685

686

687

688    **EXHIBIT S**

689    **Subject:** Complaint Filed with Nevada Secretary of State

690    **Source:** Personal Email Account

## Nevada Secretary of State: Online Securities Complaint Submission 🖨

Inbox ×    MMTLP Lawsuit ×

**nvsec@sos.nv.gov**                                    Tue, Jan 28, 11:34 AM    ☆    ☺    ↩    ⋮
to me ▾

A new entry to a form/survey has been submitted.

| Form Name: | Securities Complaint |
|---|---|
| Date & Time: | 01/28/2025 11:34 AM |
| Response #: | 311 |
| Submitter ID: | 9678 |
| IP address: | 167.154.231.5, 198.143.33.41 |
| Time to complete: | 40 min. , 40 sec. |

691

692

693

694

695

696

697

698

699

700

701

702

703

704

705

706  **EXHIBIT T**

707  **Subject:** Complaint Filed with the Nevada Attorney General

708  **Source:** Personal Email Account

[agdb.ag.state.nv.us #63955] AutoReply: Complaint :Kelly ,William |Agency - FINRA    Inbox ×    MMTLP Lawsuit ×    🖨

**AG Intake Investigations Department via RT** <agrequest...    Fri, Jun 14, 2024, 4:00 PM    ⭐    ☺    ↩    ⋮
to me ▾

Greetings,

The Office of the Nevada Attorney General, Constituent Services Unit acknowledges receipt of your complaint. You will be notified upon completion of the review process between 14 to 45 business days. We do not provide emergency services. If additional information is required, you will be contacted by a member of our staff. Please note that pursuant to NRS 241.039(7), Open Meeting Law complaints are public records.

-----------------------------------

This message has been automatically generated in response to the creation of a trouble ticket regarding **Complaint :Kelly ,William |Agency - FINRA**, a summary of which appears below.

There is no need to reply to this message right now. Your ticket has been assigned an ID of **[agdb.ag.state.nv.us #63955]**.

Please include the string **[agdb.ag.state.nv.us #63955]** in the subject line including the brackets of all future correspondence about this issue. To do so, you may reply to this message. Ex: [agdb.ag.state.nv.us #42]

Thank you,

--------------------Section 1 Requestor Information----------------------------
1.Please Enter Your Email Address
william.lee.kelly@gmail.com

709

710

711

712

713

714

715

716

717

718   **EXHIBIT U**

719   **Subject:** Response Letter from the Office of Congressman Steven Horsford

720   **Source:** Personal Email Account



721

722

723

724

725    **EXHIBIT V**

726    **Subject:** Second Response Letter from the Office of Congressman Steven Horsford

727    **Source:** Personal Email Account

June 12, 2024

Dear Mr. Kelly,

Here is the response I received from the SEC:

June 12, 2024

The Honorable Steven Horsford
U.S. House of Representatives
2250 Las Vegas Blvd. North, Ste. 500
North Las Vegas, NV 89030
Attention: Ruby Scott (via email)
Re: Mr. William Kelly ES#162455/HO::~01395772~::HO

Dear Representative Horsford:

Thank you for your June 6, 2024 letter to the U.S. Securities and Exchange Commission (SEC) on behalf of the above-referenced constituent. Your correspondence was forwarded to the SEC's Office of Investor Education and Advocacy.

Mr. Kelly seeks assistance with the Financial Industry Regulatory Authority's (FINRA) trading halt of Meta Materials Inc. (MMTLP). FINRA, which imposed the halt, has posted information regarding the MMTLP trading halt on its website. Please see FAQ: MMTLP Corporate Action and Trading Halt   FINRA.org. Securities exchanges and self-regulatory organizations, rather than the SEC, determine whether to impose a trading halt in a stock. For more information about trading halts generally, please see "Trading Halts and Delays" in the SEC's Investor.gov glossary.

