X FILED          RECEIVED
____ ENTERED          ____ SERVED ON

July 18, 2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ JG ____ DEPUTY

1    **UNITED STATES DISTRICT COURT**
2    **DISTRICT OF NEVADA**

3    William Lee Kelly,
4    Plaintiff,
5    v.
6    Financial Industry Regulatory Authority, Inc. (FINRA),
7    Defendant.

8    Case No. 2:25-cv-01195-APG-DJA

9    **MOTION FOR PRELIMINARY INJUNCTION**

10   1.  NOTICE IS HEREBY GIVEN that Plaintiff, William Lee Kelly, proceeding pro se,
11       respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 for a
12       Preliminary Injunction compelling Defendant Financial Industry Regulatory Authority,
13       Inc. ("FINRA") to produce limited and targeted documents and data directly relevant to
14       the constitutional and factual claims in this case.

15   2.  This motion is necessary to prevent irreparable harm, preserve critical evidence, and
16       ensure Plaintiff's ability to fully litigate his claim that FINRA violated his Fifth
17       Amendment due process rights by arbitrarily and without notice implementing a U3
18       trading halt on MMTLP, thereby depriving Plaintiff of access to his lawfully held
19       securities.

20   3.  This case involves the exercise of government-delegated regulatory authority by a
21       quasi-public entity. As such, transparency and accountability are not only appropriate
22       but constitutionally required. The requested materials are essential to assessing the
23       legitimacy, scope, and motivation behind FINRA's actions and whether those actions
24       fell outside the bounds of its lawful authority.

25   4.  The evidence requested in this motion is narrowly tailored and pertains to (1) the
26       bluesheet trade data for the dates surrounding the halt; (2) communications between
27       FINRA and Meta Materials Inc.; and (3) communications with DTCC and the SEC. These
28       records are necessary to evaluate whether FINRA's conduct was procedurally proper or
29       arbitrary and capricious, as alleged.

30   5.  Plaintiff respectfully requests that the Court grant this motion and compel immediate
31       disclosure and preservation of the specified records to avoid continued prejudice to
32       Plaintiff's constitutional claims.

33

34

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

6.  Plaintiff brings this action alleging that FINRA violated his Fifth Amendment due process rights by arbitrarily imposing an indefinite U3 trading halt on MMTLP on December 9, 2022. This halt was triggered by market confusion that FINRA created through the issuance of conflicting corporate action notices on December 6 and 8, 2022. As a result, Plaintiff was deprived of access to and the value of his 22,919 MMTLP shares—without notice, a hearing, or any form of remedy.

7.  FINRA has claimed the halt was necessary to "protect the market" and address "settlement risks" (Exhibit I & D) denying the existence of excessive short interest, asserting an estimated 2.65 million short positions in the now-private Next Bridge Hydrocarbons as of December 12, 2022 (Exhibit L). However, evidence suggests abusive short selling and unilateral revisions to the corporate actions, as stated in declarations from former Meta Materials CEO George Palikaras (Exhibit AO) and Next Bridge Hydrocarbons CEO Greg McCabe (Exhibit AK & AJ).

### II. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

8.  A preliminary injunction is appropriate where the Plaintiff demonstrates: (1) likelihood of success on the merits; (2) irreparable harm absent relief; (3) that the balance of equities tips in the Plaintiffs favor; and (4) the injunction serves the public interest (*Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)*).

9.  The Ninth Circuit also applies a "sliding scale" approach, under which a plaintiff may obtain injunctive relief by showing that serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiff's favor, so long as irreparable harm is also shown. *(Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011))*.

10. Courts have further recognized that preliminary injunctions may be granted to preserve evidence and prevent procedural prejudice, particularly in cases involving potential spoliation or where limited discovery is necessary to evaluate a constitutional claim *( De Beers Consol. Mines v. United States, 325 U.S. 212 (1945); see also D. Nev. Local Rule 65-1)*.

67        ### III. FACTUAL BACKGROUND

68    11. Plaintiff William Lee Kelly is a retail investor who lawfully owned 22,919 shares of
69        MMTLP, a preferred security linked to Meta Materials Inc. (MMAT), which was
70        scheduled to be canceled in connection with the spin-out of Next Bridge
71        Hydrocarbons, a private company. This corporate action was meant to distribute
72        private Next Bridge shares on a one-to-one basis to MMTLP shareholders, with trading
73        expected to cease after the final record and settlement dates (Exhibit A).

74    12. In the days leading up to the corporate action's execution, FINRA published two
75        conflicting corporate action notices—one on December 6, 2022, and a revised version
76        on December 8, 2022 (Exhibits B & C). These discrepancies caused significant
77        confusion among market participants regarding the final trading date, settlement
78        deadlines, and distribution mechanics due to an inaccurate cancelation date of
79        December 13, 2022.

80    13. On December 9, 2022, FINRA issued a U3 trading halt for MMTLP, halting all trading in
81        the security without prior notice, explanation, or hearing (Exhibit E). Investors, including
82        Plaintiff, were instantly locked out of their positions and have since been unable to
83        trade, access, or recover the value of their holdings.

84    14. FINRA has claimed the U3 halt was implemented to address "settlement risks" and
85        market confusion (Exhibit I), asserting that approximately 2.65 million short positions
86        remained open as of December 12, 2022, despite the security no longer being publicly
87        traded (Exhibit L). This left short sellers with no mechanism to close positions and long
88        holders, like Plaintiff, with illiquid private shares in a company not listed on any public
89        market.

90    15. Plaintiff contends that the confusion cited by FINRA was self-created, stemming from
91        their conflicting and unclear corporate action notices, and that the U3 halt was
92        imposed unilaterally and arbitrarily—without any procedural safeguards, without
93        consulting the issuer, and without any mechanism for recourse. This is supported by
94        public declarations from former Meta Materials CEO George Palikaras (Exhibit AO) and
95        Next Bridge Hydrocarbons CEO Greg McCabe (Exhibit AK), who both stated that FINRA
96        did not notify or include them in key decisions related to the Corporate Actions, and
97        that FINRA may have acted outside the scope of its regulatory authority in breach of
98        FINRA Rule 6490.

99    16. Plaintiff has exhausted all administrative channels for remedy, including contacting the
100       SEC, the SEC Office of the Ombudsman, the Nevada Secretary of State, and members
101       of Congress, to no avail (Exhibits O through W). No investigation results have been
102       disclosed, no path to recovery has been offered, and the value of Plaintiff's MMTLP
103       shares remains inaccessible.

104    17. Plaintiff brings this action under the Fifth Amendment to the U.S. Constitution, alleging
105        that FINRA, acting under color of federal authority, deprived him of property without
106        due process of law by halting trading in a manner that violated core constitutional
107        protections.

108

109                                            **IV. ARGUMENT**

110    18. Plaintiff seeks a narrowly tailored preliminary injunction to compel the production
111        of specific, time-sensitive records and communications directly related to the
112        December 9, 2022 U3 trading halt on MMTLP. This relief is essential to prevent
113        irreparable harm, ensure preservation of critical evidence, and support Plaintiff's
114        ability to litigate his constitutional due process claims on a full and fair record.

115    **A. Plaintiff Is Likely to Succeed on the Merits**

116    19. Plaintiff alleges a clear Fifth Amendment violation. FINRA, while acting under color of
117        federal authority, issued an indefinite trading halt on MMTLP without providing prior
118        notice, a hearing, or any opportunity to challenge the decision. This halt prevented
119        Plaintiff from disposing of or recovering value from 22,919 shares of MMTLP, effectively
120        freezing his property without due process of law.

