**EPG LAW GROUP**
Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933

*Attorneys for Defendant FINRA*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM LEE KELLY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY (FINRA)<br><br>　　　　　　Defendant, | CASE NO.: 2:25-cv-01195-APG-DJA<br><br>**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, hereby responds to Plaintiff William Lee Kelly's ("Kelly") opposition to FINRA's Motion to Dismiss ("FINRA's Motion") [ECF No. 32].

**I.    INTRODUCTION**

Kelly's opposition ("Opposition") reveals rather than resolves the fatal defects in his First Amended Complaint (the "FAC"): his jurisdictional theory relies on sweeping assertions of nationwide impact, not any conduct directed at Nevada, his constitutional claims collapse because FINRA is not a governmental actor, and his challenge to regulatory immunity cannot survive the controlling case law.

***First***, the FAC does not contain any facts to support personal jurisdiction over FINRA. In the Opposition, Kelly attempts to cure this defect by making vague and conclusory statements about FINRA's purported activities in Nevada. The FAC, however, does not allege that any of FINRA's purported misconduct occurred in the State of Nevada or that it was intentionally aimed at the forum. Further, the case law Kelly cites in his Opposition supports a finding that the FAC

1

fails to allege the requisite contacts to support personal jurisdiction over FINRA. For this reason alone, the Court should grant FINRA's Motion and dismiss the FAC.

**Second**, Kelly asserts that the FAC focuses on constitutional claims. Those claims, however, fail as a matter of law because FINRA is not a governmental actor. Kelly concedes that FINRA is a private entity, and he fails to refute the wall of authority finding that FINRA is not a governmental actor. Thus, the FAC must be dismissed.

**Third**, Kelly argues that FINRA's imposition of the MMTLP trading halt, and its publication of the corporate action notices were *ultra vires* activities not entitled to the protections of regulatory immunity. Kelly, however, acknowledges that FINRA was engaged in regulatory activities, and his attempts to establish that FINRA's activities are not protected by regulatory immunity fail as a matter of law. Kelly misconstrues legal precedent to support his argument that regulatory immunity is not absolute and that there are exceptions to regulatory immunity. Because the conduct about which Kelly complains is regulatory in nature, regulatory immunity requires the FAC be dismissed.

**Fourth**, Kelly's argument that he can maintain a private right of action against FINRA for constitutional violations and violations of FINRA's own rules or the Exchange Act are without merit. Ultimately, Kelly concedes that this Court is unlikely to let him proceed under an Exchange Act theory.

**Finally**, Kelly did not authenticate any of the 37 pages of purported "evidence" he attached to his Opposition. In the Ninth Circuit, extrinsic evidence may only be considered in connection with a Rule 12(b)(6) motion where its authenticity is undisputed. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). Kelly has not provided any such authentication, and this Court should disregard the improperly submitted "evidence."

The FAC is subject to dismissal as a matter of law. Further, because none of the fatal defects in the FAC can be cured by amendment, permitting Kelly an opportunity to further amend his complaint would be futile. Accordingly, FINRA's Motion should be granted and the FAC should be dismissed with prejudice and without leave to amend.

/ / /



## II. FINRA'S MOTION SHOULD BE GRANTED

### A. FINRA is Not Subject to Personal Jurisdiction in Nevada

The Opposition relies on conclusory arguments and inapplicable case law to support Kelly's argument that this Court has personal jurisdiction over FINRA. Opp'n [ECF 32] at 31:612-34:667. Kelly recites the minimum contacts standard to establish specific personal jurisdiction and asserts that "FINRA—through its U3 halt on MMTLP—engaged in regulatory action with nationwide reach and foreseeable local consequences." Opp'n at 32:632-40 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351 (2021)). In support of what Kelly characterizes as nationwide personal jurisdiction, Kelly relies on *Mariash v. Morrill*, 496 F.2d 1138 (2d Cir. 1974), and *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985). *See* Opp'n at 33:628-31. Unlike Kelly, the plaintiffs in those cases asserted causes of action for federal securities fraud and asserted federal question jurisdiction pursuant to Section 27 of the Exchange Act. *See Mariash,* 496 F.2d at 1142-44; *Vigman,* 764 F.2d at 1314.[1] And, while Kelly concedes that his MMTLP shares became shares in Next Bridge, Opp'n, at 27:548, 30:602-03, he proffers that the trading halt "caused investors across the country . . . to permanently lose access to their securities" and that he was "injured" in Nevada. Opp'n at 32:641-45.

