UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM LEE KELLY,<br><br>Plaintiff<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>Defendant | Case No.: 2:25-cv-01195-APG-DJA<br><br>**Order Granting Defendant's Motion to Dismiss, Denying Plaintiff's Motion for Preliminary Injunction, Denying Plaintiff's Motion for Leave to File Surreply, Denying Plaintiff's Motion for Judicial Notice, Denying Defendant's Motion for Judicial Notice, Denying Defendant's Motion for a Protective Order Staying Discovery, and Granting Plaintiff Leave to Amend Complaint**<br><br>[ECF Nos. 16, 17, 23, 24, 25, 36] |

The Financial Industry Regulatory Authority (FINRA) is a private, self-regulating organization that conducts the day-to-day regulation of the national securities markets under the Securities Exchange Act of 1934 (the Exchange Act).[1] On December 9, 2022, FINRA issued a trading halt of the preferred stocks of Meta Materials, Inc., identified with the symbol MMTLP. ECF No. 7 at 2-3. At the time, Meta Materials was in the process of spinning off part of its company into a new entity, Next Bridge Hydrocarbons, Inc., which would be a non-traded, privately held company. *Id.* at 3. MMTLP shares would be automatically transitioned into untradable shares of Next Bridge on December 14, 2022. *Id.* at 3-4. William Lee Kelly held MMTLP shares on the day FINRA issued the trading halt. *Id.* at 2. FINRA maintained the

---

[1] *See Sparta Surgical Corp. v. Nat'l Assn' of Sec. Dealers, Inc.*, 159 F.3d 1209, 1210-11, 1213-14 (9th Cir. 1998) (detailing the background of FINRA's predecessor, the National Association of Securities Dealers), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc., v. Manning*, 578 U.S. 374 (2016); *Turbeville v. Fin. Indus. Regul. Auth.*, 874 F.3d 1268, 1270-71, 1270 n.2 (11th Cir. 2017) (explaining FINRA's basic functions and that the National Association of Securities Dealers was FINRA's prior name).

trading halt of MMTLP shares through December 14, 2022, so Kelly's MMTLP shares were transitioned into Next Bridge shares before he was able to sell them. *Id.* at 4, 9.

Kelly, appearing pro se, alleges that FINRA violated his due process rights under the Fifth Amendment by abusing its regulatory authority, violated the Fifth Amendment by depriving him of his property without due process of law, and negligently failed to adhere to its internal rules and regulatory protocols. Kelly also moved for preliminary injunction ordering FINRA to produce certain data, communications, and documents. FINRA filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and (6). Kelly moved for leave to file a surreply to the motion to dismiss. Both sides have filed motions for me to take judicial notice of various documents. FINRA also moved to stay discovery. I grant FINRA's motion to dismiss, deny Kelly's motions for preliminary injunction and for leave to file a surreply, deny both sides' motions for judicial notice, deny FINRA's motion to stay discovery, and grant Kelly leave to amend his complaint.

## I.    MOTION TO DISMISS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id*. at 555. Instead, the complaint must include "a short and

plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id*. at 555 (simplified).

FINRA argues that Kelly's complaint should be dismissed because this court lacks general and specific personal jurisdiction over it. Kelly responds that I have personal jurisdiction over FINRA because (1) FINRA's conduct had a foreseeable and substantial effect in Nevada, citing *Calder v. Jones*, 465 U.S. 783 (1984), (2) Kelly experienced the harm caused by FINRA's conduct in Nevada, and (3) Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides jurisdiction.

**A. FINRA's actions do not give rise to general or specific personal jurisdiction over it.**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). If the motion to dismiss is based on written materials rather than an evidentiary hearing, I must determine whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted). In deciding whether the plaintiff has met this burden, I must accept as true the complaint's uncontroverted allegations. *Id*.

