RECEIVED
FILED
ENTERED
SERVED ON

October 22, 2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

JG

BY:_____ DEPUTY

1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3

4    WILLIAM LEE KELLY,
5    Plaintiff,
6    v.
7    FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. ("FINRA"),
8    Defendant.
9

10    Case No. 2:25-cv-01195-APG-DJA

11

12    **SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

13    Plaintiff William Lee Kelly ("Plaintiff" or "Kelly") alleges as follows:

14    **I. INTRODUCTION & NATURE OF THE ACTION**

15        This action challenges FINRA's ultra vires implementation and enforcement actions

16    surrounding the MMTLP trading halt and related corporate-action handling, which

17    exceeded FINRA's delegated authority under the Securities Exchange Act of 1934 (the

18    "Exchange Act") and conflicted with statutory limits and rules promulgated thereunder,

19    including, inter alia, Exchange Act § 15A(b)(6), SEC Rules 15c2-11, 17a-4, 10b-5, and

20    Regulation SHO.

21

1    FINRA's national reach arises solely from delegated federal authority under the

2    Exchange Act, which empowers it to regulate member broker-dealers in every U.S.

3    jurisdiction, including Nevada. This federal delegation is the source of FINRA's power and

4    the mechanism through which its MMTLP decisions foreseeably and directly impacted

5    Nevada investors and Nevada-serving broker-dealers. By exercising nationwide regulatory

6    authority with the force and effect of federal law, FINRA subjected itself to nationwide

7    jurisdiction under Section 27 and to judicial review when its actions exceeded that

8    delegated authority.

9    Plaintiff seeks:

10    (i) declaratory relief that the challenged acts were ultra vires and/or contrary to the

11    Exchange Act and the statutory and regulatory framework promulgated thereunder,

12    including Exchange Act § 15A(b)(6) and SEC Rules 15c2-11, 17a-4, 10b-5, and Regulation

13    SHO § 203(b)(3);

14    (ii) injunctive relief compelling FINRA to preserve and produce all relevant records, issue

15    corrective disclosures, and restore compliance with Regulation SHO's close-out and

16    transparency requirements consistent with federal law; and

17    (iii) such further equitable relief as the Court deems just and proper to remedy

18    continuing deprivations and ensure market integrity.

19    Plaintiff incorporates by reference all exhibits, videos, and evidentiary materials

20    previously submitted in this action for contextual completeness and preservation of the

21    existing record, without re-attaching them herein. To the extent necessary, Plaintiff will re-

1    submit or cite individual exhibits in subsequent motions, including dispositive briefing,

2    without waiver of any materials already in the record.

3    **II. JURISDICTION AND VENUE**

4        This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. §

5    78aa(a) (Exchange Act § 27) because the claims arise under the Exchange Act and rules

6    thereunder, and Section 27 confers nationwide service of process and personal jurisdiction

7    where the defendant has minimum contacts with the United States.

8        Personal jurisdiction is proper because, for claims arising under the Exchange Act

9    and SEC rules, Section 27 permits nationwide jurisdiction and FINRA indisputably has

10    minimum contacts with the United States. In addition, and alternatively, specific

11    jurisdiction exists because FINRA purposefully directs and conducts regulatory activity in

12    Nevada through its continuous oversight of Nevada-based and Nevada-serving member

13    firms, and Plaintiff's injuries arise out of those forum-related activities.

14        Venue is proper in this District under 15 U.S.C. § 78aa(a) and 28 U.S.C. § 1391(b)

15    because acts or transactions constituting the violations occurred in this District, including

16    the foreseeable implementation and effects of the challenged actions upon Nevada

17    investors and Nevada-based/serving broker-dealers.

18

19

20

1    **III. PARTIES**

2         Plaintiff William Lee Kelly is a Nevada resident who held and traded MMTLP

3    securities through FINRA-member brokerage accounts serving Nevada and suffered injury

4    in Nevada as a result of the challenged conduct.

5         Defendant FINRA is a Delaware non-profit corporation headquartered in

6    Washington, D.C., registered with the SEC as a national securities association under

7    Exchange Act § 15A, exercising nationwide regulatory authority over member broker-

8    dealers and associated persons, including those operating in Nevada.