The SEC's Office of Investor Education and Advocacy processes many comments and complaints from individual investors and others. We keep records of the correspondence we receive in a searchable database that SEC staff may make use of in inspections, examinations, and investigations. In addition, some of the correspondence we receive is referred to other SEC offices and divisions for their review. If they have any questions or wish to respond directly to Mr. Kelly's complaint, they will contact Mr. Kelly.

Sincerely,

728    *Ruby Scott*

729

730

731  **EXHIBIT W**

732  **Subject:** Response Letter from the Office of Senator Catherine Cortez Masto

733  **Source:** Personal Email Account

## Contact for Agencies to Reach Out to Regarding MMTLP  Inbox ×  MMTLP Lawsuit ×

**Hoffecker, Craig** <choffecker@lcb.state.nv.us>                    Thu, May 15, 10:06 AM  ☆  ☺  ↩  ⋮
to me ▾

William Lee Kelly
William.lee.kelly@gmail.com

Dear Mr. Kelly,

I am sorry to hear of you situation with MMTLP. I learned of your situation as you recently contacted members of the Nevada Legislature.

It appears that you have already contacted the United States Securities and Exchange Commission (SEC) with your concerns. I found the same comments you sent to the Nevada Legislature also listed on the SEC's website as "File No. 365-28" dated March 4, 2025. There is an "investor complaint form" and "investor question form" where you may submit your concerns and explanation to the SEC if you have further concerns to make to the agency. The federal agency may be the best route for you to voice your concerns about MMTLP, possible early close of trading, and related matters.

The Financial Industry Regulatory Authority (FINRA) you may have also already reached out to with your concerns. Since FINRA may have more involvement with regulation of brokers and their firms, I do not know if contacting FINRA will be as useful to you as the SEC. However, you may wish to contact FINRA in Washington, D.C. at (301) 590-6500 to see what type of information or service it may provide to you.

Finally, if you wish to call or write your federal officials representing Nevada regarding the MMTLP, you may find their contact information within the attached file for Nevada's major elected officers.

Thank you for taking the time to reach out and all the best to you in finding a resolution to the issues with MMTLP.

Craig



**Craig Hoffecker**
Manager of Constituent Services
Nevada Legislative Counsel Bureau, Research Division
Constituent Services
401 S. Carson St., Carson City, NV 89701-4747
(775) 684-6740 | https://www.leg.state.nv.us/Division/Research/

734

735

736

737

738

739  **EXHIBIT X**

740  **Subject:** BiTech Technologies utilization of MMTLP Cusip – April 24, 2024

741  **Source:**

742  sec.gov/Archives/edgar/data/1066764/000149315224018725/formsc13d.htm?utm_source=chatg

743  pt.com

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# SCHEDULE 13D

#### (Rule 13d-101)

##### INFORMATION INCLUDED IN STATEMENTS FILED PURSUANT TO RULE 13d-1(a)

##### AND AMENDMENTS THERETO FILED PURSUANT TO RULE 13d-2(a)

# BITECH TECHNOLOGIES CORPORATION

##### (Name of Issuer)

##### Common Stock, $0.001 par value

##### (Title of Class of Securities)

##### 89102U103

##### (CUSIP Number)

##### 895 Dove Street, Suite 300
##### Newport Beach, CA 92660

##### Tel: (855) 777-0888

##### (Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

##### April 24, 2024**

##### (Date of Event which Requires Filing of this Statement)

744

745

746

747

748

749

750

751  **EXHIBIT Y**

752  **Subject:** TRCH/MMTLP filing verifying CUSIP Number – December 31, 2020

753  **Source:**

754  https://www.sec.gov/Archives/edgar/data/1431959/000175392621000039/g082087_sc13ga.htm?

755  utm_source=chatgpt.com

### SECURITIES AND EXCHANGE COMMISSION
#### Washington, D.C. 20549

### SCHEDULE 13G

#### Under the Securities Exchange Act of 1934
#### (Amendment No. 1)*

TORCHLIGHT ENERGY RESOURCES, INC.