121    20. The requested materials—including blue sheet trading data and inter-agency
122        communications—go to the heart of Plaintiff's constitutional claim. Evidence that
123        FINRA acted arbitrarily, exceeded its regulatory authority, or imposed the halt based on
124        flawed or manipulated information would directly support the allegation of ultra vires
125        conduct and violations of core due process guarantees.

126    *21.* Plaintiff has raised serious questions concerning FINRA's violation of his Fifth
127        Amendment due process rights through the unilateral U3 halt imposed on December 9,
128        2022. The halt was based on "settlement risk" that FINRA helped create via conflicting
129        corporate action disclosures on December 6 and 8, 2022, directly implicating violations
130        of FINRA Rule 6490, which requires accuracy and completeness in corporate action
131        processing. Under *Mathews v. Eldridge, 424 U.S. 319 (1976)*, due process mandates
132        notice and an opportunity to be heard before property deprivation. Palikaras's
133        declaration and FINRA's FAQs support that these actions were ultra vires, piercing
134        *immunity (Sparta Surgical v. NASD, 159 F.3d 1209 (9th Cir. 1998))*.

135    22. Moreover, less harmful alternatives existed, such as Position Close Only (PCO)
136        trading—a broker-level restriction allowing only the closing of existing positions (e.g.,
137        selling longs or covering shorts) to unwind settlement risks without prohibiting all
138        activity. Brokers were already preparing for PCO-like measures; for example,
139        Ameritrade's notice stated they would route new buy orders for cancellation after
140        December 8, 2022 (Exhibit AG). FINRA's claimed justification "settlement risks from

141    trades not settling by December 12" (Exhibit I) could have been addressed through PCO
142    advisories, as used previously in volatile or delisting scenarios, rather than the
143    indefinite U3 halt that fully deprived investors of access to their funds. This overbroad
144    response demonstrates arbitrariness, further supporting Plaintiff's claims.

145    23. In summary, the declarations from key figures—George Palikaras, former CEO of Meta
146    Materials, and Greg McCabe, current CEO of Next Bridge Hydrocarbons—reveal
147    FINRA's actions as unilateral, non-transparent, and executed without issuer
148    consultation. Coupled with FINRA's conflicting corporate action filings and procedural
149    lapses, these elements raise serious questions on the merits, plausibly demonstrating
150    a due process violation and that FINRA acted outside its authorized scope, thereby
151    piercing absolute immunity under *Sparta Surgical v. NASD, 159 F.3d 1209 (9th Cir.*
152    *1998)*.

153    **B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief**

154    24. Without access to the requested trading data and communications, Plaintiff will be
155    unable to fully establish the basis for his constitutional claims—particularly with
156    respect to abusive short selling, FINRA's motivations, and the scope of harm caused by
157    the U3 halt—resulting in irreparable harm through the likely dismissal of the case on
158    grounds of FINRA's regulatory immunity, as this would permanently deprive Plaintiff of
159    judicial review and redress for the due process violations, without any adequate
160    remedy at law.

161    25. While FINRA has provided justifications for the December 9 U3 halt in its FAQs, it has
162    not disclosed the underlying sources, data, or internal communications revealing how
163    and why it unilaterally revised the corporate action without company approval, failed to
164    address the deficiencies that caused settlement issues, and then used those faulty
165    revisions to justify the halt—actions that violated Rule 6490 and rendered the halt
166    decision itself ultra vires. Without timely discovery, critical evidence may be lost or
167    altered, as blue sheet data and inter-agency communications are routinely overwritten
168    or purged over time, particularly if they fall outside ordinary retention protocols,
169    exacerbating the irreparable harm by permanently foreclosing Plaintiff's ability to
170    substantiate these ultra vires and due process claims before potential dismissal on
171    immunity grounds.

172    26. Courts recognize that denial of access to relevant records—especially those held by
173    the opposing party—can constitute irreparable harm where such denial prevents
174    vindication of a constitutional right. *See, e.g., Alpine Securities Corp. v. FINRA, 102*
175    *F.4th 55, 74 (D.C. Cir. 2024)* (finding irreparable harm from subjection to FINRA's
176    illegitimate proceedings without adequate review, as it causes "impossible to remedy"
177    injury to due process rights). The requested injunction merely seeks to preserve and
178    disclose evidence in FINRA's exclusive possession.

179    **C. The Balance of Equities Favors Plaintiff**

180    27. The burden on FINRA to produce the requested data is minimal compared to the
181        ongoing harm Plaintiff suffers, including the loss of access to tens of thousands of
182        dollars in MMTLP shares due to the U3 halt's arbitrary imposition. *See, e.g., Alpine*
183        *Securities Corp. v. FINRA, 102 F.4th 55, 75 (D.C. Cir. 2024)* (equities favored plaintiff
184        where FINRA's regulatory interests were outweighed by the risk of permanent harm to
185        the plaintiff's operations). This request does not seek broad discovery or invasive relief,
186        but only materials tied directly to a discrete time frame (December 5–9, 2022) and a
187        single, narrowly defined event—the MMTLP U3 halt— materials such as blue sheet
188        data, internal communications, and records related to the unilateral corporate action
189        revisions.

190    28. The equities weigh heavily in Plaintiff's favor, as he has endured substantial financial
191        losses—not only from the 70% price drop on December 7–8, 2022 (Exhibit AA), but also
192        from the freezing of all his funds during the halt. Plaintiff has received no procedural
193        protections against FINRA's alleged ultra vires actions under Rule 6490, and has been
194        unable to obtain documentation explaining the unilateral revisions to the corporate
195        actions, the failure to address fraud (as indicated in Sam Draddy's email
196        acknowledging the issue on the fraud team's radar (Exhibit AD)), or the due process
197        violations inherent in the halt when PCO trading could have easily eliminated
198        settlement risks, without causing such constitutional harm. In contrast, FINRA faces
199        only the routine obligation to disclose documents relevant to its own actions, with no
200        disruption to its regulatory functions or broader market operations.

201    **D. The Injunction Serves the Public Interest**

202    29. The public has a compelling interest in transparency, especially when constitutional
203        rights are potentially violated by entities exercising federal authority. Ensuring
204        accountability for market regulators like FINRA not only supports investor confidence
205        but upholds the rule of law in financial markets.

206    30. Additionally, there is growing public and congressional concern regarding FINRA's
207        actions in this matter (Exhibit F & AE). FINRA's handling of the MMTLP U3 halt affected
208        approximately 65,000 shareholders who suffered substantial financial losses through
209        the freezing of funds. Compelling limited disclosure of facts surrounding the halt will
210        contribute to informed public discourse, responsible oversight, and broader market
211        fairness, aligning with congressional inquiries into these events.

212

213

214

215                                          **V. REQUESTED RELIEF**

216    31. Plaintiff seeks a preliminary injunction for limited, expedited discovery to obtain the
217         following narrowly tailored materials, all focused on the discrete time frame of
218         December 5–9, 2022, and the MMTLP U3 halt:

219    • Bluesheet data for MMTLP trades on December 6–9, 2022, to verify FINRA's short
220         interest claims, assess abusive short selling or naked shorts, and evaluate the
221         general market response to FINRA's revised corporate action prior to the U3 halt.

222    • Communications between FINRA and Meta Materials (or its representatives) from
223         December 5–9, 2022, to determine if revisions to the corporate action were
224         unilateral and arbitrary, in violation of Rule 6490.

225    • Internal FINRA decision documents, emails, or memos related to the MMTLP U3
226         halt and the December 6, 2022 & the December 8, 2022 revised corporate actions,
227         including any assessments of settlement risks and alternatives like PCO trading, to
228         evaluate the arbitrariness of the halt decision.