Such generalized and sweeping assertions of injury fail to establish purposeful availment that supports personal jurisdiction over FINRA in Nevada. *See Ford Motor*, 592 U.S. at 359-60 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945)).[2] As discussed in FINRA's Motion, the FAC "does not

---

[1] To state a securities fraud claim, an essential element the plaintiff must allege is that the plaintiff bought or sold securities. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). The FAC includes no such allegation.

[2] Kelly misreads the holding in *Calder v. Jones* to support his argument that "personal jurisdiction exists where a defendant's conduct has a foreseeable and substantial effect in the forum state, even absent direct physical presence." Opp'n at 31:613-19. In *Calder*, the Court found that the California court had personal jurisdiction over the petitioners because they were "not charged with mere untargeted negligence," but rather their "intentional, and allegedly tortious, actions were expressly aimed at California." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

describe any activity or transaction occurring in Nevada, and exercising jurisdiction here would stretch due process beyond recognition and would offend the basic requirement of fairness." FINRA's Motion [ECF 24] at 11:5-7; *see also Gerwaski v. Nevada*, No. 2:24-cv-00985, 2025 U.S. Dist. LEXIS 84645, *8-11 (D. Nev. May 5, 2025); *Asahi Metal Ind. Co., Ltd. v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987). Kelly cannot cure this fatal defect in the FAC, and the FAC must be dismissed.

### B.     Kelly's Constitutional Claims Fail

#### 1.     Kelly Fails to Establish FINRA is a Governmental Actor

While the Opposition discusses FINRA's constitutional arguments, Kelly concedes that FINRA is a private entity. Opp'n at 11:233. Kelly fails to address any of the myriad authorities FINRA cites in its motion, and he fails to provide any authority that FINRA is a governmental actor.[3] To assert a constitutional claim, a plaintiff must first "demonstrate 'that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (citation omitted). Kelly's failure to counter the wall of authority establishing FINRA is not a governmental actor is fatal to Counts I and III in the FAC.

#### 2.     Kelly Fails to Establish Any Deprivation of a Property Right

Kelly concedes that his MMTLP shares became shares in Next Bridge. Opp'n at 27:548, 30:602-03. However, Kelly asserts that the property interest at stake is not "mere ownership" of those shares but rather "the right to sell, transfer, or otherwise alienate lawfully held shares." Opp'n at 27:547-28:551; 29:578-86). Kelly's conclusory and unsupported contentions are insufficient, as

/ / /

/ / /

---

[3]    Instead, Kelly relies exclusively on inapposite cases, none of which concern FINRA or relate to the claims in this case. *See* Opp'n at 10:225-28; 26:526-27:536 (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (a violation of the Fourth Amendment's command against unreasonable searches and seizures, by a federal agent acting under color of federal authority, gave rise to a federal cause of action for unconstitutional conduct); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001) (discussing the liability of a private entity under 42 USC § 1983); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (discussing the liability of private individual conspirators under 42 USC § 1983))

a matter of law, to establish Kelly was deprived of a property interest. *Fulilar v. Irwindale*, 760 F. Supp. 164, 166 (C.D. Cal. 1991).[4]

Kelly's effort to distinguish *Omnia* is unavailing. Opp'n at 30:587-95. Kelly contends that *Omnia* is inapplicable because "what was extinguished here was not a contractual expectancy but a fundamental property right." Opp'n at 30:594-95. Kelly contends that "the property interest at stake . . . was the elimination of the securities themselves and the market access that defines their value." Opp'n at 30:590-92. Kelly, however, fails to address the cases FINRA cited that apply the *Omnia* doctrine, and he fails to negate FINRA's argument that following *Omnia*, courts routinely reject takings claims premised on injury or impairment caused by lawful regulatory action. FINRA's Motion at 18:25-19:12; *see also Omnia Commercial Co. v. United States*, 261 U.S. 502, 507-11 (1923). Thus, Kelly does not establish that FINRA deprived him of any property right, and the FAC must be dismissed.