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nevada's longarm statute is co-extensive with federal standards, so I may exercise personal jurisdiction if doing so comports with federal constitutional due process. Nev. Rev. Stat. § 14.065(1); *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "There are two forms of personal jurisdiction that a forum

state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.

General jurisdiction over a foreign corporation is proper only when the corporation's affiliations with the State "are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (simplified). Outside of exceptional cases, a corporation is at home where it is incorporated or has its principal place of business. *Ford Motor Co. v. Mont. Eighth Jud. Ct.*, 592 U.S. 351, 359 (2021). FINRA is headquartered in Washington, D.C. and incorporated in Delaware. Kelly has not alleged any exceptional affiliations to support a finding that FINRA is otherwise "at home" in Nevada. Therefore, I lack general jurisdiction over FINRA.

Specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In contrast with general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quotation omitted). I apply a three-prong test to determine whether specific jurisdiction exists: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Rio Props., Inc. v. Rio Int'l Interlink*, 284

F.3d 1007, 1019 (9th Cir. 2002). When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for each claim asserted against a defendant. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quotation omitted).

"Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (quotation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Walden*, 571 U.S. at 286 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

I may also exercise specific jurisdiction if a defendant "purposefully directs his activities at the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (citing *Calder*, 465 U.S. at 789-90) (simplified). Under this "effects test derived from *Calder*, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3d at 1213-14 (simplified).

I do not have specific jurisdiction under *Calder* over FINRA because Kelly has not made a prima facie case that FINRA "expressly aimed" the trade halt of MMTLP stocks or other actions at Nevada. 465 U.S. at 789. Kelly admits that FINRA's trading halt on MMTLP affected investors "across the country." ECF No. 32 at 32. He does not allege that FINRA froze the MMTLP shares of only Nevada investors, or that FINRA intended to freeze the shares of specific Nevada investors with its nationwide halt. This was a nationwide regulatory decision, and national policy work does not constitute express aim at a forum state. *See Doe*, 112 F.3d at 1051

("There was no reason for [the defendant], a government employee working and living in the Washington, D.C. area, to believe that his role in the regulatory process would expose him to the power of the courts in Arizona.").

Kelly has not pleaded sufficient minimum contacts to otherwise establish specific jurisdiction over FINRA. Kelly does not allege that FINRA made the decision to halt trading of MMTLP in Nevada. All he alleges is that he was deprived of his property in Nevada because his brokerage accounts with his untradable MMTLP stocks were domiciled in Nevada. But "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. Even if this harm was foreseeable, as Kelly alleges, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (quotation omitted).

**B. However, Section 27 of the Exchange Act allows personal jurisdiction over FINRA with respect to Kelly's claim that FINRA violated its internal rules.**

Although I cannot base personal jurisdiction over FINRA solely on its actions related to this case, Kelly argues that Section 27 of the Exchange Act provides me personal jurisdiction over FINRA. Section 27 grants federal district courts "exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa. This gives me *subject matter jurisdiction* "over claims of violations of federal securities law." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1314 (9th Cir. 1985).

Further, "Section 27 provides that any suit or action to enforce any liability or duty created under the [Exchange] Act may be brought in the district where any act or transaction

6

constituting the violation occurred, and process may be served in any district where the defendant is an inhabitant or wherever the defendant may be found." *Id.* (citing 15 U.SC. § 78aa). Because Section 27 confers nationwide service of process, personal jurisdiction is proper over a defendant with respect to a claim alleging a violation of the Exchange Act "so long as [the] defendant has minimum contacts with the United States." *Sec. Inv. Prot. Corp.*, 764 F.2d at 1316.

FINRA has minimum contacts with the United States. It is an American corporation, incorporated in Delaware and headquartered in Washington, D.C. ECF No. 24 at 9; *Webb v. Fin. Indus. Reg. Auth., Inc.*, 889 F.3d 853, 856 (7th Cir. 2018). It is charged with regulating the daily operations of the American securities markets. In this case, its decision to halt trading of shares of MMTLP, an American corporation, impacted investors across the United States, including Kelly.