9    **IV. FACTUAL BACKGROUND**

10        1.   **FINRA's Power Structure and National Reach**

11             FINRA's authority under the Exchange Act arises exclusively from its designation as

12             the sole national securities association registered under 15 U.S.C. § 78o-3. Its

13             jurisdiction and enforcement powers derive not from state licensure, but from a

14             nationwide delegation of regulatory authority by Congress and the SEC to supervise

15             and discipline registered broker-dealers. FINRA's capacity to regulate, compel

16             compliance, and affect market activity exists only because of this federal delegation

17             and its national reach, including the delegated authority to supervise member firms

18             serving investors in Nevada. Without this regulatory delegation, FINRA would

19             possess no independent power to impact markets or investors.

20

2. **Continuous Regulatory Presence in Nevada**

FINRA conducts continuous regulatory activity in Nevada through its supervision of member broker-dealers, their Nevada-based branch offices, and their registered representatives. FINRA requires these offices to register through its Uniform Branch Office Registration (Form BR) system, collects fees and assessments from Nevada-serving firms, enforces disciplinary actions against Nevada brokers, and administers arbitration and investor-protection programs accessible to Nevada residents. At least one member of FINRA's 2022 Uniform Practice Code (UPC) Committee—which advises on corporate actions, close-out procedures, and U3 halts—was associated with Edward D. Jones & Co., L.P., a FINRA member maintaining multiple branch offices in Nevada.

3. **FINRA's Role in the MMTLP Corporate-Action Sequence**

On December 6 and again on December 8, 2022, FINRA unilaterally revised the MMTLP corporate-action notice without issuer request or authorization, creating inconsistent and misleading public data that implied post-December 8 trading and settlement would continue. FINRA then relied on its own unilateral revisions to justify imposing a U3 trading halt on December 9, 2022, terminating secondary-market trading nationwide and preventing investors—including Nevada account holders—from liquidating, transferring, or settling their positions. The halt immediately obstructed broker-dealer clearance and settlement functions and interfered with Regulation SHO's close-out framework by preventing reconciliation of open positions.

1      4. **Ultra Vires Conduct Beyond Delegated Authority**

2      FINRA's conduct in halting MMTLP and altering issuer-level records constituted

3      administrative interference in a corporate action and was not a permissible

4      regulatory function under the Exchange Act. Section 15A(b)(6) limits FINRA's

5      authority to enforcement of rules over its member firms—not to directing, revising,

6      or nullifying corporate actions or deleting securities from the marketplace. By

7      unilaterally modifying issuer data and obstructing lawful settlements without SEC

8      direction, rulemaking, or oversight, FINRA acted beyond its delegated authority

9      (ultra vires), violating the structure and intent of Exchange Act §§ 15A and 19, and

10     contravening SEC Rules 15c2-11, 17a-4, Regulation SHO § 203(b)(3), and Rule 10b-5

11     (17 C.F.R. § 240.10b-5) by making or disseminating false and misleading

12     representations regarding the basis and legality of the MMTLP halt and deletion.

13     5. **Resulting Harm to Nevada Investors**

14     As a direct and foreseeable result of FINRA's nationwide halt and data alterations,

15     Nevada investors— including Plaintiff—were deprived of property rights in their

16     securities and denied procedural due process guaranteed under the Fifth

17     Amendment. Plaintiff's brokerage accounts, maintained through FINRA-member

18     firms serving Nevada, were frozen; liquidation orders failed; and transfer requests

19     were rejected. These deprivations occurred in Nevada and were the direct result of

20     FINRA's intentional nationwide conduct, the effects of which were purposefully

21     directed at MMTLP investors in all states, including Nevada. Accordingly, even if

1    Section 27 were not dispositive, the "effects test" for specific jurisdiction is

2    independently satisfied.