(Name of Issuer)

Common Stock, $0.001 Par Value

(Title of Class of Securities)

89102U103

(CUSIP Number)

December 31, 2020

(Date of Event which Requires Filing of this Statement)

756

757

758

759

760

761

762

763

764

765

766

767  **EXHIBIT Z**

768  **Subject:** Further Verification of the TRCH/MMTLP CUSIP – June 25, 2021

769  **Source:** https://www.nasdaqtrader.com/TraderNews.aspx?id=ECA2021-

770  118&utm_source=chatgpt.com

Friday, June 25, 2021

---

**Equity Corporate Actions Alert #2021 - 118**
Information Regarding the Business Combination of Torchlight Energy Resources, Inc. (TRCH) & Meta Materials Inc.

---

**Category:**

☒ Industry Announcement

**Markets Impacted:**

☒ The Nasdaq Stock Market

**Contact Information:**

☒ Nasdaq Corporate Data Operations at +1 877 308 0523
☒ Nasdaq Trading Services at +1 212 231 5100

**Resources**

☒ Press Release

The business combination of Torchlight Energy Resources, Inc. (TRCH) and Meta Materials Inc. will become effective tomorrow Saturday, June 26, 2021. As a result, the common shares of Torchlight Energy Resources, Inc. will undergo a one-for-two (1-2) reverse stock split along with a change of corporate name, symbol, and CUSIP number.

The details regarding the corporate name, symbol, and CUSIP changes are as follows:

| | |
|---|---|
| Current Company Name/Issue: | Torchlight Energy Resources, Inc. Common Stock |
| New Company Name/Issue: | Meta Materials Inc. Common Stock |
| Current CUSIP: | 89102U103 |
| New CUSIP: | 59134N104 |
| Current Symbol: | TRCH |
| New Symbol: | MMAT |
| Ratio of Reverse Split: | 1 for 2 |
| Marketplace Effective Date: | Monday, June 28, 2021 |

771
772
773
774
775
776
777
778
779
780
781

782     **EXHIBIT AA**

783     **Subject:** Trading Data for MMTLP from Nov 21, 2022 to the U3 Halt

784     **Source:** https://stockinvest.us/stock-price/MMTLP

785

## Historical Meta Materials Inc. prices

📅 Select Range   YTD   12m   2024   2023                          📄 JSON   📊 CSV

| Date | Open | High | Low | Close | Volume |
|------|------|------|-----|-------|--------|
| Dec 09, 2022 | $2.96 | $2.96 | $2.96 | $2.96 | 0 |
| Dec 08, 2022 | $4.41 | $4.50 | $2.85 | $2.96 | 8 333 725 |
| Dec 07, 2022 | $9.88 | $9.90 | $7.07 | $7.90 | 3 714 213 |
| Dec 06, 2022 | $7.15 | $9.70 | $5.04 | $7.97 | 3 907 648 |
| Dec 05, 2022 | $8.25 | $9.00 | $7.55 | $7.60 | 1 467 521 |
| Dec 02, 2022 | $8.90 | $8.90 | $8.10 | $8.21 | 992 624 |
| Dec 01, 2022 | $8.25 | $9.05 | $7.75 | $8.17 | 1 678 750 |
| Nov 30, 2022 | $9.72 | $10.00 | $7.76 | $8.50 | 1 305 436 |
| Nov 29, 2022 | $9.70 | $9.75 | $9.65 | $9.72 | 393 564 |
| Nov 28, 2022 | $10.79 | $10.98 | $9.61 | $10.02 | 1 544 600 |
| Nov 25, 2022 | $10.87 | $10.99 | $9.88 | $10.03 | 1 673 741 |
| Nov 23, 2022 | $10.72 | $10.95 | $8.55 | $10.00 | 1 601 754 |
| Nov 22, 2022 | $11.85 | $12.50 | $10.85 | $12.00 | 3 045 999 |
| Nov 21, 2022 | $9.90 | $11.30 | $9.43 | $11.21 | 2 767 169 |