229    • Communications with the SEC referencing the Sam Draddy FOIA "Fraud Radar"
230         email (dated December 5, 2022) and/or communications in relation to the MMTLP
231         Corporate Actions or the MMTLP U3 Trading Halt.

232    • Communications between FINRA and DTCC regarding MMTLP, including any
233         minutes of meetings that excluded Meta Materials or Next Bridge Hydrocarbons.

234    • Records of short positions or fails-to-deliver (FTDs) for MMTLP on December 6–9,
235         2022, beyond bluesheet data, to further investigate discrepancies and abusive
236         practices, as well as determine how FINRA verified 2.6 million short shares
237         outstanding in Next Bridge Hydrocarbons.

238    32. This relief is narrowly tailored to preserve critical evidence, prevent irreparable harm
239         from delayed disclosure, and enable Plaintiff to substantiate his ultra vires and due
240         process claims, while imposing minimal burden on FINRA, as the materials are in its
241         exclusive possession and directly relevant to its own actions.

242    **VI. CONCLUSION**

243    33. For the foregoing reasons, Plaintiff respectfully requests that this Court grant the
244         motion for preliminary injunction and order Defendant FINRA to produce the requested
245         materials within fourteen (14) days. Prompt disclosure is necessary to preserve
246         Plaintiff's ability to pursue his claims, avoid further prejudice, and ensure that material
247         evidence is not lost or withheld in violation of due process. A Proposed Order is
248         attached hereto.

249                                    **CERTIFICATE OF SERVICE**

250    34. I, William Lee Kelly, certify that on July 18, 2025, I served a true and correct copy of the
251        foregoing Motion for Preliminary Injunction, including all attachments, exhibits, my
252        Personal Declaration, and the Proposed Order, to Defendant FINRA's registered agent
253        via Process Server, pursuant to FRCP 5(b)(2)(B).

254

255    Dated: July 18, 2025

256    /s/ *William Lee Kelly*

257    William Lee Kelly
258    Plaintiff, Pro Se
259    6126 Leaning Rock Ct.
260    North Las Vegas, NV 89031
261    Email: William.Lee.Kelly@gmail.com
262    Phone: (702)427-2763

263

264

265

266

267

268

269

270

271

272

273

274

275

276

277 **EXHIBIT INDEX**

| | **Exhibit** | **Description** |
|---|---|---|
| 279 | A | Meta Materials Inc. Press Release – November 23, 2022 |
| 280 | B | FINRA Corporate Action Notice – December 6, 2022 |
| 281 | C | FINRA Corporate Action Notice – December 8, 2022 |
| 282 | D | FINRA MMTLP Trading Halt FAQ – Released March 16, 2023 |
| 283 | E | FINRA Uniform Practice Advisory #35-22 – December 9, 2022 (U3 Halt) |
| 284 | F | 74 Member Congressional Letter to the SEC & FINRA – Dec. 22, 2023 |
| 285 | I | Response from FINRA CEO to Congressional Letter – Jan. 31, 2024 |
| 286 | L | FINRA FAQ - Short Positions In a Private Company – Nov. 6, 2023 |
| 287 | N | Charles Schwab Personal Account Statement - Dec. 31, 2022 |
| 288 | O | Copy of Complaint submitted to the SEC – Dec. 12, 2022 |
| 289 | P | Copy of Complaint submitted to SEC OIG – May 6, 2025 |
| 290 | Q | Copy of Complaint submitted to SEC OMBUD – Feb. 18, 2025 |
| 291 | R | Copy of Complaint to FBI IC3 – Feb. 14, 2025 |
| 292 | S | Copy of Complaint to Nevada Secretary of State – Jan. 28, 2025 |
| 293 | T | Copy of Complaint to Nevada Attorney General – June 14, 2024 |
| 294 | U | Initial Response letter from Congressman Horsford – June 6, 2024 |
| 295 | V | Second Response letter from Congressman Horsford – June 12, 2024 |
| 296 | W | Response letter from the office of Senator Cortez-Masto – May 15, 2025 |
| 297 | AA | Trading Data for MMTLP from Nov 21, 2022 to the U3 Halt |
| 298 | AD | FOIA Request Showing Sam Draddy's Correspondence With the SEC |
| 299 | AE | Letter From Congresswoman Barbara Lee – Dec. 4, 2023 |
| 300 | AG | Ameritrade Correspondence to MMTLP Holders Pre-Halt |
| 301 | AJ | NBH Disputes 2.65m Short Estimated Provided by FINRA in FAQ |
| 302 | AK | NBH Disputes FINRA's Role in the Corporate Actions |
| 303 | AO | Legal Declaration by George Palikaras regarding FINRA's Corp. Action |
| 304 | BA | Complete MMTLP Transaction History |

305    **EXHIBIT A**

306    **Meta Material Inc. Press Release – November 23, 2022**

307    **Subject:** Announcement of Distribution of Next Bridge Hydrocarbons, Inc. Shares and Series A
308    Preferred Stock Cancellation

309    **Source:** https://metamaterial.com/meta-materials-inc-board-of-directors-approves-
310    planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-
311    inc/?utm_source=chatgpt.com

312

# META MATERIALS INC. BOARD OF DIRECTORS APPROVES PLANNED COMPLETION OF THE SPIN-OFF OF NEXT BRIDGE HYDROCARBONS INC.

**HALIFAX, NS / ACCESSWIRE / November 23, 2022 /** Meta Materials Inc. (the "Company" or "META®") (NASDAQ:MMAT, FSE:MMAT), a developer of high-performance functional materials and nanocomposites, today announced that its board of directors has approved the distribution to the holders of META's Series A Non-Voting Preferred Stock ("Series A Preferred Stock" which is currently traded over-the-counter, or OTC, under the symbol MMTLP) of 100% of the common stock of META's wholly owned subsidiary, Next Bridge Hydrocarbons, Inc. ("Next Bridge") in accordance with the Distribution Agreement between META and Next Bridge. Upon completion of the distribution, Next Bridge will be an independent public reporting company, but the Next Bridge common stock is not and will not be publicly traded and will not be eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation.

Subject to certain conditions, including, among others, completion of all necessary actions and filings with regard to applicable state securities or "blue sky" laws and final FINRA approval, for which there can be no assurances that such approval will be given, each holder of Series A Preferred Stock as of 4 p.m. ET on December 12, 2022, (the record date for the distribution), will be entitled to receive one share of Next Bridge common stock for every one share of Series A Preferred Stock held as of the record date. The shares of Next Bridge common stock will be distributed on December 14, 2022 after the close of the trading markets, at which time (i) all of the shares of Series A Preferred Stock will be automatically cancelled, (ii) the holders of such Series A Preferred Stock will cease to have any rights with respect to such shares and (iii) the shares of Series A Preferred Stock, MMTLP, will no longer be tradable on the OTC market.

**Archives**

2024
2023
2022
2021
2020
2019
2018
2017
2016
2014

313

314

315

316

317   **EXHIBIT B**

318   **FINRA Corporate Action Notice – December 6, 2022**

319   **Subject:** Initial Corporate Action for MMTLP – Cancellation Date and Distribution Terms

320   **Source:** https://otce.finra.org/otce/dailyList

321



322

323

324

325

326

327    **EXHIBIT C**

328    **FINRA Corporate Action Notice – December 8, 2022**

329    **Subject:** Revised Corporate Action for MMTLP – Symbol Deletion Effective 12/13/2022

330    **Source:** https://otce.finra.org/otce/dailyList

331



332

333

334

335

336

337   **EXHIBIT D**

338   **FINRA Frequently Asked Questions (FAQ) Regarding the MMTLP Trading Halt – March**
339   **16, 2023**

340   **Subject:** FINRA's Public Explanation for the U3 Trading Halt and Related Market Disruption
341   **Source:** https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-
342   halt?utm_source=chatgpt.com

### 1. Why did FINRA halt trading in MMTLP?

FINRA is permitted under its rules to impose a quoting and trading halt in an OTC equity security where FINRA determines that an extraordinary event has occurred or is ongoing that has had a material effect on the market for the security or has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process. FINRA made such a determination for MMTLP and halted trading on December 9.