### C.    FINRA's Regulatory Immunity Bars the FAC

Kelly argues that FINRA "cannot invoke private corporate status to avoid constitutional scrutiny while simultaneously claiming governmental immunity." Opp'n at 27:540-43. But "it is by no means 'inconsistent' to find that, on the one hand, [an SRO] exercises insufficient state action to trigger constitutional protections . . ., while nevertheless holding that the [SRO] is entitled to absolute immunity in the exercise of its quasi-public regulatory duties." *Scher v. NASD,* 386 F. Supp. 2d 402, 408 (S.D.N.Y. 2005); *see also Am. Benefits Group, Inc. v. NASD,* No. 99 Civ. 4733, 1999 U.S. Dist. LEXIS 12321, *23-24 (S.D.N.Y. Aug. 5, 1999) (the NASD is entitled to absolute

---

[4] The authorities Kelly cites are again inapposite. *See, e.g., Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419, 426-35 (1982) (reciting the irrelevant historical rule that permanent physical occupation of another's physical property is a taking); *Silver v. NYSE*, 373 U.S. 341, 365-67 (1963) (a stock exchange requiring members to discontinue direct wire connections with a nonmember OTC securities broker-dealer, without giving the nonmember notice and an opportunity for hearing, is anticompetitive under the Sherman Act); *U.S. v. General Motors Corp.*, 323 U.S. 373, 378 (1954) (discussing takings in the context of eminent domain); *Hodel v. Irving*, 481 U.S. 704, 716-18 (1987) (analyzing § 207 of the Indian Land Consolidation Act).

Notably, Kelly purports to quote *Vigman*, 764 F.2d at 1314, for the proposition that "the right to transfer or sell stock is a core ownership right, and interference with that right can constitute a cognizable deprivation." Opp'n at 28:566-29:570. That quote, however, does not appear in *Vigman* or any other source cited by Kelly in the Opposition.

immunity when acting within the scope of its official duties, and it is not a state actor in its role as an SRO); *Barbara* v. *NYSE*, 99 F.3d 49, 58 (2d Cir. 1996) ("Although the [SRO] is a private, rather than a governmental entity, immunity doctrines protect *private* actors when they perform important *governmental* functions.") (emphasis added), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016).

In the Opposition, Kelly concedes that FINRA "engaged in regulatory action," Opp'n at 32:639-40, and that regulatory functions are subject to regulatory immunity, Opp'n at 17:347. As noted in FINRA's Motion, when FINRA halted trading of MMTLP, FINRA engaged in a "quintessentially regulatory function." FINRA's Motion at 12 (citing cases). Kelly argues, however, that FINRA's conduct "falls outside the scope of its delegated authority," and thus is not protected by regulatory immunity. Opp'n at 14:286-99. Kelly misconstrues *Sparta Surgical* and argues that "[c]ourts have consistently recognized that immunity does not extend to actions taken in bad faith, with gross negligence, or that exceed statutory authority." Opp'n at 22:445-47. Kelly's interpretation of the *Sparta Surgical* decision, however, directly contradicts the actual holding, which found that the SRO defendants are immune from suit even where the plaintiff alleged they acted in "a capricious, even tartuffian manner which caused Sparta enormous damage." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch*, 578 U.S. 374. Moreover, as demonstrated by the case law cited in FINRA's Motion, courts consistently hold that "[w]hen an SRO acts under the aegis of the Exchange Act's delegated authority, it is *absolutely immune* from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (emphasis added) (citing *Weissman v. NASD*, 500 F.3d 1293, 1298-99 (11th Cir. 2007)); *see also Gallagher v. FINRA, Inc.,* No. 21-13605, 2022 U.S. App. LEXIS 15309, *4 (11th Cir. June 3, 2022); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007); *Empire Fin. Grp. v. FINRA,* No. 08-80534-CIV-RYSKAMP/VITUNAC, 2009 U.S. Dist. LEXIS 133643, *18-19 (S.D. Fla. Jan. 15, 2009).