FINRA argues that Section 27 does not confer personal jurisdiction over it because Kelly has not asserted a cause of action for federal securities fraud. But Kelly's claim that FINRA violated its internal rules "arise[s] under the Exchange Act." *Turbeville*, 874 F.3d at 1273 (quotation omitted). He alleges FINRA violated FINRA Rule 6490(d)(3) (processing of company-related actions).[2] FINRA's rules and regulations "are promulgated according to the Exchange Act's mandates." *Id.* at 1275; *see Pee Pee Pop Trust v. Fin. Indus. Regul. Auth.*, Case No. 3:19-cv-00240-MMD-CBC, 2019 WL 4723788, at *2 (D. Nev. Sept. 26, 2019) (holding Section 27 provides the court subject matter jurisdiction over a complaint that "is on its face a challenge to FINRA's application of its internal rules in exercising its regulatory authority under

---

[2] Kelly's complaint lists ten FINRA rules that "may have been violated." ECF No. 7 at 6-7. However, the only FINRA rule that Kelly explicitly alleges that FINRA breached was FINRA Rule 6490(d)(3). *Id.* at 10.

the Exchange Act." (simplified)).  Kelly's complaint thus asserts a cause of action for federal securities fraud under the Exchange Act.  And therefore, because FINRA has minimum contacts with the United States, I have personal jurisdiction over it with respect to Kelly's claim that FINRA violated its internal rules.

### C. There is no private right of action against FINRA for violating its internal rules.

But that does not end the analysis.  Although I have personal jurisdiction over FINRA with respect to Kelly's claim that it violated its internal rules, Kelly cannot maintain this claim.  Congress has not created a private right of action against FINRA for "violating its own rules or for actions taken to perform its self-regulatory duties" under the Exchange Act. *Sparta Surgical Corp.*, 159 F.3d at 1213; *Turbeville*, 874 F.3d at 1276; *Pee Pee Pop Trust*, 2019 WL 4723788, at *4.  No provision in the Exchange Act explicitly provides for a private action for violation of stock association rules, and there is no implied right of action for rules violations either. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980).  I therefore dismiss with prejudice Kelly's claim that FINRA violated its internal rules.

### D. I would have personal jurisdiction over FINRA with respect to a claim that it violated SEC rules or regulations, but the complaint does not assert one.

Kelly's complaint hints at but never properly raises a claim that FINRA violated any SEC rules or regulations.  In his complaint, Kelly lists five SEC rules and regulations that "FINRA's conduct may implicate." ECF No. 7 at 7-8.  These rules include SEC Rule 10b-5 (employment of manipulative and deceptive devices), SEC Rule 17a-4 (records to be preserved), SEC Rule 15c2-11 (publication of quotations without specified information), SEC Rule 15(b)(6) (which does not exist), and Reg SHO Rule 204 (close-out requirement). *Id.*  He later asserts that FINRA "is required to adhere to . . . relevant SEC oversight and guidance." ECF No. 7 at 10.

8

I would have personal jurisdiction over FINRA with respect to a claim that it violated an SEC rule or regulation under Section 27 because FINRA has minimum contacts with the United States. *Sec. Inv. Prot. Corp.*, 764 F.2d at 1312, 1315; *see supra* I.B.  But Kelly's complaint never explicitly alleges that FINRA violated any specific SEC rule, including the ones he listed that FINRA's conduct may have "implicate[d]."  The closest he comes to alleging a violation of SEC rules is his claim of "Negligent Failure to Adhere to Mandated Regulatory Procedures committed by FINRA." *Id.*  But the only "Mandated Regulatory Procedure[]" or rule he explicitly alleges FINRA violated in that section of his complaint is a FINRA rule, specifically FINRA Rule 6490(d)(3). *Id.*  Additionally, in his opposition to FINRA's motion to dismiss, Kelly admits that he "does not allege scienter with the specificity required for a direct [SEC Rule] 10b-5 claim." ECF No. 32 at 36.  It is unclear whether Kelly intended to allege FINRA violated any SEC rule or regulation, so his complaint does not give FINRA "fair notice" that he is asserting it violated an SEC rule. *Bell Atl. Corp,* 550 U.S. at 555 (quotation omitted).  I therefore will not interpret Kelly's complaint as raising a claim that FINRA violated an SEC rule or regulation.