3    **V. LEGAL FRAMEWORK AND EXCHANGE ACT VIOLATIONS**

4    6.  **FINRA's Delegated Authority under the Exchange Act**

5    Under Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3, the

6    Securities and Exchange Commission ("SEC") may register and oversee a national

7    securities association to aid in administering the Exchange Act. FINRA, as the only

8    such registered association, operates solely by delegation of authority from the SEC

9    and remains subject to the Commission's supervision and rulemaking. FINRA is not

10    a government agency; it possesses only the limited powers expressly delegated by

11    statute and SEC rule;  while administering such power, FINRA remains bound by the

12    Constitution and federal law.[1]

13    7.  **FINRA's Limitations on Delegated Authority**

14    The Exchange Act confines FINRA's role to the regulation and discipline of its

15    member firms and associated persons to promote fair and equitable trade

16    practices. See Exchange Act § 15A(b)(6). FINRA lacks statutory authority to: (a) act

17    as an issuer or transfer agent; (b) modify, delete, or suppress corporate-action data;

---

[1] *See Lebron v. Nat'l R.R. Passenger Corp*., 513 U.S. 374, 397–400 (1995); *See also Ex parte Virginia,* 100 U. S. 339, 346-47 (1880);

1  or (c) impose trading halts absent SEC rule or order. When FINRA acts beyond these

2  delegated limits, its conduct is ultra vires and not shielded by regulatory immunity.[2]

3  8. **Violations of SEC Rule 15c2-11 (Issuer Information and Quotation)**

4  Rule 15c2-11, 17 C.F.R. § 240.15c2-11, requires broker-dealers to verify and rely on

5  accurate, publicly available issuer information before publishing quotations.

6  FINRA's unilateral alterations to the OTC Daily List in December 2022 created

7  inconsistent and misleading issuer-level data, undermining the accuracy of public

8  disclosures on which broker-dealers were required to rely and obstructing their

9  ability to satisfy due-diligence obligations under Rule 15c2-11. FINRA's interference

10  with issuer-level data impeded broker-dealer compliance with Rule 15c2-11 and

11  constitutes improper conduct under the Exchange Act, supporting jurisdiction

12  under § 27.

13  9. **Violations of SEC Rule 17a-4 (Record Retention and Production)**

14  Rule 17a-4, 17 C.F.R. § 240.17a-4, mandates preservation of communications and

15  trading records relevant to securities transactions and ensures their availability to

16  regulators and Congress. By refusing to produce native trading data,

17  correspondence, and blue-sheet records surrounding the MMTLP halt—despite

18  multiple investor and congressional requests—FINRA obstructed the transparency

19  and record-preservation framework required under Rule 17a-4 and abused its

---

[2] *See Sparta Surgical Corp. v. NASD,* 159 F.3d 1209, 1213–14 (9th Cir. 1998) (noting that NASD's immunity is limited to actions within its statutory authority under the Exchange Act, with potential exception for conduct beyond that scope)

1  delegated authority, depriving investors of procedural fairness, transparency, and

2  the ability to verify market integrity.

3  10. **Violations of Regulation SHO § 203(b)(3) (Close-Out of Fails-to-Deliver)**

4  Regulation SHO, 17 C.F.R. § 242.200 et seq., requires broker-dealers to timely close

5  out fails-to-deliver and mandates a regulatory framework designed to ensure

6  settlement transparency and market integrity. Under Exchange Act § 15A(b)(6),

7  FINRA is obligated to supervise member compliance and maintain fair and orderly

8  markets through data dissemination and enforcement oversight. MMTLP remained

9  on the SEC's published FTD list for more than 30 consecutive days leading up to

10  December 2022, yet FINRA halted trading and blocked settlement processes that

11  would have facilitated or compelled close-outs. FINRA then removed MMTLP from

12  the FTD list—later attributing the removal to a "coding error"—without reconciling

13  outstanding fails-to-deliver or ensuring member compliance. By halting the market

14  during an active FTD cycle, and by obstructing the close-out process through data

15  suppression and the elimination of settlement pathways, FINRA allowed unresolved

16  delivery failures to persist, undermining Regulation SHO's core requirements and

17  violating its statutory duties under § 15A(b)(6).

18  11. **Violations Implicating SEC Rule 10b-5 (Market Integrity and Anti-Fraud**

19  **Principles)**

20  SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, prohibits any deceptive device, material

21  misstatement, or fraudulent scheme in connection with the purchase or sale of a

1    security. By disseminating public statements claiming that the MMTLP halt and

2    corporate-action handling were routine, properly authorized, and necessary to

3    "protect investors," while withholding material facts concerning the absence of SEC

4    authorization and unresolved settlement failures, FINRA engaged in conduct that

5    implicates the anti-fraud principles embodied in Rule 10b-5. Although framed as

6    regulatory, these statements functioned as market-moving disclosures and fall

7    outside FINRA's delegated authority when they mislead investors and obstruct

8    lawful market activity.