786

787

788

789

790

791

792

793   **EXHIBIT AB**

794   **Subject:** TradeZero's Correspondence to MMTLP Holders Pre-Halt

795   **Source:** https://x.com/RareDealsHere/status/1836136427815579911/photo/4




# Regarding MMTLP Share
# Distribution   Inbox



**TradeZero America**   3:20 PM

to me ˅

                                          us.tradezero.co

TradeZero Clients, Symbol MMTLP, Meta Materials, Inc. Preferred Share,
will undergo a share spinoff with the ex date listed as Monday,
December 12th, 2022. Due to the circumstances and uncertain component of
this corporate action, all options positions and short equity positions
must be liquidated by 4:00 PM eastern time on Friday, December 9th, 2022. If
you fail to liquidate your position, TradeZero's risk department
will automatically liquidate your position. If you have any questions
please contact us at support@tradezero.us or 718-709-4925.

796

797

798

799

800

801

802

803    **EXHIBIT AC**

804    **Subject:** Interactive Brokers Correspondence to MMTLP Holders

805    **Source:** https://x.com/bleedblue18/status/1785637472921153802/photo/1



## Meta Materials (MMTLP) Intends to Issue a Spin-off on a 1-for-1 Basis of Next Bridge Hydrocarbons, Inc. Shares

Dear Client,

Interactive Brokers was notified by Meta Materials (MMTLP) that they intend to issue a spin-off on a 1-for-1 basis of Next Bridge Hydrocarbons, Inc. shares.

The record date for this dividend is currently listed as **December 12, 2022**, and the shares are set to be distributed on **December 14, 2022**.

**PLEASE NOTE:**

- Meta Materials intends to cancel MMTLP shares immediately after the spin-off, and the Next Bridge Hydrocarbons, Inc. shares will be non-transferrable and non-tradable.
- **Shortholders:** Should account U****2640 be in a borrow position after the close of business on **December 8, 2022**, you will be short a security for which there is no market to cover. In addition, there is potentially no market to cover moving forward. At this time, the only way to avoid this is to cover your short position. For further information regarding the risks of short selling, please see the following link: https://ibkr.info/article/2880
- **Longholders:** Should account U****2640 be the owner of record past **December 8, 2022**, you will own shares of Next Bridge Hydrocarbons, Inc. shares that are non-transferrable and non-tradable. The only way to avoid this is to sell MMTLP any time prior to market close on **December 8, 2022**.
- If shares of Meta Materials are sold after **December 8, 2022** but prior to the cancellation date, sellers will be responsible for coordinating title ownership to new owner(s).

For additional information regarding this merger please read the company's press release.

Regards,

**Interactive Brokers**

806

807    **EXHIBIT AD**

808    **Subject:** FOIA Request Showing Sam Draddy's Correspondence With the SEC

809    **Source:** https://x.com/RareDealsHere/status/1909256130574057870/photo/3

From: Draddy, Sam <Sam.Draddy@finra.org>
Sent: Monday, December 5, 2022 9:07 AM
To: (b)(6), (b)(7)(C)                      @SEC.GOV>
Cc: (b)(6), (b)(7)(C)              @SEC.GOV>; (b)(6), (b)(7)(C)            @SEC.GOV>; Boyle,
Richard <Richard.Boyle@finra.org>; Gibbon, Jay <Jay.Gibbon@finra.org>
Subject: RE: Inquiry

CAUTION: This email originated from outside of the organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

(b)(6),            —looks like this MMAT/MMTLP matter has now hit my Fraud team's radar screen and
seemingly a lot of other radar screens as well. I know you have spoken to Patti Casimates and our
General Counsel's office—but was wondering if it made sense for my Fraud team to have a
conversation directly with you and your folks working on the matter so we are not duplicating
efforts. We are looking at the two issuers from a fraud/manipulation angle and, in fact, bluesheeting
both MMAT and MMTLP as we speak.