Among FINRA's concerns were the facts that, after December 12, the MMTLP shares would cease to be DTC-eligible; MMTLP shares would be cancelled at the time of the distribution (*i.e.*, December 14); and Next Bridge common stock was not expected to be DTC-eligible—raising uncertainty regarding how transactions executed after December 8 would settle in an orderly manner in relation to these dates. Had MMTLP continued trading after December 8, there was the possibility that investors buying MMTLP during that time period may not have realized that those shares were about to be cancelled by Meta Materials, that they may not receive MMTLP shares before they were cancelled, and that they would not be recorded on December 12 as MMTLP holders eligible to receive Next Bridge common stock in the distribution.

### 2. Why did FINRA halt trading on December 9 if shareholders as of December 12 were entitled to receive the Next Bridge distribution?

FINRA halted trading in MMTLP on Friday, December 9, because securities transactions typically must settle within two business days in accordance with SEC rules. This means that trades in MMTLP executed on December 8 typically would settle on December 12, while trades executed on December 9 or December 12 typically would not settle until after December 12. This is important because a seller ceases to be a holder of shares and a purchaser becomes a holder of shares only after a transaction settles. Therefore, for purposes of the Next Bridge / MMTLP corporate action, only those trades in MMTLP that were executed on or before December 8 typically would have settled in time to establish the purchaser as a new holder of the shares as of December 12.

In addition, after December 12, the MMTLP shares would no longer be DTC-eligible (and the Next Bridge shares were not expected to be DTC-eligible). This means that, after December 12, any unsettled trades in MMTLP would have needed to be handled through broker-to-broker processes outside of DTC. Thus, there was uncertainty about whether trades executed *after* December 8 would settle in an orderly manner, including whether they would settle before the MMTLP shares were cancelled on December 14.

In other words, for trades in MMTLP executed after December 8, the seller of MMTLP shares would still have been recorded as the holder eligible to receive Next Bridge shares as part of the corporate action distribution, and the buyer would not be recorded as eligible to receive Next Bridge shares in the distribution. Moreover, the buyer would have purchased shares that would be cancelled on December 14, and there was uncertainty as to whether these trades would be settled in an orderly manner before the cancellation date. *See also* Question # 7 below.

343

344

345    **EXHIBIT E**

346    **Subject:** FINRA Trading Halt Advisory – U3 Halt and Symbol Deletion of MMTLP  - December

347    9, 2022 (Support for Violating FINRA Rule 6440)

348    **Source:** https://www.finra.org/sites/default/files/2022-12/UPC-35-2022-

349    MMTLP%28Halt%29_2.pdf?utm_source=chatgpt.com

350



**Attn: Trading and Market Making/Legal and Compliance/Operations/Systems**
**UNIFORM PRACTICE ADVISORY (UPC # 35-22) 12/09/2022**

**Trading and Quotation Halt for META MATERIALS PFD SER A (MMTLP)**

Effective Friday, December 09, 2022, the Financial Industry Regulatory Authority, Inc.
("FINRA") halted trading and quoting in the Series A preferred shares of Meta Materials Inc.
(OTC Symbol: MMTLP). Pursuant to Rule 6440(a)(3), FINRA has determined that an
extraordinary event has occurred or is ongoing that has caused or has the potential to cause
significant uncertainty in the settlement and clearance process for shares in MMTLP and
that, therefore, halting trading and quoting in MMTLP is necessary to protect investors and
the public interest.

The trading and quoting halt will end concurrent with the deletion of the symbol effective
Tuesday, December 13, 2022. *See* updated FINRA Daily List announcement of December 8,
2022, regarding MMTLP; available here: https://otce.finra.org/otce/dailyList.

*See also* Form S1 Registration Statement for Next Bridge Hydrocarbons, Inc. stating that
**"...immediately after the Spin-Off, all shares of Series A Non-Voting Preferred
Stock of Meta shall be cancelled."**  Available here:
https://www.sec.gov/Archives/edgar/data/1936756/000119311522281275/d302576ds1a.ht
m.

Questions regarding this notice can be directed to: FINRA Market Operations at
(866) 776-0800, Option 2.

351

352

353

354

355    **EXHIBIT F**

356    **Subject:** Letter from Congressman Ralph Norman to FINRA CEO Robert Cook and SEC Chair
357    Gary Gensler - December 22, 2023 (Support for Violating FINRA Rule 8210)

358    **Source:** https://norman.house.gov/uploadedfiles/rep-norman-mmtlp-letter-2023-12-22-
359    final.pdf?utm_source=chatgpt.com

Please provide a response to the following questions and requests no later than January 31, 2024:

1. Provide a timeline of trading of MMTLP on the OTC markets; the actions taken by the SEC, self-regulatory organizations, the issuers, the transfer agent, and any other relevant parties during the time MMTLP was traded; and the transaction that produced Next Bridge Hydrocarbon shares.

2. The Former CEO of Torchlight Energy Resources stated that "MMTLP was never designed to trade."[5] Please provide a detailed explanation, including the relevant statutory authority and procedures, that allowed for MMTLP shares to trade on the OTC market.

3. Provide the relevant statutory authority, jurisdiction, and adherence to established industry standards regarding the U3 trading halt of MMTLP issued on December 9, 2022.

4. Provide the exact date and circumstances surrounding FINRA's determination to implement the U3 halt, including all unredacted communications between FINRA, SEC, governmental agencies, any outside organizations, FINRA members and non-FINRA members, and any other individuals. Also include all information surrounding the SEC or FINRA's knowledge of the share price in any public or non-public exchange before issuance of the U3 halt.

5. Provide the first date and time that FINRA or its agents advised any market participant in any manner that MMTLP would no longer trade on December 9, 2022. Include any relevant documents or communication.

6. Did FINRA issue a Blue Sheet request for MMTLP during the period of October 2021 through December 2022? Why or why not?

7. How many questions, complaints, and/or inquiries have you received regarding MMTLP?

8. Provide the statutory or legal justification used by the SEC and FINRA to ignore public requests and congressional inquiries regarding MMTLP.

9. Provide the delivery of a certified audited and consolidated count of shares that were held by all U.S. and foreign financial institutions, together with their clearing firm counter-brokers including trades not reported in the consolidated audit trail (CAT), related to MMTLP on the date of December 12, 2022. Please include all shares/holdings of long and short positions, as well as IOUs held by each participating broker and market participant as record owner, beneficial owner, or in any other capacity (each reported separately) including but not limited to: all shares registered at AST, all shares held in

360

361

362

363    **EXHIBIT I**

364    **Subject:** Letter from FINRA CEO Robert Cook to Congressman Ralph Norman - Jan. 31, 2024
365    (support for violating FINRA Rule 6440)

366    **Source:** https://norman.house.gov/uploadedfiles/2024-01-31-finra-response-to-rep-norman-
367    regarding-mmtlp.pdf?utm_source=chatgpt.com

Some investors continue to question FINRA's reasons for imposing the halt, and we continue to observe inaccurate information circulating on some social media about trading in MMTLP and the trading halt. While we discuss these questions in greater detail below and in our FAQs, it is helpful to first highlight several key facts about trading in MMTLP and FINRA's role:

- FINRA's decision to halt trading was due to clearance and settlement concerns in light of the structure and timing of the corporate action. As a result, ongoing trades after December 8, 2022 would not be settled by December 12, 2022, or predictably thereafter, risking significant investor confusion and harm. Contrary to some theories circulated on social media, FINRA did not initiate the halt because there were problems with a "share imbalance" and "counterfeit shares," or because of short positions held by hedge funds. FINRA also did not provide advance notice of the trading halt to broker-dealers, hedge funds, or any other market participant.