The "central question" to determine whether absolute regulatory immunity applies is "whether specific acts and forbearances were incident to the exercise of regulatory power." *In re*



*NYSE Specialists*, 503 F.3d at 98 (emphasis removed). Kelly admits that "the scope of SRO immunity is defined by the nature of the act, not the identity of the actor." Opp'n at 24:480-81 (citing *DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.,* 409 F.3d 93, 97 (2d Cir. 2005); *Weissman,* 500 F.3d at 1296). Kelly also admits that FINRA "engaged in regulatory action," Opp'n at 32:639, but he claims that "regulatory immunity is not absolute." Opp'n at 8:182. Where regulatory immunity applies, however, it must be absolute because "[t]here would be no point to an immunity that only protected actions that were in any event correct." *Dexter v. Depository Tr. and Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005). And, the cases upon which Kelly relies to argue that FINRA is not entitled to immunity actually *support* the application of immunity. *See, e.g, Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1214-15 (9th Cir. 1998) ("When [FINRA] acts in this capacity to suspend trading, [FINRA] is performing a regulatory function cloaked in immunity" and rejecting the plaintiff's argument for a "bad faith" exception to the immunity doctrine, noting "our circuit does not recognize such an exception."); *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011) (SRO entitled to absolute immunity where the action was "on its face, an exercise of the SRO's delegated regulatory functions") (internal quotation and citation omitted); *Weissman,* 500 F.3d at 1297 (immunity applies when an SRO is acting under the aegis of the Exchange Act's delegated authority); *D.L. Cap. Grp.,* 409 F.3d at 98 ("[P]recedent, not to mention common sense, strongly militates against carving out a 'fraud' exception to SRO immunity."); *Barbara*, 99 F.3d at 59 (extending immunity to NYSE in context of disciplinary proceedings).[5]

      Kelly also attempts to pierce FINRA's immunity defense by arguing immunity does not apply because the halt was "an operational act grounded in administrative decision-making—not

---

[5] Kelly also cites *Dennis v. Sparks*, 449 U.S. 24 (1980), to argue that private individuals lose immunity "when engaging in acts beyond lawful authority." Opp'n at 24:485-87. The *Dennis* case, however, does not address the loss of immunity, but rather the inapplicability of judicial immunity to the conduct of private individuals who were alleged to have corruptly conspired with a judge to engage in an official judicial act. *Dennis*, 449 U.S. at 29. The Supreme Court held that while the private individuals acted under color of law, the case could proceed against them because "petitioner has pointed to nothing indicating that . . . judicial immunity insulated from damages liability those private persons who corruptly conspire with the judge." *Id.* This case supports applying regulatory immunity to FINRA's purported misconduct because, like the judge in *Dennis* afforded immunity for his judicial acts, FINRA is entitled to immunity for its regulatory activities.

the result of adjudication, rulemaking, or any deliberative, adversarial process" protected by "quasi-judicial immunity." Opp'n at 20:406-07. This argument ignores the numerous court opinions that have already determined that when FINRA engaged in the conduct alleged in the FAC, FINRA was acting in a regulatory capacity, and regulatory immunity precludes any claims based on that conduct. *See, e.g., Traudt v. Rubenstein*, No. 2:24-cv-782, 2025 U.S. Dist. LEXIS 123280, *13-15 (D. Vt. June 30, 2025); *Tawil v. FINRA*, 2023 U.S. Dist. LEXIS 117247, at *2-3 (N.D. Fla. May 24, 2023); *Hofman v. Fid. Brokerage Servs., LLC*, 2023 U.S. Dist. LEXIS 81166, at *13-15 (C.D. Cal. May 8, 2023).[6] The reach of regulatory immunity is broader in scope than the conduct Kelly identifies, *see* Opp'n at 23:473-24:475, and Kelly misconstrues the holdings in cases cited in FINRA's Motion to argue FINRA's purported misconduct is not protected by regulatory immunity, Opp'n at 24:481-85.[7]

In sum, Kelly presents no arguments that overcome FINRA's assertion of regulatory immunity. Thus, Kelly's claims against FINRA are barred by absolute regulatory immunity, and the FAC should be dismissed in its entirety.

### D.   Kelly Has No Private Right of Action under the Exchange Act

Kelly argues that his "central claim is constitutional," Opp'n at 34:672-73, and that the cases cited by FINRA do not "foreclose a *Bivens* action for ultra vires conduct resulting in a Fifth Amendment violation." Opp'n at 34:683-35:684. However, for the reasons discussed above, Kelly cannot state a constitutional claim against FINRA, and Counts I and II must be dismissed. *See supra* II.B.