### E. I decline to exercise pendant personal jurisdiction over Kelly's Fifth Amendment claims and dismiss them.

Because Kelly's complaint does not assert any actionable claim under the Exchange Act, I decline to exercise pendant personal jurisdiction over FINRA with respect to the Fifth Amendment claims.  I have discretion to assert pendant personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as the pendent claim arises out of a common nucleus of operative facts with a claim in the same suit over which I do have personal jurisdiction. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  Kelly's claim that FINRA violated its internal rules and

Fifth Amendment claims arise out of the same common nucleus of operative fact: the trading halt of MMTLP shares. But as stated above, no private right of action exists for Kelly's claim that FINRA violated its internal rules. And that is his only claim arising under the Exchange Act for which Section 27 confers personal jurisdiction. Because I dismissed that claim, there is no longer an active claim for the Fifth Amendment claims to adjoin. Thus, I cannot exercise pendant personal jurisdiction over the constitutional claims.

Even if I could assert pendant personal jurisdiction over FINRA with respect to the Fifth Amendment claims, I would decline to exercise my discretion to do so. *See Action Embroidery Corp.*, 368 F.3d at 1181 ("the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court."). Pendent personal jurisdiction exists to promote judicial economy, convenience and fairness to the parties, and avoidance of piecemeal litigation. *Id.* None of those goals is achieved by relying on Section 27 of the Exchange Act to assert pendent personal jurisdiction over a party with respect to a constitutional claim when I already dismissed the plaintiff's only Exchange Act claim. Therefore, I dismiss both of Kelly's Fifth Amendment claims, without prejudice.

**F. I deny Kelly's motion for a preliminary injunction.**

Kelly moves for a preliminary injunction ordering FINRA to produce certain documents. Because I have dismissed all of Kelly's claims against FINRA, Kelly has not shown a likelihood of success or serious questions on the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). I therefore deny Kelly's motion for a preliminary injunction.

/ / / /

/ / / /

**G. I grant Kelly leave to amend his complaint.**

I should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). I should grant leave to amend even if no request to amend the complaint was made "if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation omitted). This rule favoring liberality in amendments to pleadings is particularly important for pro se litigants like Kelly. *Id.* at 1131. Because it is not clear that amendment would be futile, I grant Kelly leave to amend his complaint. But if Kelly chooses to amend his complaint, he should be aware of difficulties his second amended complaint would face.

First, Kelly cannot reassert a claim that FINRA violated its own rules because I have dismissed that claim with prejudice. Second, FINRA is not liable for damages resulting from its regulatory actions. A self-regulatory organization like FINRA "is protected by absolute immunity from money damages" if its "action is taken under the aegis of the Exchange Act's delegated authority." *P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999) (quotation omitted). This includes when FINRA acts in an "adjudicatory, prosecutorial, arbitrative or regulatory capacity." *Sparta Surgical Corp.,* 159 F.3d at 1214. There are "no exceptions" to regulatory immunity as long as FINRA acts pursuant to the Exchange Act. *P'ship Exch. Securities Co.*, 169 F.3d at 608. For example, FINRA receives regulatory immunity even if it acts in "bad faith." *Sparta Surgical Corp*, 159 F.3d at 1215. Kelly bases the claims in his First Amended Complaint in large part on FINRA's decision to halt trading of MMTLP, but "there are few functions more quintessentially regulatory than suspension of trading" for determining immunity. *Id.* at 1214. To the extent Kelly's potential

amended claims would be based on FINRA's decision to suspend trading or other regulatory actions, he cannot recover damages.