9    12. **Jurisdiction under Section 27**

10    Because FINRA's challenged conduct constitutes violations of SEC rules

11    promulgated under the Exchange Act, this action arises under federal securities law.

12    Pursuant to 15 U.S.C. § 78aa(a), the Court possesses subject-matter jurisdiction

13    and personal jurisdiction is proper through nationwide service of process. FINRA's

14    minimum contacts with the United States—its registration, nationwide regulation of

15    brokers, and active enforcement within Nevada—are more than sufficient under

16    Section 27 and controlling Ninth Circuit precedent.[3]

17    13. **Fifth Amendment Deprivation**

18    FINRA's ultra vires actions deprived Plaintiff of a protected property interest—the

19    right to access, dispose of, and transfer lawfully held securities—without notice or

---

[3] *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309,1314 (9th Cir. 1985)( holding that Section 27 of the Exchange Act provides nationwide personal jurisdiction over defendants with minimum contacts within the United States for claims arising under the Act)

1    opportunity to be heard. Because FINRA exercised federally delegated regulatory

2    power, its actions constitute conduct under color of federal authority and are

3    subject to the Fifth Amendment's Due Process Clause. Such constitutional injury

4    arises directly from FINRA's misuse of its delegated powers, further reinforcing

5    federal-question jurisdiction and arising out of the same regulatory actions

6    challenged under the Exchange Act.[4]

7    **VI. CAUSES OF ACTION**

8    **COUNT I — ULTRA VIRES ACTION AND EXCHANGE ACT VIOLATIONS (15 U.S.C. § 78aa**

9    **and 15 U.S.C. § 78o-3)**

10    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully

11    set forth herein.

12    Under the Securities Exchange Act of 1934, Congress delegated limited regulatory

13    authority to national securities associations such as FINRA, subject at all times to SEC

14    supervision and federal law. *See* 15 U.S.C. § 78o-3(b)(6). This delegation does not permit

15    FINRA to perform issuer-level actions, alter corporate-action data, or halt trading except as

16    expressly authorized by SEC rule or order.

17    In connection with the MMTLP corporate-action process and trading halt, FINRA

18    performed acts that were inconsistent with and violative of SEC rules promulgated under

19    the Exchange Act, including but not limited to:

---

[4] *See Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 397–400 (1995); *See also Ex parte Virginia,* 100 U. S. 339, 346-47 (1880); *See also Butz v. Economou*, 438 U.S. 478, 490–91 (1978)

1      a.  **SEC Rule 15c2-11** (17 C.F.R. § 240.15c2-11) — by altering or invalidating issuer

2    disclosure relied upon by broker-dealers to satisfy quotation and verification requirements;

3      b.  **SEC Rule 17a-4** (17 C.F.R. § 240.17a-4) — by failing to maintain and produce the

4    required records of trading activity and communications concerning the halt and deletion;

5    and

6      c.  **Regulation SHO § 203(b)(3)** (17 C.F.R. § 242.203(b)(3)) — by suspending market

7    activity and deleting settlement-related data in a manner that obstructed member firms'

8    ability to reconcile open fails-to-deliver and satisfy close-out obligations required under

9    Regulation SHO.

10      FINRA's acts and omissions were ultra vires because they exceeded the scope of

11    authority granted to self-regulatory organizations under the Exchange Act and SEC

12    oversight structure. When an SRO steps outside its delegated rule-enforcement role and

13    undertakes administrative or issuer-level decisions, its conduct is non-regulatory, not

14    entitled to immunity, and actionable under federal law.

15      These unlawful actions directly interfered with broker-dealer obligations and

16    obstructed the operation of SEC rules, creating a nationwide freeze that foreseeably

17    impacted MMTLP investors in all U.S. states, including Nevada. Because the violations

18    arise under SEC rules promulgated pursuant to the Exchange Act, Section 27 (15 U.S.C. §

19    78aa) confers nationwide personal jurisdiction and subject-matter jurisdiction upon this

20    Court.

1    As a result of FINRA's violations, Plaintiff and similarly situated investors were

2    deprived of lawful trading, transfer and liquidation rights in MMTLP securities, suffering loss

3    of property, and were denied access to regulatory transparency and records guaranteed

4    under federal law, resulting in a deprivation of protected property interests without due

5    process.

6    Plaintiff seeks the following relief under this Count:

7    a.   A declaratory judgment that FINRA's actions described herein were ultra vires and in

8    violation of SEC Rules 15c2-11, 17a-4, and Regulation SHO § 203(b)(3), and inconsistent

9    with the Exchange Act's structure and purpose;

10    b.   An order compelling FINRA to preserve and produce all records relevant to the

11    MMTLP corporate-action sequence, the U3 Halt, and the blue-sheet data and inter-agency

12    correspondence, in compliance with Rule 17a-4;

13    c.   An injunction prohibiting FINRA from deleting, altering, or suppressing corporate-

14    action data absent written SEC authorization or rulemaking;

15    d.   An injunction requiring FINRA to restore compliance with SEC rules and orders

16    governing market integrity, including Regulation SHO's close-out and transparency

17    requirements, and to take corrective measures necessary to reconcile and disclose

18    settlement data consistent with the Exchange Act; and

19    e.   Such further relief as the Court deems just and proper.

20

1  **COUNT II — FIFTH AMENDMENT DUE PROCESS VIOLATION (ULTRA VIRES CONDUCT**

2  **UNDER COLOR OF FEDERAL AUTHORITY)**

3  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

4  set forth herein.

5      By virtue of its registration under 15 U.S.C. § 78o-3, FINRA exercises federally

6  delegated regulatory power. When it performs functions that affect property rights, it acts

7  under color of federal authority and is bound by the constraints of the Fifth Amendment's

8  Due Process Clause.

9      The right to own, control, transfer, and dispose of lawfully held securities

10  constitutes a protected property interest. By imposing a trading halt and altering corporate-

11  action data without notice, opportunity to be heard, or lawful rulemaking authority, FINRA

12  deprived Plaintiff of that property interest.[5]

13      FINRA's actions were not undertaken pursuant to any valid SEC order or rule; they

14  were administrative alterations and enforcement decisions made independently of

15  Commission oversight, and therefore ultra vires. Conduct that exceeds delegated authority

16  is not a "regulatory" function and is not entitled to immunity.[6]

17  The process provided to investors was constitutionally deficient:

18      a.  No advance notice of the halt or opportunity for comment;

---

[5] See *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (property interests protected by due process arise from "legitimate claims of entitlement" rather than mere expectations)

[6] See *Alpine Securities Corp. v. FINRA*, No. 23-5129 (D.C. Cir. 2024) (recognizing constitutional and structural concerns arising from FINRA's exercise of delegated federal power without adequate SEC oversight and limiting FINRA's ability to act unilaterally).

1    b.   No post-deprivation review mechanism or appeal channel; and

2    c.   No disclosure of the evidence or rationale underlying the decision.

3    These omissions failed each factor of the *Mathews v. Eldridge* balancing test—(i) private

4    interest affected, (ii) risk of erroneous deprivation, and (iii) government interest in summary

5    action.

6         FINRA's nationwide halt foreseeably and directly impacted Nevada investors,

7    including Plaintiff, by freezing accounts and preventing settlement within this forum. The

8    deprivation therefore occurred within Nevada through FINRA's Nevada-regulated

9    intermediaries, satisfying both the "effects" and "purposeful-direction" prongs of specific

10   jurisdiction. As a result, Plaintiff suffered economic injury, loss of market access, and

11   continuing procedural prejudice. By extinguishing property rights in MMTLP and eliminating

12   market access without notice or hearing, FINRA deprived Plaintiff of property without due

13   process of law.  These harms are traceable to FINRA's misuse of federally delegated power

14   and are redressable by declaratory and injunctive relief.

15   Plaintiff seeks the following relief under this Count:

16   a.   A declaration that FINRA's conduct violated the Fifth Amendment Due Process

17   Clause;

18   b.   An injunction compelling FINRA to implement fair procedures and provide access to

19   all communications, trading data, blue-sheet records, and corporate-action materials

20   relating to MMTLP and the December 9, 2022 trading halt;

21   c.   Alternatively, a writ of mandamus under 28 U.S.C. § 1361 directing FINRA to comply

1    with its constitutional and statutory obligations; and

2        d.    Such further equitable relief as the Court deems just and proper.

3    **COUNT III — SECURITIES FRAUD (SECTION 10(b) OF THE EXCHANGE ACT AND RULE**

4    **10b-5, 17 C.F.R. § 240.10b-5)**

5    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully

6    set forth herein.

7        Under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and

8    SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, it is unlawful for any person, directly or indirectly, in

9    connection with the purchase or sale of any security, to employ any device, scheme, or

10    artifice to defraud; to make untrue statements of material fact; or to engage in any act,

11    practice, or course of business that operates as a fraud or deceit upon investors.

12        FINRA, acting under color of its delegated federal authority but outside its lawful

13    regulatory scope, knowingly made false and misleading statements of material fact to

14    broker-dealers, investors, and the public concerning the MMTLP trading halt and related

15    corporate-action handling.  In addition to unilaterally revising the MMTLP corporate-action

16    data without issuer approval, FINRA publicly represented—through its December 2022 OTC

17    Daily List notices, 2023 FAQ publications, and communications to member brokers—that:

18        a. The trading halt was "required" under FINRA's authority and consistent with "SEC

19    guidance," though no SEC rule or order authorized the halt;

20        b. The deletion of MMTLP from the Daily List was a 'routine administrative step,' when in

21    truth it permanently extinguished protected property rights by prevented investors from

1  liquidating or transferring lawfully held securities;

2    c. FINRA's actions were undertaken to "protect investors," while internally it withheld

3  material information and concealed communications with the SEC and Meta Materials Inc.

4    d. FINRA's December 8, 2022 corporate-action revision expressly stated that "purchases

5  of MMTLP executed after 12/8/22 will not receive the distribution," signaling to the market

6  that continued trading would occur. Yet less than 24 hours later, FINRA issued a U3 halt,

7  blocking all trading. By drafting corporate-action language that implied continued trading

8  while secretly preparing to halt the market, FINRA misled investors and manufactured

9  reliance on a false pretext, further evidencing a deceptive scheme within the meaning of

10  Rule 10b-5.

11    These statements were materially false and misleading because they suggested

12  lawful SEC coordination and procedural regularity where none existed, inducing investors

13  and brokers to rely on the false belief that the halt was legitimate and final. This conduct

14  demonstrates a deliberate scheme to mislead the market and walk investors into a trading

15  halt that FINRA had already predetermined, satisfying Rule 10b-5(a) and (c) as a deceptive

16  course of conduct.

17    FINRA's omissions—including its failure to disclose that no valid SEC authorization

18  existed and that internal concerns were raised over the halt's legality—intentionally

19  concealed material facts and rendered FINRA's public statements false and misleading to

20  investors.

1    FINRA acted with scienter—at least reckless disregard for truth—by publishing

2  these statements while aware of, or deliberately ignoring, their falsity and the foreseeable

3  harm they would cause to investors relying on the integrity of market disclosures.

4    These misrepresentations and omissions occurred in connection with the purchase

5  or sale of a security, because they directly affected investors' ability to sell, transfer, or

6  settle trades in MMTLP shares and the market's valuation of those securities.

7    Plaintiff and other investors reasonably relied on FINRA's representations of lawful

8  authority and finality in the halt when determining whether and how to act regarding their

9  MMTLP holdings. As a direct result, they were prevented from liquidating or transferring

10  their securities and sustained economic losses.

11    FINRA's deceptive conduct constitutes a scheme and artifice to defraud within the

12  meaning of Section 10(b) and Rule 10b-5 and falls outside the bounds of any legitimate

13  regulatory activity, as it was self-initiated, misrepresentative, and undertaken without SEC

14  direction or rulemaking authority.

15    Pursuant to 15 U.S.C. § 78aa(a), this Court has jurisdiction over this count because it

16  arises under the Exchange Act. FINRA's nationwide misrepresentations and their

17  foreseeable effects on Nevada investors establish both subject-matter and specific

18  jurisdiction.

19    As a result of FINRA's violations, Plaintiff suffered economic harm, loss of property,

20  and irreparable injury to market access and investor confidence. FINRA's misconduct was

21  not a good-faith regulatory error but a deliberate and deceptive course of conduct that

1    harmed investors nationwide; punitive damages are therefore warranted to address the

2    severity of the violation and to deter similar abuses of delegated authority.

3        Plaintiff seeks the following relief under this Count:

4        a.    A declaratory judgment that FINRA's conduct violated Section 10(b) of the

5    Exchange Act and Rule 10b-5, constituting a deceptive and fraudulent scheme beyond its

6    lawful authority;

7        b.    An injunction compelling FINRA to retract and correct its false public

8    statements and to publicly disclose the internal communications and data withheld from

9    investors relating to MMTLP;

10       c.    Equitable relief requiring FINRA to restore transparency and market integrity

11   consistent with SEC rules, orders, and the Exchange Act's objectives, including correction

12   of recordkeeping, settlement, and disclosure deficiencies resulting from the MMTLP halt;

13       d. An award of punitive or exemplary damages, to the fullest extent permitted by

14   law, based on FINRA's willful, bad-faith, and deceptive conduct undertaken outside its

15   delegated authority and in reckless disregard of investor rights, to punish unlawful behavior

16   and deter repetition of similar misconduct; and

17       e.    Such further relief as the Court deems just and proper.

18

19

20

1    **COUNT IV — CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

2    *(Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202)*

3    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

4    set forth herein.

5    An actual and substantial controversy exists between Plaintiff and Defendant

6    concerning the legality of FINRA's actions during and after the MMTLP corporate-action

7    sequence. Plaintiff contends that FINRA's conduct was ultra vires, unconstitutional, and

8    inconsistent with SEC rules promulgated under the Exchange Act; FINRA continues to

9    maintain the legality of those acts. This dispute is definite, concrete, and justiciable under

10   the Declaratory Judgment Act, 28 U.S.C. § 2201.

11   Plaintiff has no adequate remedy at law. Money damages cannot restore access to

12   halted markets, remedy procedural deprivation, or compel disclosure of withheld records.

13   Only prospective injunctive and declaratory relief can redress the ongoing consequences

14   of FINRA's unlawful conduct and prevent repetition.

15   The requested relief will not disrupt legitimate regulatory functions of the SEC or

16   FINRA but will ensure those functions are performed within the bounds of delegated

17   authority and constitutional due process. Federal courts retain equitable authority to

18   enjoin ultra vires regulatory action, including where no adequate legal remedy exists and

19   where the challenged conduct exceeds delegated power.

1   Pursuant to 28 U.S.C. § 2201 and § 2202, Plaintiff seeks:

2       a.   A declaratory judgment that FINRA's conduct concerning MMTLP— including its U3

3   trading halt, alteration of OTC corporate-action data, and refusal to produce records—was

4   ultra vires and inconsistent with SEC rules and the Exchange Act;

5       b.   A permanent injunction requiring FINRA to:

6           i.   Produce and preserve all communications, trading data, blue-sheet records, and

7   corporate-action filings related to MMTLP, Meta Materials, and Next Bridge Hydrocarbons;

8           ii.   Cease altering, deleting, or suppressing corporate-action data absent written SEC

9   authorization or rulemaking;

10          iii.   Establish transparent procedures and investor notice requirements before

11   imposing future halts of comparable scope; and

12          iv.   Provide a written accounting of all internal and inter-agency communications

13   related to the MMTLP halt for submission to the Court.

14          v.   Restore compliance with settlement, reconciliation, and market-access

15   requirements under SEC rules, including a lawful mechanism for clearing open positions

16   and reconciling settlement obligations related to MMTLP.

17      c.   Such other and further equitable relief as the Court deems just and proper, including

18   ancillary supervision or compliance reporting if necessary to ensure adherence to this

19   Court's orders.

20   The equitable relief sought herein is narrowly tailored to remedy the specific procedural

21   and statutory violations alleged, without unduly interfering with FINRA's lawful regulatory

22   activities or the SEC's supervisory authority.

1    **SUPPLEMENTAL REQUEST FOR RELIEF — REGULATION SHO COMPLIANCE AND**

2    **RESTORATION OF MARKET INTEGRITY**

3    Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth

4    herein.

5        Pursuant to this Court's equitable powers under 28 U.S.C. §§ 2201–2202, and in

6    furtherance of Regulation SHO § 203(b)(3) and the Exchange Act's investor-protection

7    objectives, Plaintiff seeks declaratory and injunctive relief compelling FINRA to restore

8    lawful regulatory compliance regarding fails-to-deliver and settlement transparency

9    associated with the MMTLP security.

10        Specifically, Plaintiff requests that the Court:

11    a.    Declare that FINRA's actions in halting MMTLP trading and altering corporate-action

12    data obstructed broker-dealer compliance with Regulation SHO's close-out requirements;

13    b.    Enjoin FINRA to restore and make publicly available the complete record of open

14    fails-to-deliver, settlement instructions, and reconciliation data relating to MMTLP through

15    its member firms;

16    c.    Require FINRA to certify to the Court and to the SEC that such data has been

17    restored, reconciled, and made accessible for enforcement and investor transparency

18    purposes; and

19    d.    Order FINRA to cooperate with the SEC and affected broker-dealers to ensure full

20    compliance with Regulation SHO, thereby facilitating the lawful close-out of outstanding

21    short or undelivered positions consistent with federal law.

1    This relief is not intended to direct market re-opening or compel trading activity, nor

2    to invite judicial second-guessing of a regulatory judgment. Rather, it seeks to compel

3    compliance with existing federal securities regulations whose enforcement was obstructed

4    by FINRA's unlawful actions. Such compliance will restore transparency, ensure equitable

5    treatment of investors, and promote the integrity of the national market system consistent

6    with Congress's intent under the Exchange Act.

7    **VII. PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff William Lee Kelly respectfully prays that this Honorable Court enter

9    judgment in his favor and against Defendant FINANCIAL INDUSTRY REGULATORY

10    AUTHORITY, INC. (FINRA), and grant the following relief:

11    A declaratory judgment that FINRA's conduct relating to the MMTLP trading halt,

12    corporate-action modifications, and related recordkeeping failures was ultra vires, contrary

13    to SEC Rules 15c2-11, 17a-4, and Regulation SHO § 203(b)(3), violative of SEC Rule 10b-5,

14    and inconsistent with the Exchange Act's structure, purpose, and limitations on delegated

15    authority;

16    A declaratory judgment that FINRA's actions deprived Plaintiff of property without

17    due process of law, in violation of the Fifth Amendment;

18    Issue a permanent injunction requiring FINRA to:

19    a.    Produce all communications, data, and records concerning MMTLP, Next Bridge

20    Hydrocarbons, Meta Materials Inc., and the associated corporate actions;

21    b.    Preserve all related files, blue-sheet data, internal correspondence, and regulatory

1   drafts;

2   c.   Cease and desist from altering, deleting, or suppressing corporate-action data

3   absent written SEC authorization; and

4   d.   Implement procedural safeguards and investor notice requirements before imposing

5   future halts that restrict or extinguish property rights;

6   Award equitable and declaratory relief as necessary to ensure transparency,

7   accountability, and compliance with the Exchange Act and constitutional due process;

8   Award costs and such other expenses as permitted by law or equity;

9   Award punitive or exemplary damages under Count III (Rule 10b-5 fraud), based on

10   FINRA's willful, malicious, and bad-faith conduct undertaken outside its delegated

11   authority, in order to punish and deter similar unlawful actions in the future; and

12   Grant such other and further relief as the Court deems just and proper to remedy

13   the injuries sustained by Plaintiff and to ensure adherence to statutory and constitutional

14   limits on delegated regulatory power.

15   ───────────────────────────────────────────

16   **VIII. DEMAND FOR JURY TRIAL**

17   Plaintiff respectfully demands a trial by jury on all issues so triable as of right under Rule 38

18   of the Federal Rules of Civil Procedure.

19   ───────────────────────────────────────────

20   Respectfully submitted,

21   Dated: October 22, 2025

1 /s/ *William Lee Kelly*

2

3 William Lee Kelly

4 Pro Se Plaintiff

5 6126 Leaning Rock Ct

6 North Las Vegas, NV 89081

7 William.Lee.Kelly@gmail.com

8 702-427-2763

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1            **CERTIFICATE OF SERVICE**

2    I certify that on October 22, 2025, I served this Second Amended Complaint via email to

3    FINRA's counsel at john.mitchell@faegredrinker.com and elias@epglawgroup.com,

4    pursuant to consent given on July 19, 2025.


5        /s/ *William Lee Kelly*

6          Dated: October 22, 2025

7