If you think a comparison of notes is worth a quick call—let me know a good day/time. I can set up a
zoom and feel free to let me know if (b)(6),        or anyone else should be included.
                                    (b)(7)(C)

Thanks (b)(6); (b)(7)(C)

810    Sam

811

812

813

814

815

816

817

818

819

820

821    **EXHIBIT AE**

822    **Subject:** Letter from Congresswoman Barbara Lee regarding MMTLP Resolution

823    **Source:** https://x.com/xMarketNews/status/1731863801522168131/photo/1

### Congress of the United States
#### Washington, DC 20515

December 4, 2023

The Honorable Gary Gensler
Chairman
U.S. Securities and Exchange Commission
100 F St. NE Washington, D.C. 20549

Dear Chairman Gensler,

I am writing regarding an action taken by the Financial Industry Regulatory Authority (FINRA) on META Material's Series A Preferred Shares (MMTLP). This has been brought to my attention by a number of my constituents who have expressed concerns with the holding and status of their MMTLP shares. On December 8th, 2022, FINRA halted trading of MMTLP and announced deletion of the MMTLP symbol five days later. My constituents have expressed that as a result, they were left without clarify on the future of their investments.

The U.S. Securities and Exchange Commission (SEC) and FINRA have a responsibility to protect investors and safeguard the integrity of our public markets. Given the financial distress constituents have experienced because of these decisions, I want to ensure that market decisions are being made by regulators in an efficient and transparent manner.

I request that you fully investigate the events surrounding the trading halt of MMTLP and ensure no wrongdoing took place. Furthermore, I request that you make any findings publicly available and that you to provide clear guidance to my constituents about what they should expect to occur regarding their current MMTLP holdings and under what timeline they should expect a resolution to take place. I also ask that you identify any regulatory or legislative gaps that could be addressed to better protect investors and market integrity.

Thank you for your attention to this matter and I look forward to your response.

Sincerely,

Barbara Lee
Member of Congress

824

825

826

827    **EXHIBIT AF**

828    **Subject:** VP of OTC Markets on trader live discussing MMTLP Deletion prior to Revised C.A.

829    **Source:** https://x.com/LizHoff51005452/status/1725558915272733174



830

831

832

833

834

835

836

837

838

839

840

841

842

843     **EXHIBIT AG**

844     **Subject:** Ameritrade Correspondence to MMTLP Holders Pre-Halt

845     **Source:** https://x.com/JunkSavvy/status/1905727232414494981/photo/2

 **Ameritrade**

Wed Mar 8 2023 12:06:00 am ET

**Re: MMTLP Finra Corporate Action Notice**
From: Institutional Message Center : Date: 12/09/22 9:30 AM  **Message available until 12/08/24**

Hello

Good Morning! Thank you for taking the time to respond to our message and I hope you are having a wonderful day so far! My name is Bob, and I am happy to continue helping you with your account today!

We did receive some information from MMTLP. These are the details and guidance they provided.

MMTLP shareholders with settled positions as of 12/12/22 (Record Date) will receive one share of Next Bridge Hydrocarbons, Inc for every one share of MMTLP. Scheduled Pay Date for this distribution is 12/14/22.

New long purchases (BUYS) of MMTLP executed after 12/08/22 will NOT receive Next Bridge Hydrocarbons, Inc shares. As such, after market close on 12/8/2022:
New long BUY orders of MMTLP placed after market close on 12/8/2022 will be routed for review and canceled.
New closing SELL orders of MMTLP should be routed normally, but there may be liquidity issues on 12/9/22 and 12/12/22.
Current open long BUY orders that are GTC will be canceled after market close on 12/8/22
In addition, MMTLP shares will be canceled 12/13/22 and no trading will occur.
Clients should trade or hold this security at their own risk

Hope this helps! Thank you so much for being a client here at TD Ameritrade, Tim! We truly appreciate it! I hope you have a fantastic day!

We greatly appreciate your business and know you have a choice where you invest. If there is anything else we can do for you, or could have done better, please let us know.

We look forward to serving your needs for years to come

Respectfully,

Robert Mangan
Client Services

TD Ameritrade
1-800-669-3900

846

847

848

849

850

851

852

853

854    **EXHIBIT AH**

855    **Subject:** Next Bridge Hydrocarbons Prospectus referencing an MMTLP Short Squeeze

856    **Source:**

857    https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b

858    4.htm

*The price per share of Meta's Series A Preferred Stock traded on the over-the-counter ("OTC") market under the symbol MMTLP may not accurately reflect the value of a share of our Common Stock that you will receive in the Distribution.*

Before the Distribution, Meta's Series A Preferred Stock was traded on the OTC market under the trading symbol "MMTLP", although such shares of MMTLP were not eligible for broker-dealer quotations. The OTC

23

market does not constitute an established stock exchange, and as a result, the historical trading prices for the shares of MMTLP may not be a reliable benchmark on which to determine the value of the shares of our Common Stock you will receive in the Distribution.

Additionally, securities of certain companies have recently experienced significant and extreme volatility in stock price due to short sellers of shares of securities, known as a "short squeeze." These short squeezes have caused extreme volatility in both the stock prices of those companies and in the market and have led those companies' securities to trade at a significantly inflated price per share that is disconnected from the underlying value of the company. In particular, if any investors have sold shares of MMTLP short, then in connection with the Distribution such investors may feel compelled to buy shares of MMTLP to cover such sales before the Distribution. If this were to occur, given the potential high demand from buyers with a relatively low supply of MMTLP shares available for sale on the OTC market, the MMTLP price per share as shown on the OTC market may rise significantly but not be representative of the value of the underlying shares of our Common Stock that you will receive in the Distribution.

859

860

861

862

863

864

865    **EXHIBIT AI**

866    **Subject:** Next Bridge acknowledgement of Attempts to Resolve the Share Imbalance

867    **Source:**

868    https://cdn.prod.websitefiles.com/6169e69d0075ec7c66221a8b/67b40af0d3fda89d9c9341ba_NB

869    H%20Hiring%20Wes%20Christian%20and%20Firm_vFINAL.pdf

**MIDLAND, TEXAS – February 18, 2025 – Next Bridge Hydrocarbons, Inc.** ("Next Bridge," "our," "we," or the "Company"), an oil and natural gas exploration and production company with interests in Texas, Louisiana, and Oklahoma announced today the following:

The Company is pleased to announce engaging the services of the Houston-based law firm Christian Attar. Christian Attar has been engaged to explore and investigate any and all potential claims related to harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act. The Company will be working closely with founding partner James "Wes" Christian, whom we believe is the best candidate for investigating such potential claims given his expertise in this area of litigation.

As stated in prior press releases, the Company has become aware of shareholder ledger imbalances at several brokerage firms totaling amounts exceeding the aggregate 2.65 million share short interest position in MMTLP stated publicly by FINRA. The Company wishes to reiterate that after more than two years, we have yet to uncover the full magnitude of these imbalances. This is in spite of multiple attempts to recruit assistance from overseeing Regulators.

Chairman and CEO Greg McCabe stated, "We are excited by these latest additions to our growing advisory team. Working with Wes Christian, a seasoned and highly successful litigator and an expert well-versed in our story from the beginning, marks the dawning of a new era for our legal campaign. We will not stand by as nefarious actors with hidden agendas spread misinformation regarding our Company, our business activities or our personnel. Our patient and loyal shareholders deserve us to protect the integrity of both Next Bridge and their investment in it, and I want to truly thank once again our online community, the MMTLP ARMY, for their long-standing support and steadfast dedication."

870

871

872

873

874

875

876   **EXHIBIT AJ**

877   **Subject:** NBH Disputes 2.65m Short Estimated Provided by FINRA in FAQ

878   **Source:**
879   https://cdn.prod.websitefiles.com/6169e69d0075ec7c66221a8b/65c66057134fd3d64ee87721_N
880   BH%20Statement%20vF%202-8-24.pdf

Second, we believe this information is necessary to help clarify potentially misleading information that has been disseminated to investors and the public.  FINRA issued an "Investor Insights" FAQ on its website stating that "there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12 of approximately 2.65 million shares out of 165.47 million total shares outstanding."  FINRA went on to characterize this volume as "not significant."  We infer no intent to mislead by FINRA, but we note that this statement was not qualified to make clear that the scope of the data available to FINRA under the investigatory powers it cited was limited, and thus it implied a categorical summation of the entire uncovered short interest position in Next Bridge.  Subsequent to our most recent press release of January 19, 2024 calling for short interest data from all sources, foreign or domestic, whether registered with FINRA or not, we observed that FINRA clarified in its letter to Congressman Norman that the short interest figure it cited was only based on U.S. member data and not that of "domestic or foreign non-member entities that could act as custodians or agents holding securities for others, including foreign-registered broker-dealers."  However, it repeated its assertion

1

that the short interest position it saw was "nominal." Unfortunately, we believe this is a consequential blind spot in FINRA's data, because foreign firms have approached Next Bridge about procuring more than 2.65 million shares.

881

882

883

884

885

886

887

888

889

890    **EXHIBIT AK**

891    **Subject:** Next Bridge Disputes FINRA's Role in The Corporate Actions

892    **Source:**
893    https://cdn.prod.websitefiles.com/6169e69d0075ec7c66221a8b/65c66057134fd3d64ee87721_N
894    BH%20Statement%20vF%202-8-24.pdf

Third, we believe there is an onus on FINRA to help resolve ongoing investor concerns due to the role it played in the events that led to the U3 halt, and the subsequent confusion resulting from the halt itself. FINRA stated that it determined the U3 halt was "necessary and appropriate to protect investors and ensure a fair and orderly marketplace." Unfortunately, many investors continue to communicate great frustration that the halt accomplished quite the opposite and could have been avoided. We do not intend to litigate FINRA's decision-making in this release, but we also would like to ensure that we clarify certain points on which we have a divergent view from FINRA in regards to the corporate action announcing the NBH spinoff and subsequent U3 halt, since the issues are actively being discussed in public releases to our investors and publicized letters to Congress. As an initial matter, we take issue with FINRA's repeated assertion that "FINRA's role is limited to reviewing and processing the (corporate action) submission and announcing the corporate action to market participants (unless the corporate action documentation is found to be deficient under Rule 6490, in which case FINRA may determine not to process the corporate action)." We do not believe this describes the role that FINRA played in the MMTLP corporate action submission process, nor does it offer a complete recitation of FINRA's authority under Rule 6490. First, FINRA drafted the initial and revised corporate action notices on December 6th and 8th of 2022, with an instruction that the issuer was not to edit or interpret it, and included language that we believe itself became the source of market confusion. For example, while FINRA describes the notice to Congressman Norman as "consistent with the information provided by Meta Materials," it is notable that the notice actually introduced a new instruction that MMTLP shares would be "deleted" on December 13th – a date never before contemplated or referenced by the issuers, and which many found difficult to reconcile with Meta's announcement that the distribution of Next Bridge shares would take place the next day- on December 14th. Indeed, it was never proposed to FINRA to add a December 13 cancellation date or deletion date, and adding such a date created an unnecessary restriction to the corporate action and shareholders of MMTLP. In addition, FINRA's Rule 6490 allows it to refrain from processing requested corporate actions altogether if it "determines not processing is necessary to protect investors and the public interest and to maintain fair and orderly markets." In other words, the justification FINRA ultimately used for issuing the U3 halt was available to it at the outset of the process,

895

896

897

898

899

900

901  **EXHIBIT AL**

902  **Subject:** Historical Short Volume Data for TRCH Final days Before Reverse Merger

903  **Source:** https://x.com/wdmorgan2/status/1935727622496891284/photo/2

| Historical Short Volume Data for TRCH | | | | | | |
|---|---|---|---|---|---|---|
| Date | Close | High | Low | Volume | Short Volume | % of Vol Shorted |
| Jun 25 | NA | NA | NA | 34,012,888 | 20,775,892 | 61.08 |
| Jun 24 | NA | NA | NA | 43,613,656 | 26,945,148 | 61.78 |
| Jun 23 | NA | NA | NA | 50,195,107 | 26,729,319 | 53.25 |
| Jun 22 | NA | NA | NA | 76,352,054 | 42,249,501 | 55.34 |
| Jun 21 | NA | NA | NA | 150,035,489 | 82,496,774 | 54.98 |
| Jun 18 | NA | NA | NA | 28,608,216 | 13,557,742 | 47.39 |
| Jun 17 | NA | NA | NA | 21,996,332 | 9,066,068 | 41.22 |
| Jun 16 | NA | NA | NA | 74,217,339 | 41,707,265 | 56.20 |
| Jun 15 | NA | NA | NA | 109,951,610 | 54,999,009 | 50.02 |
| Jun 14 | NA | NA | NA | 5,674,578 | 1,912,649 | 33.71 |

904

905

906

907

908

909

910

911

912

913

914

915 **EXHIBIT AM**

916 **Subject:** Outstanding Share count of the Series A Preferred Share (MMTLP)

917 **Source:**

918 https://metamaterial.com/files/603fd35021a8272338f06fac/641c4de2e50576e0b3712881_mmat

919 %20(meta%20materials%20inc.)%20annual%20report%20pursuant%20to%20section%2013%2

920 0or%2015(d)%20(10-k)%202023-03-23.pdf_.pdf

On December 14, 2022, we distributed all of the 165,472,241 outstanding shares of Common Stock of Next Bridge Hydrocarbons Inc. ("Next Bridge"), incorporated in Nevada on August 31, 2021, as OilCo. Holdings, Inc., as a wholly owned subsidiary of META, (and changed its name to Next Bridge Hydrocarbons, Inc. pursuant to its Amended and Restated Articles of Incorporation filed on June 30, 2022), on a pro rata basis to holders of our Series A Non-Voting Preferred Stock. Immediately after the distribution, Next Bridge became an independent company, and as a result, we have deconsolidated the financial results of Next Bridge from our consolidated financial results from December 14, 2022 onwards. See note 5 for additional information on this transaction.

9:

922

923

924

925

926

927

928

929

930

931

932

933

934

935

936

937

938

939   **EXHIBIT AN**

940   **Subject:** Former CEO of Torchlight Energy Discussing Trading of the Series A preferred Share
941   (MMTLP)

942   **Source:** https://x.com/bleedblue18/status/1622172637240647682



958    **EXHIBIT AO**

959    **Subject:** Legal Statements by George Palikaras regarding FINRA Corporate Actions

960    **Source:** https://x.com/RareDealsHere/status/1938049748436676632/photo/3



**George Palikaras** ✔
@palikaras

Case 0:24-cv-60891-AHS    Document 39-1    Entered on FLSD Docket 08/16/2024    Page 9 of

31.    Further, on or about December 8, 2022, FINRA notified the Company that it had unilaterally revised the language of the Company's December 6, 2022 corporate action and required the revised notice to be published on the Daily List. This revision was made without the input or authorization of the Company and took place on or about December 7, 2022, *after* FINRA had a call discussion with DTCC. I was informed that META II and Next Bridge's counsel were not invited to participate in the call between FINRA and DTCC.[14]

961