- Investors have expressed confusion regarding whether Meta Materials needed to approve the commencement of trading in MMTLP. Generally, an issuer's approval is not needed for a security to trade outside of a securities exchange, *i.e.*, "over the counter" (OTC), although an issuer may take steps to limit such trading. The issue of whether a security can be publicly traded is governed by the Securities Act and SEC rules; for purposes of these provisions, it does not appear that Meta Materials took effective steps to restrict public trading in MMTLP.

368

369

370

371

372

373

374

375

376

377

378

379     **EXHIBIT L**

380     **Subject:** FINRA FAQ - Short Positions In a Private Company – Nov. 6, 2023

381     **Source:** https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-
382     trading-halt

383

### 14. How much short selling was there in MMTLP around the time of the Next Bridge / MMTLP corporate action? Was there a large short position in MMTLP shares?

FINRA periodically collects short interest information from broker-dealers and publishes short interest reports twice each month based on that information. As explained in the March 16, 2023, MMTLP FAQs, Question No. 8, these reports reflect a snapshot of the total open short positions existing in a security on the books and records of broker-dealers on a given reporting settlement date. The last short interest reporting settlement date available for MMTLP was November 30, 2022, because the issuer cancelled the MMTLP shares and the symbol was deleted prior to the next short interest reporting settlement date. Thus, short interest data for MMTLP around the time of the corporate action was not made publicly available.[11]

Based on FINRA's subsequent regulatory efforts, FINRA estimates that there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12[12] of approximately 2.65 million shares out of 165.47 million total shares outstanding, which is not a significant percentage—only 1.6%—of the total shares outstanding.[13] The short interest position in MMTLP had therefore decreased substantially—by nearly 60%—between November 15 and December 12. Specifically, short interest in MMTLP as of November 15, 2022, (approximately 6.4 million shares) declined around 27% to approximately 4.7 million shares as of November 30, 2022, and declined about a further 32% to approximately 2.65 million shares as of December 12.

384

385

386

387

388

389

390

391

392

393

394

395    **EXHIBIT N**

396    **Subject:** Charles Schwab Personal Account Statement -  Dec. 31, 2022

397    **Source:** https://client.schwab.com/app/accounts/statements/#/



| | Schwab One® Account of | Account Number | Statement Period |
|---|---|---|---|
| | WILLIAM LEE KELLY | 1712-6093 | December 1-31, 2022 |

**Account Value as of 12/31/2022:$ 174.19** $^\Delta$

| Change in Account Value | This Period | Year to Date |
|---|---|---|
| Starting Value | $ 187,445.87 | $ 36,815.47 |
| Credits | 0.02 | 0.07 |
| Debits | 0.00 | (0.02) |
| Transfer of Securities (In/Out) | 0.00 | 0.00 |
| Income Reinvested | 0.00 | 0.00 |
| Change in Value of Investments | (187,271.70) | (36,641.33) |
| Ending Value on 12/31/2022 $^\Delta$ | $ 174.19 | $ 174.19 |
| Total Change in Account Value | $ (187,271.68) (99.91)% | $ (36,641.28) (99.53)% |



Account Value [in Thousands]

| Asset Composition | Market Value | % of Account Assets |
|---|---|---|
| Bank Sweep $^{X,Z}$ | $ 58.65 | 34% |
| Equities | 103.15 | 59% |
| Exchange Traded Funds | 12.39 | 7% |
| Total Assets Long $^\Delta$ | $ 174.19 | |
| Net Loan Balance | 0.00 | |
| Total Account Value $^\Delta$ | $ 174.19 | 100% |



- 34% Bank Sweep [X,Z]
- 59% Equities
- 7% Exchange Traded Funds

398

399

400

401

402

403

404

405    **EXHIBIT O**

406    **Subject:** Initial Complaint Filed with the U.S. Securities and Exchange Commission (SEC)

407    **Source:** Personal Email Account



SEC Response HO::~01271164~::HO    Inbox ×    MMTLP Lawsuit ×

"Help" <help@sec.gov> <help@sec.gov>                    Mon, Dec 12, 2022, 10:18 AM
to me

Dear William Kelly:

Thank you for contacting the U.S. Securities and Exchange Commission (SEC).

The SEC's Office of Investor Education and Advocacy processes many comments from individual investors and others. We keep records of the correspondence we receive in a searchable database that SEC staff may make use of in inspections, examinations, and investigations. In addition, some of the correspondence we receive is referred to other SEC offices and divisions for their review. If they have any questions or wish to respond directly to your comments, they will contact you.

Please note that securities exchanges and self-regulatory organizations (SROs), not the SEC, determine whether to impose a trading halt in a stock. Please see https://www.finra.org/investors/investing/investment-products/stocks/trading-halts-delays-suspensions for more information.

Information regarding the trading halt of Meta Materials (MMTLP) is available at https://www.finra.org/sites/default/files/2022-12/UPC-35-2022-MMTLP%28Halt%29_2.pdf

Sincerely,

Office of Investor Education and Advocacy
U.S. Securities and Exchange Commission
(800) 732-0330
www.sec.gov
www.investor.gov

408    www.twitter.com/SEC_Investor_Ed

409

410

411

412

413

414    **EXHIBIT P**

415    **Subject:** Complaint Filed with the SEC Office of Inspector General (OIG)

416    **Source:** Personal Email Account

Complaint received by the SEC OIG; Hotline Report No. 2025066507    MMTLP Lawsuit ×

**OIG**                                                                    Wed, Jun 11, 10:54 AM (6 days ago)    ☆    ☺    ↩    ⋮
to me ▾

Thank you for contacting the U.S. Securities and Exchange Commission (SEC) Office of Inspector General (OIG).  We received the report of your complaint.

We will evaluate the information provided and determine an appropriate action.  Options include opening an OIG review; referring the matter to a SEC Division or Office for review, if warranted; and taking no further action.  In this regard, please note the following:

- The SEC OIG is an independent office within the SEC that conducts audits and evaluations of SEC programs and operations and investigates allegations of fraud, waste, or abuse at or against the SEC.
- The OIG derives its authority from the Inspector General Act of 1978, as amended.  In accordance with that statute, we cannot perform SEC operating responsibilities, such as investigation of alleged securities law violations.
- Our authority is limited to issues that relate to SEC programs, operations, and personnel.
- We have no authority to direct SEC action with regard to SEC operations, such as (1) change its policies, (2) commence or conclude any particular investigation, (3) implement new securities rules for market participants, or (4) initiate administrative disciplinary action.
- Due to privacy interests, we do not provide complainants with updates on, or the results of, a complaint or investigative matter.  However, our audit reports are published on www.sec.gov/office-inspector-general.
- General questions about the Federal securities laws and complaints about financial investment professionals can be directed to the SEC's Office of Investor Education and Advocacy at www.sec.gov/oiea/QuestionsAndComments.html, www.sec.gov/oiea/Complaint.html, help@sec.gov, 202-551-6500 or 1-800-732-0330.  [Note: The SEC staff cannot act as a personal representative or attorney.  Thus, they cannot represent investors and may be unable to assist you in private disputes with other parties.]
- Allegations of Federal securities law violations should be reported using the online Web form located at www.sec.gov/tcr.  You should detail how the individual(s) violated U.S. Federal securities laws.  Tips, Complaints, and Referral Filing Guidance is available at www.sec.gov/complaint/info. [Note: SEC investigations are conducted confidentially.  As a result, the SEC generally will not confirm or deny the existence of an investigation unless and until it becomes a matter of public record.  www.sec.gov/answers/investg.htm.]

Respectfully,

The Office of Inspector General
U.S. Securities and Exchange Commission
100 F Street, NE, Washington, DC  20549-2977

417    oig@sec.gov

418

419

420

421

422

423

424    **EXHIBIT Q**

425    **Subject:** Submission to the SEC Office of the Ombudsman

426    **Source:** Personal Email Account

SEC Ombuds Matter Management System (OMMS) Submission - Matter ID Number 20250214-
00015901    MMTLP Lawsuit ×

**Ombuds OMMS** <ombudsmanomms@sec.gov>                                    Tue, Feb 18, 9:22 AM    ★    ☺    ↩    ⋮
to me ▾


U.S. SECURITIES AND
EXCHANGE COMMISSION

Dear William Kelly:

Thank you for contacting the Ombuds of the U.S. Securities and Exchange Commission (SEC) regarding your concerns about preferred shares
issued by Meta Materials Inc. (Meta Materials) previously trading over-the-counter as MMTLP. The Office of the Ombuds handles retail
investor recommendations, questions and complaints about the SEC and the self-regulatory organizations (SROs) that it oversees.

The Ombuds generally treats matters as confidential and takes reasonable steps to maintain the confidentiality of communications. However, our
Office may need to contact other SEC divisions or offices, SROs, entities, and/or individuals to disclose information without permission under
certain circumstances including, but not limited to: a threat of imminent risk or serious harm; assertions, complaints, or information relating to
violations of the securities laws; allegations of government fraud, waste, or abuse; or if otherwise required by law. Information received by the
Ombuds may also be used in future recommendations to the SEC.

With regard to your specific requests, seeking: (1) "a complete independently audited share count of the TOTAL outstanding shares of MMTLP
and the 2 days of trading that investors should have had, so all outstanding positions can be closed and settled"; and (2) "answers from the SEC
regarding their oversight of FINRA for breaking rule 6490, FINRA Rule 6432, SEC Rule 15c2-11, FINRA Rule 2010, and FINRA Rule 6440
which they used to issue the U3 Halt," please be advised that our Office has been, and continues to be, in communication with certain
individuals, Offices, and Divisions here at the SEC regarding these and similar investor concerns.

427    Thank you again for contacting the SEC Ombuds. We appreciate your views.

428

429

430

431

432

433

434

435

436

437   **EXHIBIT R**

438   **Subject:** FBI IC3 Complaint Submission

439   **Source:** Personal Email Account



**William Kelly** <william.lee.kelly@gmail.com>                    Fri, Feb 14, 4:22 PM
to me ▾

**Submission ID:**

02eda4cc184849d5b5ee772771514181

**Date Filed:**

2/14/2025 7:20:36 PM EST

**Were you the one affected in this incident?**

Yes

↩ Reply      ↪ Forward      ☺

440

441

442

443

444

445

446

447

448

449

450

451     **EXHIBIT S**

452     **Subject:** Complaint Filed with Nevada Secretary of State

453     **Source:** Personal Email Account

## Nevada Secretary of State: Online Securities Complaint Submission

Inbox ×    MMTLP Lawsuit ×

**nvsec@sos.nv.gov**                                        Tue, Jan 28, 11:34 AM    ☆  ☺  ↩  ⋮

to me ▾

A new entry to a form/survey has been submitted.

| | |
|---|---|
| **Form Name:** | Securities Complaint |
| **Date & Time:** | 01/28/2025 11:34 AM |
| **Response #:** | 311 |
| **Submitter ID:** | 9678 |
| **IP address:** | 167.154.231.5, 198.143.33.41 |
| **Time to complete:** | 40 min. , 40 sec. |

454

455

456

457

458

459

460

461

462

463

464

465

466

467

468   **EXHIBIT T**

469   **Subject:** Complaint Filed with the Nevada Attorney General

470   **Source:** Personal Email Account

### [agdb.ag.state.nv.us #63955] AutoReply: Complaint :Kelly ,William |Agency - FINRA  Inbox ×   MMTLP Lawsuit ×   🖨

**AG Intake Investigations Department via RT** <agrequest...   Fri, Jun 14, 2024, 4:00 PM   ★   😊   ↰   ⋮
to me ▾

Greetings,

The Office of the Nevada Attorney General, Constituent Services Unit acknowledges receipt of your complaint. You will be notified upon completion of the review process between 14 to 45 business days. We do not provide emergency services. If additional information is required, you will be contacted by a member of our staff. Please note that pursuant to NRS 241.039(7), Open Meeting Law complaints are public records.

-----------------------------------

This message has been automatically generated in response to the creation of a trouble ticket regarding **Complaint :Kelly ,William |Agency** - **FINRA**, a summary of which appears below.

There is no need to reply to this message right now. Your ticket has been assigned an ID of **[agdb.ag.state.nv.us #63955]**.

Please include the string **[agdb.ag.state.nv.us #63955]** in the subject line including the brackets of all future correspondence about this issue. To do so, you may reply to this message. Ex: [agdb.ag.state.nv.us #42]

Thank you,

--------------------Section 1 Requestor Information------------------------------
1.Please Enter Your Email Address

471   william.lee.kelly@gmail.com

472

473

474

475

476

477

478

479

480    **EXHIBIT U**

481    **Subject:** Response Letter from the Office of Congressman Steven Horsford

482    **Source:** Personal Email Account



**RE: Your SEC Issue**    MMTLP Lawsuit ×

**Office of Congressman Steven Horsford** <NV04SH.DistrictServices...    Thu, Jun 6, 2024, 12:38 PM    ⋆    ☺    ↰    ⋮
to me ▾

STEVEN A. HORSFORD
4TH DISTRICT, NEVADA

COMMITTEE ON WAYS AND MEANS

SUBCOMMITTEE ON SOCIAL
SECURITY

SUBCOMMITTEE ON HEALTH

WASHINGTON, D.C. OFFICE
406 CANNON HOB
WASHINGTON, D.C. 20515
PHONE: (202) 225-9894

NORTH LAS VEGAS
DISTRICT OFFICE
2250 N LAS VEGAS BLVD,
SUITE 500
NORTH LAS VEGAS, NV
89030
PHONE: (702) 963-9360

**Congress of the United States**
**House of Representatives**
**Washington, DC 20515**

June 6, 2024

Dear Mr. Kelly,

Our office has received your request for assistance with your SEC issue, and I have submitted an inquiry on your behalf to the SEC.

Please be aware that, even with Congressional inquiries, it may take some time for the agency to respond, so I cannot give you a time frame. Rest assured, however, that I will contact you as soon as I receive a response.

Sincerely,

*Ruby Scott*

District Representative

483

484

485

486

487    **EXHIBIT V**

488    **Subject:** Second Response Letter from the Office of Congressman Steven Horsford

489    **Source:** Personal Email Account

June 12, 2024

Dear Mr. Kelly,

Here is the response I received from the SEC:

*June 12, 2024*

*The Honorable Steven Horsford*
*U.S. House of Representatives*
*2250 Las Vegas Blvd. North, Ste. 500*
*North Las Vegas, NV 89030*
*Attention: Ruby Scott (via email)*
*Re: Mr. William Kelly ES#162455/HO::~01395772~::HO*

*Dear Representative Horsford:*

*Thank you for your June 6, 2024 letter to the U.S. Securities and Exchange Commission (SEC) on behalf of the above-referenced constituent. Your correspondence was forwarded to the SEC's Office of Investor Education and Advocacy.*

*Mr. Kelly seeks assistance with the Financial Industry Regulatory Authority's (FINRA) trading halt of Meta Materials Inc. (MMTLP). FINRA, which imposed the halt, has posted information regarding the MMTLP trading halt on its website. Please see FAQ: MMTLP Corporate Action and Trading Halt | FINRA.org. Securities exchanges and self-regulatory organizations, rather than the SEC, determine whether to impose a trading halt in a stock. For more information about trading halts generally, please see "Trading Halts and Delays" in the SEC's Investor.gov glossary.*

*The SEC's Office of Investor Education and Advocacy processes many comments and complaints from individual investors and others. We keep records of the correspondence we receive in a searchable database that SEC staff may make use of in inspections, examinations, and investigations. In addition, some of the correspondence we receive is referred to other SEC offices and divisions for their review. If they have any questions or wish to respond directly to Mr. Kelly's complaint, they will contact Mr. Kelly.*

*Sincerely,*

490    *Ruby Scott*

491

492

493    **EXHIBIT W**

494    **Subject:** Response Letter from the Office of Senator Catherine Cortez Masto

495    **Source:** Personal Email Account

Contact for Agencies to Reach Out to Regarding MMTLP   Inbox ×   MMTLP Lawsuit ×              ✕   🖨

**Hoffecker, Craig** <choffecker@lcb.state.nv.us>                          📎   Thu, May 15, 10:06 AM   ⭐   🙂   ↩   ⋮
to me ▾

William Lee Kelly
William.lee.kelly@gmail.com

Dear Mr. Kelly,

I am sorry to hear of you situation with MMTLP.  I learned of your situation as you recently contacted members of the Nevada Legislature.

It appears that you have already contacted the United States Securities and Exchange Commission (SEC) with your concerns.  I found the same comments you sent to the Nevada Legislature also listed on the SEC's website as "File No. 365-28" dated March 4, 2025.  There is an "investor complaint form" and "investor question form" where you may submit your concerns and explanation to the SEC if you have further concerns to make to the agency. The federal agency may be the best route for you to voice your concerns about MMTLP, possible early close of trading, and related matters.

The Financial Industry Regulatory Authority (FINRA) you may have also already reached out to with your concerns. Since FINRA may have more involvement with regulation of brokers and their firms, I do not know if contacting FINRA will be as useful to you as the SEC.  However, you may wish to contact FINRA in Washington, D.C. at (301) 590-6500 to see what type of information or service it may provide to you.

Finally, if you wish to call or write your federal officials representing Nevada regarding the MMTLP, you may find their contact information within the attached file for Nevada's major elected officers.

Thank you for taking the time to reach out and all the best to you in finding a resolution to the issues with MMTLP.

Craig



**Craig Hoffecker**
Manager of Constituent Services
Nevada Legislative Counsel Bureau, Research Division
Constituent Services
401 S. Carson St., Carson City, NV 89701-4747
(775) 684-6740 | https://www.leg.state.nv.us/Division/Research/

496

497

498

499

500

501   **EXHIBIT AA**

502   **Subject:** Trading Data for MMTLP from Nov 21, 2022 to the U3 Halt

503   **Source:** https://stockinvest.us/stock-price/MMTLP

504

## Historical Meta Materials Inc. prices

| Date | Open | High | Low | Close | Volume |
|------|------|------|-----|-------|--------|
| Dec 09, 2022 | $2.96 | $2.96 | $2.96 | $2.96 | 0 |
| Dec 08, 2022 | $4.41 | $4.50 | $2.85 | $2.96 | 8 333 725 |
| Dec 07, 2022 | $9.88 | $9.90 | $7.07 | $7.90 | 3 714 213 |
| Dec 06, 2022 | $7.15 | $9.70 | $5.04 | $7.97 | 3 907 648 |
| Dec 05, 2022 | $8.25 | $9.00 | $7.55 | $7.60 | 1 467 521 |
| Dec 02, 2022 | $8.90 | $8.90 | $8.10 | $8.21 | 992 624 |
| Dec 01, 2022 | $8.25 | $9.05 | $7.75 | $8.17 | 1 678 750 |
| Nov 30, 2022 | $9.72 | $10.00 | $7.76 | $8.50 | 1 305 436 |
| Nov 29, 2022 | $9.70 | $9.75 | $9.65 | $9.72 | 393 564 |
| Nov 28, 2022 | $10.79 | $10.98 | $9.61 | $10.02 | 1 544 600 |
| Nov 25, 2022 | $10.87 | $10.99 | $9.88 | $10.03 | 1 673 741 |
| Nov 23, 2022 | $10.72 | $10.95 | $8.55 | $10.00 | 1 601 754 |
| Nov 22, 2022 | $11.85 | $12.50 | $10.85 | $12.00 | 3 045 999 |
| Nov 21, 2022 | $9.90 | $11.30 | $9.43 | $11.21 | 2 767 169 |

505

506

507

508

509

510

511

512    **EXHIBIT AD**

513    **Subject:** FOIA Request Showing Sam Draddy's Correspondence With the SEC

514    **Source:** https://x.com/RareDealsHere/status/1909256130574057870/photo/3

From: Draddy, Sam <Sam.Draddy@finra.org>
Sent: Monday, December 5, 2022 9:07 AM
To: [(b)(6): (b)(7)(C)]                    @SEC.GOV>
Cc: [(b)(6): (b)(7)(C)]                @SEC.GOV>; [(b)(6): (b)(7)(C)]          @SEC.GOV>; Boyle,
Richard <Richard.Boyle@finra.org>; Gibbon, Jay <Jay.Gibbon@finra.org>
Subject: RE: Inquiry

**CAUTION:** This email originated from outside of the organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

[(b)(6): (b)(7)(C)]—looks like this MMAT/MMTLP matter has now hit my Fraud team's radar screen and
seemingly a lot of other radar screens as well). I know you have spoken to Patti Casimates and our
General Counsel's office—but was wondering if it made sense for my Fraud team to have a
conversation directly with you and your folks working on the matter so we are not duplicating
efforts. We are looking at the two issuers from a fraud/manipulation angle and, in fact, bluesheeting
both MMAT and MMTLP as we speak.

If you think a comparison of notes is worth a quick call—let me know a good day/time.  I can set up a
zoom and feel free to let me know if [(b)(6): (b)(7)(C)] or anyone else should be included.

Thanks [(b)(6): (b)(7)(C)]

515    Sam

516

517

518

519

520

521

522

523

524

525

526    **EXHIBIT AE**

527    **Subject:** Letter from Congresswoman Barbara Lee regarding MMTLP Resolution

528    **Source:** https://x.com/xMarketNews/status/1731863801522168131/photo/1

### Congress of the United States

#### Washington, DC 20515

December 4, 2023

The Honorable Gary Gensler
Chairman
U.S. Securities and Exchange Commission
100 F St. NE Washington, D.C. 20549

Dear Chairman Gensler,

I am writing regarding an action taken by the Financial Industry Regulatory Authority (FINRA) on META Material's Series A Preferred Shares (MMTLP). This has been brought to my attention by a number of my constituents who have expressed concerns with the holding and status of their MMTLP shares. On December 8th, 2022, FINRA halted trading of MMTLP and announced deletion of the MMTLP symbol five days later. My constituents have expressed that as a result, they were left without clarify on the future of their investments.

The U.S. Securities and Exchange Commission (SEC) and FINRA have a responsibility to protect investors and safeguard the integrity of our public markets. Given the financial distress constituents have experienced because of these decisions, I want to ensure that market decisions are being made by regulators in an efficient and transparent manner.

I request that you fully investigate the events surrounding the trading halt of MMTLP and ensure no wrongdoing took place. Furthermore, I request that you make any findings publicly available and that you to provide clear guidance to my constituents about what they should expect to occur regarding their current MMTLP holdings and under what timeline they should expect a resolution to take place. I also ask that you identify any regulatory or legislative gaps that could be addressed to better protect investors and market integrity.

Thank you for your attention to this matter and I look forward to your response.

Sincerely,

Barbara Lee
Member of Congress

529

530

531

532    **EXHIBIT AG**

533    **Subject:** Ameritrade Correspondence to MMTLP Holders Pre-Halt

534    **Source:** https://x.com/JunkSavvy/status/1905727233414494981/photo/2



Wed Mar 8 2023 12:06:00 am ET

**Re: MMTLP Finra Corporate Action Notice**
From: Institutional Message Center | Date: 12/09/22 9:30 AM  Message available until 12/08/24.

Hello

Good Morning!  Thank you for taking the time to respond to our message and I hope you are having a wonderful day so far!  My name is Bob, and I am happy to continue helping you with your account today!

We did receive some information from MMTLP.  These are the details and guidance they provided.

MMTLP shareholders with settled positions as of 12/12/22 (Record Date) will receive one share of Next Bridge Hydrocarbons, Inc for every one share of MMTLP. Scheduled Pay Date for this distribution is 12/14/22.

New long purchases (BUYS) of MMTLP executed after 12/08/22 will NOT receive Next Bridge Hydrocarbons, Inc shares. As such, after market close on 12/8/2022.
New long BUY orders of MMTLP placed after market close on 12/8/2022 will be routed for review and canceled.
New closing SELL orders of MMTLP should be routed normally, but there may be liquidity issues on 12/9/22 and 12/12/22.
Current open long BUY orders that are GTC will be canceled after market close on 12/8/22.
In addition, MMTLP shares will be canceled 12/13/22 and no trading will occur.
Clients should trade or hold this security at their own risk.

Hope this helps!  Thank you so much for being a client here at TD Ameritrade, Tim!  We truly appreciate it!  I hope you have a fantastic day!

We greatly appreciate your business and know you have a choice where you invest. If there is anything else we can do for you, or could have done better, please let us know.

We look forward to serving your needs for years to come.

Respectfully,

Robert Mangan
Client Services

TD Ameritrade
1-800-669-3900

535

536

537

538

539

540

541

542

543    **EXHIBIT AJ**

544    **Subject:** NBH Disputes 2.65m Short Estimated Provided by FINRA in FAQ

545    **Source:** https://cdn.prod.website-
546    files.com/6169e69d0075ec7c66221a8b/65c66057134fd3d64ee87721_NBH%20Statement%20vF
547    %202-8-24.pdf

Second, we believe this information is necessary to help clarify potentially misleading information that has been disseminated to investors and the public. FINRA issued an "Investor Insights" FAQ on its website stating that "there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12 of approximately 2.65 million shares out of 165.47 million total shares outstanding." FINRA went on to characterize this volume as "not significant." We infer no intent to mislead by FINRA, but we note that this statement was not qualified to make clear that the scope of the data available to FINRA under the investigatory powers it cited was limited, and thus it implied a categorical summation of the entire uncovered short interest position in Next Bridge. Subsequent to our most recent press release of January 19, 2024 calling for short interest data from all sources, foreign or domestic, whether registered with FINRA or not, we observed that FINRA clarified in its letter to Congressman Norman that the short interest figure it cited was only based on U.S. member data and not that of "domestic or foreign non-member entities that could act as custodians or agents holding securities for others, including foreign-registered broker-dealers." However, it repeated its assertion

1

that the short interest position it saw was "nominal." Unfortunately, we believe this is a consequential blind spot in FINRA's data, because foreign firms have approached Next Bridge about procuring more than 2.65 million shares.

548

549

550

551

552

553

554

555

556

557    **EXHIBIT AK**

558    **Subject:** Next Bridge Disputes FINRA's Role in The Corporate Actions

559    **Source:** https://cdn.prod.website-
560    files.com/6169e69d0075ec7c66221a8b/65c66057134fd3d64ee87721_NBH%20Statement%20vF
561    %202-8-24.pdf

Third, we believe there is an onus on FINRA to help resolve ongoing investor concerns due to the role it played in the events that led to the U3 halt, and the subsequent confusion resulting from the halt itself. FINRA stated that it determined the U3 halt was "necessary and appropriate to protect investors and ensure a fair and orderly marketplace." Unfortunately, many investors continue to communicate great frustration that the halt accomplished quite the opposite and could have been avoided. We do not intend to litigate FINRA's decision-making in this release, but we also would like to ensure that we clarify certain points on which we have a divergent view from FINRA in regards to the corporate action announcing the NBH spinoff and subsequent U3 halt, since the issues are actively being discussed in public releases to our investors and publicized letters to Congress. As an initial matter, we take issue with FINRA's repeated assertion that "FINRA's role is limited to reviewing and processing the (corporate action) submission and announcing the corporate action to market participants (unless the corporate action documentation is found to be deficient under Rule 6490, in which case FINRA may determine not to process the corporate action)." We do not believe this describes the role that FINRA played in the MMTLP corporate action submission process, nor does it offer a complete recitation of FINRA's authority under Rule 6490. First, FINRA drafted the initial and revised corporate action notices on December 6th and 8th of 2022, with an instruction that the issuer was not to edit or interpret it, and included language that we believe itself became the source of market confusion. For example, while FINRA describes the notice to Congressman Norman as "consistent with the information provided by Meta Materials," it is notable that the notice actually introduced a new instruction that MMTLP shares would be "deleted" on December 13th – a date never before contemplated or referenced by the issuers, and which many found difficult to reconcile with Meta's announcement that the distribution of Next Bridge shares would take place the next day- on December 14th. Indeed, it was never proposed to FINRA to add a December 13 cancellation date or deletion date, and adding such a date created an unnecessary restriction to the corporate action and shareholders of MMTLP. In addition, FINRA's Rule 6490 allows it to refrain from processing requested corporate actions altogether if it "determines not processing is necessary to protect investors and the public interest and to maintain fair and orderly markets." In other words, the justification FINRA ultimately used for issuing the U3 halt was available to it at the outset of the process,

562

563

564

565

566

567

568     **EXHIBIT AO**

569     **Subject:** Legal Statements by George Palikaras regarding FINRA Corporate Actions

570     **Source:** https://www.dropbox.com/scl/fi/tbp2nwed5ldbopmjfclwb/Inter-Coastal-v.-TradeStation-
571     Decl.-ISO-Georgios-Pallikaras-
572     Signed_GP.pdf?rlkey=2wgw6dvot12b0km16szm4zrpn&e=1&st=z6nvgdol&dl=0



Case 0:24-cv-60891-AHS    Document 39-1    Entered on FLSD Docket 08/16/2024    Page 9 of

31.     Further, on or about December 8, 2022, FINRA notified the Company that it had unilaterally revised the language of the Company's December 6, 2022 corporate action and required the revised notice to be published on the Daily List. This revision was made without the input or authorization of the Company and took place on or about December 7, 2022, *after* FINRA had a call discussion with DTCC. I was informed that META II and Next Bridge's counsel were not invited to participate in the call between FINRA and DTCC.[14]

573
574
575
576
577
578
579
580