Kelly notes that "FINRA's conduct also resembles securities fraud under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5." Opp'n at 35:695-96. Kelly,

---

[6]   Kelly also devotes a minimum of five pages discussing limitations applicable to other types of immunity not applicable in this case. *See, e.g.,* Opp'n at 18:367-22:440 (discussing "quasi-judicial immunity"); *id.* at 24:479-25:508 (discussing implied immunity from antitrust liability). FINRA did not claim any protections based on quasi-judicial immunity, and Kelly did not assert an antitrust claim.

[7]   Another case Kelly cites to support his argument that FINRA is not entitled to immunity is *KCI USA, Inc. v. Healthcare Essentials, Inc.,* 2018 WL 1522701 (N.D. Ohio Mar. 28, 2018). FINRA has been unable to identify any such case citation.

however, admits that he failed to allege a securities fraud claim, Opp'n at 36:712-13 ("Plaintiff does not allege scienter with the specificity required for a direct 10b5 claim."). In FINRA's Motion, FINRA explained that Count II in the FAC "proffers that FINRA's acts and omissions amount to violations of its own rules and of the Exchange Act," and there is no private right of action for such a claim. FINRA's Motion at 14-20-22.[8] Kelly's failure to refute FINRA's argument constitutes a concession of the argument. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (argument is abandoned when not addressed by opposition brief responding to motion). Because neither the Exchange Act nor any other statute or common law principle provides for a private right of action against an SRO, like FINRA, for acts or omissions in connection with its duties as a regulator, Count II in the FAC must be dismissed.

### E.  Extrinsic Evidence Is Inadmissible and Improper to Consider in Connection with a Rule 12 Motion

Kelly attaches to his Opposition a number of exhibits that are irrelevant to resolving FINRA's Motion, are inadmissible, and are not properly considered in connection with a Rule 12 motion. In the Ninth Circuit, extrinsic evidence may only be considered in connection with a Rule 12(b)(6) motion where its authenticity is undisputed. *Johnson*, 793 F.3d at 1007. Here, Kelly has not authenticated any of the 37 pages of "evidence" he attached to his Opposition. Accordingly, the Court should disregard Kelly's improperly submitted "evidence."

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[8]  Kelly's assertion that "[c]ourts have consistently recognized a private right of action under Section 10(b)," Opp'n at 35:698-99 (citing cases not involving SROs), ignores the plethora of case law cited in FINRA's Motion, which establishes that "no private right of action exists *against an SRO* like FINRA for its regulatory acts, omissions, or alleged violations of its own rules." FINRA's Motion at 14:20-15:17 (emphasis added).

## III.   AMENDMENT WOULD BE FUTILE

No potential amendment could cure the fatal defects in the FAC. FINRA is not at home in Nevada and none of FINRA's alleged conduct occurred there or was specifically directed there, so Kelly cannot amend the complaint to establish personal jurisdiction in this Court. In addition, every court that has considered the issue has determined that FINRA is not a governmental actor, and Kelly cannot amend his complaint to establish any basis to assert constitutional claims against FINRA. Moreover, regulatory immunity precludes all of Kelly's claims as a matter of law. Finally, Kelly cannot state a private right of action against FINRA for alleged violations of its own rules. Accordingly, because further amendment would be futile, this Court should dismiss the FAC as to FINRA with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.   CONCLUSION

For the reasons stated herein and in FINRA's Motion, this Court should dismiss the FAC with prejudice and without leave to amend.

Dated: September 24, 2025

**EPG L**AW **G**ROUP

*[signature: Elias P. George]*

_____
Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933
*Attorneys for Defendant FINRA*

# CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025 I served a true and correct copy of the foregoing **DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by United States Mail at Las Vegas, Nevada, postage fully prepaid) upon the following:

William Lee Kelly
6126 Leaning Rock Ct.
North Las Vegas, NV 89031
William.Lee.Kelly@gmail.com
Phone: (702) 427-2763
*Plaintiff, Pro Se*

_____
Kimberly Rupe, EPG Law Group