Fourth, parties must give fair notice of the injunctive relief they are seeking. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought."). Without a sufficiently clear "recitation of the . . . injunctive relief sought," I am "entirely unable to determine whether the complaint alleges sufficient facts to show that [a] plaintiff is entitled to the requested relief." *Conkey v. Reno*, 885 F. Supp. 1389, 1392 (D. Nev. 1995). In his first amended complaint, Kelly requested equitable relief to "provide affected investors with a mechanism to regain control over their investments." ECF No. 7 at 13. This is too vague to indicate what relief Kelly seeks in an injunction against FINRA, if he ever becomes entitled to one. Thus, FINRA cannot challenge the request on grounds that may be available to it, including, for example, that it has no power to take the action Kelly seeks. Any future amended complaint seeking an injunction must more clearly describe the requested injunctive relief and how Kelly is entitled to it.

## II. KELLY'S AND FINRA'S MOTIONS FOR JUDICIAL NOTICE

Kelly and FINRA have each moved for me to take judicial notice of several documents. Federal Rule of Evidence 201 permits me to notice an adjudicative fact if it is "not subject to reasonable dispute." FRE 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Taking all well-pleaded allegations of material fact in the complaint as true and construing them in the light most favorable to Kelly, I do not rely on either side's proffered documents to grant FINRA's motion to dismiss. *See Kwan*, 854 F.3d at 1096. I therefore deny both motions for judicial notice as moot.

### III.  MOTION FOR LEAVE TO FILE A SURREPLY

Kelly seeks leave to file a surreply to address FINRA's argument that I cannot consider the extrinsic evidence he attached to his opposition to the motion to dismiss. FINRA first raised this argument in its reply in support of its motion to dismiss. "Surreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." LR 7-2(b). Filing a surreply is "disfavored" and is warranted in "only the most exceptional or extraordinary circumstances." *Tesla, Inc. v. Tripp*, 487 F. Supp. 3d 953, 969 (D. Nev. 2020) (simplified). If "the non-movant's reply does not raise new evidence or issues that require additional argument, I may deny the motion." *Paxson v. Live Nation Ent.*, 778 F. Supp. 3d 1113, 1133 (D. Nev. 2025). I did not consider Kelly's extrinsic evidence when ruling on the motion to dismiss because it was not relevant to whether I have personal jurisdiction over Kelly's claims or whether there is a private right of action for FINRA's violation of its internal rules. Therefore, I need not consider FINRA's argument whether the evidence is admissible, and no surreply to that argument is warranted. I deny Kelly leave to file a surreply.

### IV.  MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

FINRA moves to stay discovery until the resolution of its motion to dismiss. As I have dismissed all the claims in Kelly's amended complaint, I deny FINRA's motion to stay discovery as moot.

### V.  CONCLUSION

I THEREFORE ORDER that FINRA's motion to dismiss (**ECF No. 24**) **is GRANTED.** Plaintiff William Kelly's claim that FINRA violated its own rules is dismissed with prejudice. Kelly's Fifth Amendment claims are dismissed without prejudice for lack of personal jurisdiction.

I FURTHER ORDER that Kelly's motion for preliminary injunction (**ECF No. 16**), motion for judicial notice (**ECF No. 17**), and motion for leave to file a surreply (**ECF No. 36**) **are DENIED.**

I FURTHER ORDER that FINRA's motion for judicial notice (**ECF No. 23**) and motion for a protective order staying discovery (**ECF No. 25**) **are DENIED**.

I FURTHER ORDER that Kelly may file an amended complaint by November 14, 2025. Failure to file an amended complaint by that date will result in judgment being entered in favor of FINRA and against Kelly on the claim for violation of FINRA's internal rules, the remainder of the case being dismissed without prejudice, and the case being closed.

DATED this 16th day of October, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE