**FAEGRE DRINKER BIDDLE & REATH LLP**
John P. Mitchell (admitted *pro hac vice*)
john.mitchell@faegredrinker.com
105 College Road E
Princeton, NJ 08540
Phone: 609-716-6500

**EPG LAW GROUP**
Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933

*Attorneys for Defendant FINRA*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM LEE KELLY, an individual,<br><br>                          Plaintiff,<br>      vs.<br><br>FINANCIAL INDUSTRY REGULATORY<br>AUTHORITY (FINRA),<br><br>                          Defendant. | CASE NO.:  2:25-cv-01195-APG-DJA<br><br>**DEFENDANT FINANCIAL INDUSTRY<br>REGULATORY AUTHORITY, INC'S<br>MOTION TO DISMISS PLAINTIFF'S<br>SECOND AMENDED COMPLAINT** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, respectfully moves this Court for an order dismissing Plaintiff William Lee Kelly's ("Kelly") Second Amended Complaint ("SAC") (ECF 42).

## I.    INTRODUCTION

Like the First Amended Complaint ("FAC") before it, Kelly's SAC fails to state any viable claim against FINRA. In its Order dated October 16, 2025 ("Order"), this Court granted FINRA's Motion to Dismiss the FAC ("MTD the FAC") because Kelly lacked a private right of action against FINRA for alleged violations of its own rules, Order at 8, and the Court declined to exercise pendent jurisdiction over Kelly's constitutional claims, Order at 9-10.[1] The Court also granted

---

[1] To the extent the Court grants FINRA's Motion to Dismiss the SAC with respect to Kelly's

DMS_US.374526143.3

Kelly leave to amend (while still noting "if Kelly chooses to amend his complaint, he should be aware of difficulties" posed by FINRA's regulatory immunity for which there are no exceptions). Order at 11-12.

There are multiple, independent bases to dismiss the SAC, which was filed on October 22, 2025, just six (6) days after the Order. The SAC contains new claims alleging FINRA violated various SEC rules and regulations, and it includes a largely duplicative constitutional challenge. However, all of Kelly's claims, as well as any purported injuries, still arise from the MMTLP trade halt, and FINRA's regulatory conduct related to that trade halt. As a result, the claims in the SAC are still barred by absolute regulatory immunity, and Kelly lacks a private right of action to bring them.

The constitutional claims in the SAC also fail on the merits. First, Kelly concedes that FINRA is not a governmental actor, ECF 42, at ¶ 6, and that concession is fatal to his constitutional claims. Further, Kelly does not demonstrate the requisite elements of a due process claim.

In addition, Kelly's claims against FINRA for alleged violations of the SEC rules or regulations cited in the SAC fail to state a cause of action upon which relief can be granted because those rules do not apply to FINRA's regulatory activities as a self-regulatory organization ("SRO").

Lastly, Kelly's claim for declaratory and injunctive relief also fails to state a claim because, among other things, these requests are not independent causes of action when no other viable cause of action is stated. For the reasons outlined in this Motion, the SAC must be dismissed with prejudice, and Kelly should not be afforded further leave to amend.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

Kelly filed this action against FINRA on July 2, 2025. ECF 1. Kelly's case is one in a series of investor complaints, filed by pro se plaintiffs, seeking relief for claims against FINRA that arise

---

revised claims alleging violations of SEC rules and regulations, FINRA respectfully requests that the Court decline to exercise pendent jurisdiction over Kelly's repeated constitutional claims on the same grounds of judicial economy articulated in the Order.



DMS_US.374526143.3

1  exclusively from its regulatory activities related to MMTLP—an equity security that traded on the

2  OTC market.[2]

3       On July 9, 2025, Kelly filed his FAC. ECF 7. In the FAC, Kelly brought claims for: (I)

4  Abuse of Regulatory Authority Resulting in Due Process Violations Committed by FINRA; (II)

5  Negligent Failure to Adhere to Mandated Regulatory Procedures Committed by FINRA; and (III)

6  Deprivation of Property without Due Process of Law (Fifth Amendment Violation) Committed by

7  FINRA. *See generally id.*

8       On August 29, 2025, FINRA filed the MTD the FAC. ECF 24. In the MTD the FAC,

9  FINRA moved for dismissal arguing: (i) the Court lacks personal jurisdiction over FINRA; (ii)

10 Kelly's claims are barred by absolute regulatory immunity; (iii) Kelly lacks a private right of action

11 against FINRA for alleged violations of its own rules; and (iv) FINRA is not a governmental actor

12 thereby precluding any due process claims against FINRA. *See id.*

13      On October 16, 2025, the Court entered the Order. ECF 40. In the Order, the Court found

14 that FINRA's actions did not give rise to general or specific personal jurisdiction over it, but that

15 Section 27 of the Exchange Act allowed for personal jurisdiction over FINRA with respect to

16 Kelly's claim that FINRA violated its own rules. ECF 40, at 8-9.[3] Despite finding personal

17 jurisdiction over FINRA for that claim, the Court dismissed Kelly's claim that FINRA violated its

18 own rules with prejudice. The Court further declined to exercise pendent personal jurisdiction over

19 Kelly's Fifth Amendment claims and dismissed them without prejudice. While the Court granted

20

---

21 [2] *See, e.g.*, *Hensley v. TD Ameritrade, Inc.*, No. 3:23-cv-05159, 2023 U.S. Dist. LEXIS 246544
   (W.D. Wash. Oct. 2, 2023); *Park v. FINRA*, No. 2:23-CV-69-RWS, 2023 U.S. Dist. LEXIS
22 238130 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, No. 2:23-cv-00881-
   MCS-PVC, 2023 U.S. Dist. LEXIS 81166 (C.D. Cal. May 8, 2023); *Tawil v. FINRA*, No.
23 4:22cv440-RH-MAF, 2023 U.S. Dist. LEXIS 117247 (N.D. Fla. May 24, 2023); *see also Traudt
   v. Rubenstein*, No. 2:24-cv-782, 2025 U.S. Dist. LEXIS 123280, at *15, *17 (D. Vt. June 30, 2025)
24 ("[A]mendment would be futile" because: (a) "FINRA has absolute immunity from Plaintiff's
   claims for damages[;]" and (b) "FINRA is not a state actor, [and] the [proposed complaint] fails to
25 state a claim" for constitutional violations).
   [3] FINRA acknowledges that the Court's ruling on personal jurisdiction is the law of this case.
26 FINRA, therefore, will not reargue its personal jurisdiction defense in this Motion. However,
   FINRA does not concede nor waive its personal jurisdiction defense, and FINRA reserves its
27 argument that the SAC is subject to dismissal because this Court lacks personal jurisdiction over
   FINRA for the reasons discussed in the MTD the FAC. *See* ECF 24, at 8-11; *see also* ECF 35, at
28 3 nn. 1 & 2.

Kelly leave to amend the FAC, the Order noted that "if Kelly chooses to amend his complaint, he should be aware of difficulties his second amended complaint would face." *Id.* at 11. Critically, the Court held that "FINRA is not liable for damages resulting from its regulatory actions" and that "[t]here are 'no exceptions' to regulatory immunity as long as FINRA acts pursuant to the Exchange Act." *Id.* The Court noted that to "the extent Kelly's potential amended claims would be based on FINRA's decision to suspend trading or other regulatory actions, he cannot recover damages." *Id.* at 11-12. Lastly, the Court noted that if Kelly were to bring another claim for an injunction, such claim "must more clearly describe the requested injunctive relief and how Kelly is entitled to it." *Id.* at 12. The Court gave Kelly until November 14, 2025, to file any amended complaint. *Id.* at 14.

### B.    The Second Amended Complaint

On October 22, 2025 – just six days after the Order – Kelly filed the SAC. ECF 42. At the outset, the SAC acknowledges that the claims in the SAC are based on FINRA's "actions surrounding the MMTLP trading halt and related corporate-action handling…." ECF 42, at 1. Specifically, the SAC alleges that on December 6 and 8, 2022, "FINRA unilaterally revised the MMTLP corporate-action notice . . . that implied post-December 8 trading and settlement would continue." ECF 42, at 5. In addition, the SAC asserts that, on December 9, 2022, FINRA imposed a trading halt. *Id.*

The SAC relies on conclusory, speculative, and unsupported allegations to assert four counts against FINRA: Count I (Ultra Vires Action and Exchange Act Violations (15 U.S.C. §§ 78aa and 78o-3)); Count II (Fifth Amendment Due Process Violation (Ultra Vires Conduct Under Color of Federal Authority)); Count III (Securities Fraud (Section 10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. § 240.10b-5)); and Count IV (Claim for Declaratory and Injunctive Relief). *Id.* at 11-21.

The SAC also asserts a supplemental request for relief in which Kelly seeks "declaratory and injunctive relief compelling FINRA to restore lawful regulatory compliance regarding fails-to-deliver and settlement transparency associated with the MMTLP security." *Id.* at 22.

/ / /



Finally, the SAC's "Prayer for Relief" requests that the Court:

      i.     enter a declaratory judgment regarding FINRA's conduct relating to the MMTLP trading halt, corporate-action modifications, and related recordkeeping failures;

     ii.     enter a declaratory judgment that FINRA's actions violated the Fifth Amendment;

    iii.     grant a permanent injunction requiring FINRA to produce documents concerning MMTLP and others, preserve related files, cease and desist from altering corporate-action data absent written SEC authorization, and implement procedural safeguards and notice requirements before imposing future halts; and

    iv.     award the following:

- equitable and declaratory relief;
- costs and expenses; and
- punitive or exemplary damages related to Count III.

*Id.* at 23-24.

## C.    FINRA Regulates its Broker-Dealer Members Subject to SEC Oversight

FINRA is a not-for-profit Delaware corporation headquartered in Washington, D.C., and registered with the SEC as a national securities association under the Securities Exchange Act of 1934 ("Exchange Act").[4] ECF 42, at 4; *see also Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018). FINRA is not a government agency. ECF 42 at 7. The government neither appoints FINRA board members, officers, or employees, SEC Release No. 34-56145, 72 Fed. Reg. 42160, 42170-72 (July 26, 2007), nor provides it public funding. Instead, FINRA is funded by registration, membership, and transaction fees charged to its members. *See* FINRA By-Laws, Art. VI, § 1, *publicly available*

---

[4] FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42169 (Aug. 1, 2007).

DMS_US.374526143.3

1  *at* https://www.finra.org/rules-guidance/rulebooks/corporate-organization/power-corporation-fix-
2  and-levy-assessments.

3      In the Exchange Act, Congress "established a system of 'cooperative regulation'" in which
4  it imposed duties upon SROs to conduct day-to-day regulation of the national securities markets.
5  *See Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1210-11, 1213 (9th Cir. 1998), *abrogated*
6  *in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374
7  (2016) (citation omitted); *see also Turbeville v. FINRA*, 874 F.3d 1268, 1270-71 (11th Cir. 2017);
8  *Austin Mun. Sec., Inc. v. NASD.*, 757 F.2d 676, 680 (5th Cir. 1985) (Congress established "a
9  comprehensive system of federal regulation of the securities industry"). The Exchange Act
10  generally requires any broker or dealer transacting in securities to join an association of broker-
11  dealers registered as a national securities association, which is one type of SRO, *see* 15 U.S.C. §§
12  78o(a)(1), (b)(1), and FINRA is such an association, *see Balabon v. Ketchum*, 785 Fed. App'x 263,
13  263 (5th Cir. 2019); *Turbeville*, 874 F.3d at 1270 & n.2; *Merrill Lynch, Pierce, Fenner & Smith,*
14  *Inc. v. NASD*, 616 F.2d 1363, 1365 (5th Cir. 1980) (addressing NASD).

15      To comply with the Exchange Act, FINRA establishes rules "designed to prevent
16  fraudulent and manipulative acts and practices, to promote just and equitable principles of trade,
17  to foster cooperation and coordination with persons engaged in regulating, clearing, settling,
18  processing information with respect to, and facilitating transactions in securities, . . . and, in
19  general, to protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). In other words,
20  FINRA is "responsible for the self-regulation of member brokerage firms, exchange markets, and
21  individuals associated with those firms and markets." *Wiley v. SEC*, 663 Fed. App'x 353, 356 n.1
22  (5th Cir. 2016). FINRA's rules are "part of the apparatus of federal securities regulation." *Kurz v.*
23  *Fid. Mgmt. & Rsch.. Co.*, 556 F.3d 639, 641 (7th Cir. 2009).

24      FINRA exercises its regulatory authority in accordance with the requirements of the
25  Exchange Act and under close supervision by the SEC. *See* ECF 42, at 7 (FINRA "operates solely
26  by delegation of authority from the SEC and remains subject to the Commission's supervision and
27  rulemaking"); *Sparta Surgical*, 159 F.3d at 1214 ("The legislative history of the 1975 amendments
28  [to the Exchange Act] underscored that self-regulatory organizations 'are intended to be subject to

the SEC's control and have no governmentally derived authority to act independently of SEC oversight.'") (citation omitted); *see also NHBPA v. Black*, 107 F.4th 415, 435 (5th Cir. 2024) (the SEC has "formidable oversight power to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)) (quotation marks omitted), *vacated on other grounds by Horseracing Integrity & Safety Auth., Inc. v. NHBPA*, 145 S. Ct. 2837 (2025); *Austin Mun. Sec.*, 757 F.2d at 680 (the SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations); *Empire Fin. Grp., Inc. v. FINRA, Inc.*, No. 08-80534-CIV, 2009 U.S. Dist. LEXIS 133643, *20 (S.D. Fla. Jan. 15, 2009) ("[U]nder the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC.").

If FINRA violates the Exchange Act, federal regulations, or its own rules, the SEC may suspend or revoke FINRA's registration as an SRO, limit FINRA's activities, functions, and operations, or impose other sanctions. *See* 15 U.S.C. §§ 78s(c), (h)(1)-(4). The SEC is also authorized to initiate judicial proceedings against FINRA to enjoin activities that would violate the Exchange Act or FINRA's rules and to seek civil penalties. *See* 15 U.S.C. §§ 78u(d)(1), (d)(3)(A). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20.

### D.    FINRA Regulates the National Securities Markets

The national securities markets are comprised of the national securities exchanges and the OTC market. FINRA does not operate a market, and it does not issue, cancel, settle, or clear securities that are traded in the national securities markets. Instead, FINRA performs oversight functions and regulates its members, which trade and quote securities in the national securities markets, to ensure compliance with FINRA rules, the federal securities laws, and the rules and regulations thereunder. 15 U.S.C. § 78o-3(b).

FINRA performs multiple regulatory functions to oversee the OTC market for equity securities, like MMTLP, that are not listed on a national securities exchange. For example, FINRA:

DMS_US.374526143.3

1  (1) maintains a symbol directory for OTC equity securities and can issue and delete security

2  symbols, *see* https://otce.finra.org/otce/symbol-directory; (2) adopts rules regarding quoting and

3  trading in OTC equity securities, *see* FINRA Rule 6400 Series;[5] (3) reviews, processes, and

4  announces information about corporate actions regarding OTC equity securities, *see* SEC Rule

5  10b-17, 17 C.F.R. § 240.10b-17; *see also* FINRA Rule 6490;[6] and (4) is authorized to halt trading

6  and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect

7  investors and the public interest, *see* FINRA Rule 6440.[7]

8  **III.    LEGAL ARGUMENT**

9      **A.    Legal Standard**

10      When considering a Rule 12(b)(6) motion to dismiss, courts accept "[a]ll well-pleaded

11  allegations of material fact in the complaint … as true" and construe them "in the light most

12  favorable to the non-moving party." *Tohono O'Odham Nat'l v. U.S. Dep't of Interior*, 138 F.4th

13  1189, 1199 (9th Cir. 2025) (quoting *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th

14  Cir. 2013) (internal quotation marks omitted)). To survive a motion to dismiss, a complaint must

15  contain enough facts for the allegations to be plausible on their face. *See Bell Atl. Corp. v.

16  Twombly*, 550 U.S. 544, 570 (2007); *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.

17  2011) (dismissal appropriate "if the complaint fails to allege 'enough facts to state a claim to relief

18  that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570); *Marcelli v. Edwards*, No. 3:14-

19  cv-00559, 2016 U.S. Dist. LEXIS 68031, *5 (D. Nev. May 24, 2016) (same). "Although factual

20  allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because

21  they are cast in the form of factual allegations" and therefore "conclusory allegations of law and

22  unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer*, 649 F.3d at 1064

23  (internal quotation marks and citations omitted). Further, "[f]actual allegations must be enough to

24

25  _____

26  [5]  The  FINRA  Rule  6400  Series  is  publicly  available  at  https://www.finra.org/rules-guidance/rulebooks/finra-rules/6400.

27  [6]  FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

28  [7]  FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

8

1  rise above the speculative level." *Marcelli*, 2016 U.S. Dist. LEXIS 68031, at *5 (quoting *Twombly*,

2  550 U.S. at 555).

**B.    FINRA's Regulatory Immunity Is Absolute and Bars the SAC**

4      The allegations in the SAC arise entirely from FINRA's regulatory activities – primarily

5  FINRA's decision to halt trading of MMTLP shares, among other alleged acts and omissions

6  related to MMTLP. *See* ECF 42, ¶¶ 3-5, Counts I through IV, and Supplemental Request for Relief.

7  In the Order, this Court stated, "there are few functions more quintessentially regulatory than

8  suspension of trading for determining [regulatory] immunity." Order at 11; *see also* FINRA Rule

9  6440; *Sparta Surgical*, 159 F.3d at 1214. In fact, all of FINRA's acts and omissions that Kelly

10  complains about in the SAC are protected by regulatory immunity. *Standard Inv. Chartered, Inc.*

11  *v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011) (FINRA's enforcement and regulatory decisions

12  constitute regulatory functions for which FINRA is immune from suit); *DL Cap. Grp., LLC v.*

13  *NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 98 (2d Cir. 2005) (absolute immunity precludes claims

14  related to an SRO's announcement regarding the suspension or cancellation of trades); *Tawil*, 2023

15  U.S. Dist. LEXIS 117247, at *2-3 ("Suspending trading—when warranted—is precisely the kind

16  of activity FINRA can undertake in its quasi-regulatory capacity."); *Hofman*, 2023 U.S. Dist.

17  LEXIS 81166, at *14 ("Facilitating trading of Meta Materials securities and publishing corporate

18  action notices are functions within the ambit of FINRA's regulation and oversight of the over-the-

19  counter market."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454

20  (S.D.N.Y. 2013) (dismissing on regulatory immunity grounds claim against an SRO alleging its

21  decision not to halt trading of a security was negligent because "[t]he capacity to suspend trading…

22  is a quintessentially regulatory function"); *Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*, No. C-

23  07-03683, 2007 U.S. Dist. LEXIS 79260, *13 (N.D. Cal. Oct. 12, 2007) (identifying suspension

24  of trading as regulatory in nature).

25      FINRA's immunity for such regulatory action is absolute. *In re: Series 7 Broker*

26  *Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("When an SRO acts under

27  the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the

28  improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC.");

**epg**
LAW GROUP

DMS_US.374526143.3

1    *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("Because they perform a variety

2    of vital governmental functions, but lack the sovereign immunity that governmental agencies

3    enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated

4    adjudicatory, regulatory, and prosecutorial functions.").

5        While the Order acknowledges that regulatory immunity bars all monetary damages, Order

6    at 12,[8] Kelly's requests for equitable relief are also barred by regulatory immunity. "[A]bsolute

7    immunity is designed to shield entities from litigation, not just liability[.]" *Rabin v. Nasdaq Omx

8    Phlx LLC*, 182 F. Supp. 3d 220, 238 (E.D. Pa. 2016). "FINRA's absolute immunity is *not* restricted

9    by the type of claims asserted against it by Plaintiff. . . . *This immunity also covers declaratory or

10   injunctive relief.*" *Cashmore v. FINRA*, No. 18-CV-1198S, 2020 U.S. Dist. LEXIS 209451, *14

11   (W.D.N.Y. Nov. 9, 2020) (denying claim for declaratory judgment) (emphasis added); *see also

12   Hofman*, 2023 U.S. Dist. LEXIS 81166, at *18 ("The Court adopts the persuasive reasoning of

13   *Cashmore* and dismisses all claims [including declaratory relief] against FINRA . . . based on

14   immunity."). Indeed, courts have consistently applied the absolute immunity afforded to SROs to

15   bar claims where the relief sought was equitable in nature. *See Tawil*, 2023 U.S. Dist. LEXIS

16   117247, at *2 ("The [*Weismann*] court's broad description of immunity made no mention of the

17   fact that the claim was for damages, and other courts have held FINRA immune from claims for

18   injunctive relief.") (collecting cases); *see, e.g.*, *Buscetto v. FINRA*, 2012 U.S. Dist. LEXIS 65116,

19   *11 n.4 (D.N.J. May 9, 2012) (finding FINRA "is entitled to immunity" where plaintiff sought to

20   expunge and vacate his disciplinary record maintained by FINRA); *Lucido v. Mueler*, 2009 U.S.

21   Dist. LEXIS 89775, *19-20 (E.D. Mich. Sept. 29, 2009) (denying injunctive relief on the ground

22   of FINRA's regulatory immunity), *aff'd*, 427 Fed. App'x 497 (6th Cir. 2011); *Am. Benefits Grp.,

23   Inc. v. NASD*, 1999 U.S. Dist. LEXIS 12321, *24-25 (S.D.N.Y. Aug. 5, 1999) (denying claim for

24   injunctive relief against FINRA on immunity grounds).

25   / / /

---

[8] Notwithstanding the Court's finding that FINRA's immunity precludes monetary damages, Order at 11, Kelly nonetheless includes a request for punitive damages in connection with Count III for Securities Fraud, ECF 42, at 19. Based on the Court's finding in the Order, Kelly's request for punitive damages is barred.

The SAC asserts that FINRA's purported *ultra vires* conduct falls beyond its immunity. ECF 42, at ¶ 4. As noted in this Court's Order, "there are 'no exceptions' to regulatory immunity as long as FINRA acts pursuant to the Exchange Act." Order at 11; *see also DL Cap. Grp.*, 409 F.3d at 98 (2d Cir. 2005) ("[P]recedent, not to mention common sense, strongly militates against carving out a 'fraud' exception to SRO immunity."); *Sparta Surgical*, 159 F.3d at 1215 (rejecting the plaintiff's argument for a "bad faith" exception to the immunity doctrine, noting "our circuit does not recognize such an exception"); *Weissman*, 500 F.3d at 1297 (immunity applies when an SRO is acting under the aegis of the Exchange Act's delegated authority). Indeed, "it is by no means 'inconsistent' to find that, on the one hand, [an SRO] exercises insufficient state action to trigger constitutional protections . . ., while nevertheless holding that the [SRO] is entitled to absolute immunity in the exercise of its quasi-public regulatory duties." *Scher v. NASD*, 386 F. Supp. 2d 402, 408 (S.D.N.Y. 2005); *see also Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 58 (2d Cir. 1996) ("Although the [SRO] is a private, rather than a governmental entity, immunity doctrines protect *private* actors when they perform important *governmental* functions.") (emphases in original); *Am. Benefits*, 1999 U.S. Dist. LEXIS 12321, at *23-24 (NASD is entitled to absolute immunity when acting within the scope of its official duties, and it is not a governmental actor in its role as an SRO).

As with the FAC, FINRA's regulatory immunity precludes all of Kelly's claims in the SAC as a matter of law. Accordingly, the SAC should be dismissed with prejudice and without further leave to amend.

### C.    Kelly's Lack of a Private Right of Action Bars the SAC

As stated in this Court's Order, "[n]o provision in the Exchange Act explicitly provides for a private right of action for violation of stock association rules, and there is no implied right of action for rules violations either." Order, at 8 (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980)). Indeed, courts have held that the Exchange Act *bars* private rights of action against SROs, asserted under the Exchange Act or otherwise, when those claims relate, as here, to an SRO's regulatory activities. *Sparta Surgical*, 159 F.3d at 1213 ("a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-

DMS_US.374526143.3

regulatory duties under the" Exchange Act); *see also Harris v. TD Ameritrade, Inc.*, 805 F.3d 664, 666 (6th Cir. 2015) (no private right of action under SEC Rules or the Exchange Act); *MM&S Fin., Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 364 F.3d 908, 910-11 (8th Cir. 2004) (Exchange Act does not create private right of action against SRO for violations of the Exchange Act); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 950 n.15 (3d Cir. 1985) (stating in dicta that there is no implied cause of action under SEC Rule 15c3-3); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) ("[T]here is no private right of action for alleged violations of [securities] industry rules.") (citing *Harris*, *supra*); *Mathew v. Citigroup Glob. Mkts. Inc.*, No. 23-12302, 2024 U.S. Dist. LEXIS 106979, *15 (D. Mass. June 17, 2024) ("Regulation SHO does not, however, provide a private right of action."); *In re Olick*, No. 99-CV-5128, 2000 U.S. Dist. LEXIS 4275, *11 (E.D. Pa. Apr. 4, 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD").

Accordingly, like this Court's holding that Kelly has no private right of action for FINRA's alleged violations of its own rules, Order at 8, Kelly lacks any private right of action to assert claims that FINRA violated SEC rules or regulations. As a result, Counts I, III, IV, and the Supplemental Request for Relief must be dismissed with prejudice, and further leave to amend should not be afforded to Kelly.

### D.    The SAC is a Shotgun Pleading that Does Not Comply with Rule 8(a)

Federal Rule of Civil Procedure 8 requires a complaint to include a short and plain statement outlining the grounds for the court's jurisdiction, showing the plaintiff is entitled to relief, and demanding the relief sought. Fed. R. Civ. P. 8(a). When a plaintiff amends his complaint, that "amended complaint must be complete in and of itself without referring to or incorporating by reference any previously filed complaint." *Riccio v. Mineral Cnty. Sheriff*, No. 3:22-cv-00397, 2023 U.S. Dist. LEXIS 26395, *2 (D. Nev. Feb. 16, 2023). An amended complaint supersedes and replaces the original complaint, and the amended complaint must contain all claims and factual allegations necessary for the plaintiff to pursue his lawsuit. *Edwards v. Nevada*, No. 3:20-cv-00716, 2022 U.S. Dist. LEXIS 214412, *3-4 (D. Nev. Nov. 29, 2022). Importantly, an

**epg**
LAW GROUP

amended complaint cannot simply refer to "any other filing in this case," and a plaintiff "cannot simply refer to exhibits instead of pleading his claims." *Bouari v. U.S.*, No. 2:21-cv-01974, 2023 U.S. Dist. LEXIS 149015, *3-4 (D. Nev. Aug. 23, 2023). This Court has held that a pro se plaintiff's amended complaint, which attempted to incorporate by reference his response to the previous motion to dismiss, various exhibits, news articles, and a podcast, was improper and failed to allege a "short and plain statement of the claim" as required by Rule 8. *Id.* at *2; *see also* Fed. R. Civ. P. 8(a); *Dangim v. CCDC*, No. 2:24-cv-02028, 2025 U.S. Dist. LEXIS 158191, *1 (D. Nev. Aug. 15, 2025) ("The Court will not piecemeal Plaintiff's Complaint together from multiple filings. Plaintiff's operative Complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.").

The burden imposed by shotgun complaints makes them impermissible under the rules.[9] *See Causey v. Davis*, No. 5:17-cv-00173, 2024 U.S. Dist. LEXIS 17293, *10 (M.D. Ga. Jan. 31, 2024) ("Trying to make sense of a plaintiff's shotgun pleading isn't the Court's responsibility. And it certainly isn't the Defendants' duty. The burden of writing a comprehensible complaint that passes muster under the Federal Rules of Civil Procedure and relevant case law rests solely on Plaintiff.") (citation omitted). Courts and defendants should not have to "comb through Plaintiff's rambling, oft-irrelevant, … paragraphs of facts to determine which of the facts support each of his claims." *Novak v. Corecivic*, No. CV 18-04053, 2019 U.S. Dist. LEXIS 245163, *5 (D. Ariz. June 27, 2019); *see also Button v. Humphries*, No. 8:24-cv-01730, 2025 U.S. Dist. LEXIS 202869, *8 (C.D. Cal. Apr. 2, 2025) ("[Plaintiffs] place the burden on this Court to sort out which allegations in their 234 page complaint correspond with their claims. It is the duty of the party to provide this Court with the allegations that support each causes [sic] of action."). A court should dismiss a complaint when a plaintiff fails to comply with Rule 8. *McHenry v. Renne*, 84 F.3d 1172, 1179-1180 (9th Cir. 1996) (affirming a dismissal of complaint and noting that "[p]rolix, confusing

---

[9] A shotgun complaint is one that "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Davis v. Ibrahim*, No. 8:21-cv-01032, 2021 U.S. Dist. LEXIS 246959, *2 (C.D. Cal. Sept. 23, 2021) (citations omitted). "Similarly, puzzle pleadings are those that require the defendant and the court to 'match the statements up with the reasons they are false or misleading.'" *Id.* (citations omitted).

1  complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and

2  judges").

3       In analyzing whether Kelly has stated any claim in the SAC entitling him to relief, the

4  Court must confine itself solely to the allegations contained in the SAC and to FINRA's Request

5  for Judicial Notice, which contains materials of which the Court may properly take judicial

6  notice.[10] In the SAC, Kelly purports to incorporate by reference every filing ever made in this case.

7  ECF 42, at 2 ("Plaintiff incorporates by reference all exhibits, videos, and evidentiary materials

8  previously submitted in this action for contextual completeness and preservation of the existing

9  record, without re-attaching them herein."). The SAC also contains four purported counts and one

10  purported supplemental request for relief, *see* ECF 42, at 11-23, each of which begins with the

11  sentence "Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth

12  herein." *Id.* at 11, 14, 16, 20, 22. Kelly's attempt to incorporate prior filings and previously alleged

13  facts in the SAC to support his claims for relief is wholly improper because it places the burden

14  on the Court and FINRA to figure out which factual allegation relates to which claim. Moreover,

15  each claim incorporates all of the prior claims, making it impossible to decipher the SAC. As this

16  Court has held, "[i]f multiple claims are alleged, the complaint should identify which factual

17  allegations give rise to each particular claim." *Bouari*, 2023 U.S. Dist. LEXIS 149015, at *4. The

18  SAC is a shotgun pleading that fails to comply with Rule 8.[11] As such, the SAC should be

19  dismissed. Further, Kelly should not be afforded another attempt to amend his complaint to state

20  a claim because he has already had three opportunities to file a viable complaint, and he has failed

21  to do so.

22       **E.    Kelly Fails to State Claims for Constitutional Violations**

23       Kelly's constitutional claims cannot be maintained because, as a threshold matter, FINRA

24  is not a governmental actor – a fact Kelly concedes. ECF 42, ¶ 6 ("FINRA is not a government

25  agency."). In addition, the SAC does not state a takings or due process claim as a matter of law.

26

27  [10]  *See* FINRA's concurrently filed Request for Judicial Notice ("RJN") in support of its MTD the SAC.

28  [11]  Additionally, the SAC does not contain separately numbered paragraphs as required by Fed. R. Civ .P. 10(b). This further compounds the difficulty in deciphering the SAC.



DMS_US.374526143.3

### i.    FINRA Is Not a Governmental Actor

Kelly's procedural due process and takings claims are rendered futile because as "a general matter the protections of the [U.S. Constitution] do not extend to private conduct abridging individual rights." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotations and citation omitted). Constitutional claims—like due process and takings clause claims under the Fifth Amendment to the U.S. Constitution—thus require "state action." *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998)("A threshold requirement of any constitutional claim is the presence of state action."), *overruled on other grounds by EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003); *Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982) ("The Due Process Clause of the Fifth Amendment applies to actions of the federal government and not to individual activities of private actors … [unless] the action of the latter may be fairly treated as that of the [government] itself.") (cleaned up). To assert a constitutional violation, a plaintiff must first "demonstrate 'that in denying the plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASD Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (quoting *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999)); *see also Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 256-57 (2d Cir. 2008) (dismissing First Amendment claims and other constitutional claims because plaintiff failed to allege governmental action); *Desiderio*, 191 F.3d at 206-07 (affirming dismissal of plaintiff's Fifth Amendment claim because plaintiff failed to show NASD's actions constituted governmental action).

FINRA is a private entity organized as a not-for-profit corporation under Delaware law that does not receive state or federal funding. *Desiderio*, 191 F.3d at 206; *Santos-Buch v. FINRA*, 32 F. Supp. 3d 475, 484-85 (S.D.N.Y. 2014), *aff'd*, 591 Fed. Appx. 32 (2d Cir. 2015); *see also Meyers v. NASD*, No. 95-CV-75077, 1996 U.S. Dist. LEXIS 6044, *2 (E.D. Mich. Mar. 29, 1996). No government official serves as a FINRA employee, and the government does not appoint any FINRA employees or officers. *Id.* Thus, FINRA is not a government actor.

Every court that has considered the issue has held that FINRA, like its predecessor the NASD and other SROs, "is a private actor, not a state actor." *Desiderio*, 191 F.3d at 206-07; *see also Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional

15

due process claim against the NASD, because the NASD is a private actor, not a state actor.")
(alterations and internal quotation marks omitted); *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132,
138 (2d Cir. 2002) ("It is clear that NASD is not a state actor."); *Kim v. FINRA*, 698 F. Supp. 3d
147, 161 (D.D.C. 2023); *Mohlman v. FINRA*, Case No. 3:19-cv-154, 2020 U.S. Dist. LEXIS
31781, *14 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception that FINRA is a
private entity and not a state actor.") (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020);
*Graman v. NASD*, No. 97-1556-JR, 1998 U.S. Dist. LEXIS 11624, *9 (D.D.C. Apr. 27, 1998)
("Every court that has considered the question has concluded that NASD is not a governmental
actor."); *Meyers v. NASD*, No. 95-CV-75077, 1996 U.S. Dist. LEXIS 6044, *23-26 (E.D. Mich.
Mar. 29, 1996) (finding that allowing the complaint to be amended would be futile because
NASD's regulatory actions do not constitute governmental action); *Cf. D.L. Cromwell, Inc*., 279
F.3d at 162; *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979); *Dobbins v. NASD*,
No. 5:06CV2968, 2007 U.S. Dist. LEXIS 61767, at *8-9 (N.D. Ohio Aug. 22, 2007); *Weinraub v.
Glen Rauch Sec., Inc*., 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005); *Scher v. NASD*, 386 F. Supp.
2d 402, 407-08 (S.D.N.Y. 2005), *aff'd*, 218 Fed. Appx. 46 (2d Cir. 2007); *Am. Benefits Grp. Inc.
v. NASD*, No. 99 Civ. 4733 (JGK), 1999 U.S. Dist. LEXIS 12321, *23-24 (S.D.N.Y. Aug. 10,
1999). Because FINRA is not a governmental actor, the constitutional claims asserted in the SAC
fail.

### ii.    Kelly's Due Process Claims Fail for Other Reasons

Kelly contends that the trading halt and alterations to the corporation action notices
deprived him of his property in violation of the constitutional due process. ECF 42, at 14-15. To
state a procedural due process claim, a plaintiff must establish two elements: (1) a deprivation of
a constitutionally protected liberty or property interest; and (2) a denial of adequate procedural
protections. *Miranda v. Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).

Here, Kelly does not establish that FINRA deprived him of any protected property interest.
Kelly asserts that he had "a protected property interest – the right to access, dispose of, and transfer
lawfully held securities . . . ." *See* ECF 42, at 10-11; *see also id.* at 13 ("Plaintiff . . . [was] deprived
of lawful trading, transfer and liquidation rights in MMTLP securities"); *id.* at 14 ("The right to

own, control, transfer, and dispose of lawfully held securities constitutes a protected property interest."). On December 6, 2022, as modified on December 8, 2022, FINRA announced a corporate action in which Meta Materials investors who held MMTLP shares were entitled to receive one share of Next Bridge for each MMTLP share they held on December 12, 2022. *See* FINRA's concurrently filed Request for Judicial Notice ("RJN") in support of its Motion to Dismiss the Second Amended Complaint, Exhibit A (Corporate Action Notice, Dec. 8, 2022). Kelly alleges that he "held and traded MMTLP securities." ECF 42, at 4. Meta Materials announced that the 1-for-1 distribution of Next Bridge shares to holders of MMTLP shares was completed on December 14, 2024. *See* RJN, Exhibit B (Next Bridge Press Release, Dec. 20, 2022). Kelly does not allege that he did not receive Next Bridge shares as a result of Meta Materials' December 2022 corporate action. *See generally* SAC.[12] Thus, the first element of a due process claim is not satisfied because Kelly fails to establish he was deprived of *any* property rights because the MMTLP shares were not "taken"; instead, Kelly was entitled to a distribution of Next Bridge shares to replace his MMTLP shares.

Further, longstanding U.S. Supreme Court precedent establishes that a "taking" does not occur when the government engages in lawful regulatory activity that merely impacts or frustrates the performance of a private contract, even if the regulatory action renders the contract valueless. *See Omnia Co. v. United States*, 261 U.S. 502 (1923). Following *Omnia*, federal courts have repeatedly rejected takings claims premised on injury or impairment to contract rights arising from lawful regulatory action. *See, e.g.*, *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1373 (Fed. Cir. 2008) (rejecting a takings claim brought by an airport security company whose contracts with airlines were rendered valueless after the federal government assumed responsibility for airport screening services following September 11); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1216 (Fed. Cir. 2005) (rejecting a takings claim brought by a helicopter business that was unable to resume flights in Washington, D.C., following a Federal Aviation Administration

---

[12] Kelly cannot dispute that he received the Next Bridge shares because he admitted it in his FAC. ECF 7, ¶ 17. While amended pleadings supersede prior pleadings, "the amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

ban that "no doubt injured" the plaintiff and "frustrated its business expectations"); *see also Monolith Portland Midwest Co. v. Reconstruction Fin. Corp.*, 282 F.2d 439, 447 (9th Cir. 1960) ("Termination of the contract pursuant to the Contract Settlement Act of 1944 frustrated Monolith in obtaining anticipated profits and advantages therefrom. But … [t]here was here no taking of Monolith's property which entitled the company to just compensation under the Fifth Amendment.").

Here, pursuant to its SEC-approved rules, FINRA announced the Meta Materials' corporate action and halted trading in MMTLP shares. *See* ECF 42, at ¶ 3. Kelly does not allege that FINRA "appropriated" his MMTLP shares. *See generally id.* Instead, Kelly alleges only that FINRA's regulatory activities impaired his ability to access and liquidate his shares. *See, e.g.*, *id.* at 10-11, 13, 14. Thus, as a matter of law, the *Omnia* doctrine bars Kelly's constitutional takings claim.

In an attempt to establish the second element of his procedural due process claim, Kelly relies on *Mathews v. Eldridge*, 424 U.S. 319 (1976), to assert that "[t]he process provided to investors was constitutionally deficient" because it failed a three-part test requiring "private interest affected," "risk of erroneous deprivation," and "government interest in summary action." *See* ECF 42, at 15. Such reliance is misplaced. Unlike Kelly's claims against FINRA, *Mathews v. Eldridge* involved governmental action by the Secretary of Health, Education and Welfare to recommend to the Social Security Administration that it terminate Eldridge's Social Security disability benefits. *Mathews*, 424 U.S. at 324. The U.S. Supreme Court held that procedural due process was not violated when Eldridge's disability benefits were terminated without a pre-termination evidentiary hearing because the existing procedures for terminating benefits were adequate in that context. *Id.* at 349. Governmental action is a condition precedent for any constitutional claim under the Fifth Amendment. *See supra.* As discussed above, Kelly concedes that FINRA is not a governmental actor. *See* ECF 42, at 7. Thus, the test set forth in *Mathews v. Eldridge* is inapplicable to FINRA's regulatory activities, which includes the announcement of Meta Materials' corporate action, and the decision to halt trading of MMTLP shares, and Kelly

DMS_US.374526143.3

fails to establish the second element of his procedural due process claim.[13] Accordingly, Kelly's due process claim must be dismissed with prejudice and without leave to amend.

**F.    Kelly Fails to State Claims for Exchange Act Violations (Count I) and Securities Fraud (Count III)**

While this Court need not consider additional bases for dismissal because the SAC is barred by FINRA's absolute regulatory immunity, and Kelly's lack of any private right of action, the SAC also fails to state a claim for Exchange Act Violations (Count I) and Securities Fraud (Count III). Specifically, Kelly's Exchange Act Claim alleges violations of SEC rules and regulations (*e.g.*, SEC Rules 17a-4 and 15c2-11 and Regulation SHO) that apply exclusively to broker-dealers and other market participants and not to SROs like FINRA. Further, to the extent Kelly is alleging that FINRA violates the Exchange Act by engaging in regulatory activities,[14] this Court has already determined that Kelly has no private right of action to bring such a claim. Order at 8 (dismissing such claims with prejudice) (citing *Sparta Surgical*, 159 F.3d at 1213). In addition, Kelly fails to plead his securities fraud claim with the requisite specificity, and the allegations he includes in the SAC do not satisfy the elements of a securities fraud claim.

**i.    Kelly Does Not State a Claim Against FINRA for Violating SEC Rule 17a-4**

In the SAC, Kelly contends that:

> By refusing to produce native trading data, correspondence, and blue-sheet records surrounding the MMTLP halt—despite multiple investor and congressional requests—FINRA obstructed the transparency and record-preservation framework required under Rule 17a-4.

---

[13] Kelly's alleged injury – loss of share value – would also not support a due process claim under the Fourteenth Amendment. *See, e.g.*, *Fulilar v. Irwindale*, 760 F. Supp. 164, 166 (C.D. Cal. 1991) ("[G]overnmental action allegedly causing a decline in property values has never been held to deprive a person of property within the meaning of the Fourteenth Amendment."); *see also Fusco v. Connecticut*, 815 F.2d 201, 206 (2d Cir. 1987).

[14] *See, e.g.*, ECF 42, at ¶ 8 ("FINRA's interference with issuer-level data impeded broker-dealer compliance with Rule 15c2-11 and constitutes [sic] improper conduct under the Exchange Act."); *id.* at ¶ 9 ("FINRA obstructed the transparency and record-preservation framework required under Rule 17a-4 and abused its delegated authority."); *id.* at ¶ 10 ("FINRA allowed unresolved delivery failures to persist, undermining Regulation SHO's core requirements and violating its statutory duties under § 15A(b)(6).").

epg
LAW GROUP

ECF 42, at ¶ 9. SEC Rule 17a-4 outlines the records that certain exchange members and broker-dealers are required to maintain and preserve. *See* 17 C.F.R. § 204.17a-4. "Aside from the obvious fact that SEC Rule 17a-4 does not create a [private] right of action," the Rule does not apply to FINRA, as "[t]he text of the Rule makes clear that the responsibility to prepare and maintain records applies only to a member, broker, or dealer." *North v. Smarsh, Inc*., 160 F. Supp. 3d 63, 78 (D.D.C. 2015) (internal quotation marks and citation omitted). Moreover, SEC Rule 17a-4 does not mandate that FINRA produce trading data to Congress, private investors, or anyone else. *See* 17 C.F.R. § 204.17a-4. Because SEC Rule 17a-4 is inapplicable to FINRA, Kelly does not state a claim for relief against FINRA for alleged violations of SEC Rule 17a-4 as a matter of law.

### ii.    Kelly Does Not State a Claim Against FINRA for Violating SEC Rule 15c2-11

Similarly, SEC Rule 15c2-11 requires broker-dealers to gather and review certain documents before they publish a security quotation. *See* 17 C.F.R. § 240.15c2-11; *see also* ECF 42, ¶ 8 ("Rule 15c2-11 . . . requires *broker-dealers* to verify and rely on accurate, publicly available issuer information before publishing quotations.") (emphasis added). FINRA is not a broker-dealer. ECF 42, at 4 (FINRA is "a national securities association under Exchange Act § 15A, exercising nationwide regulatory authority over member broker dealers and associated persons"). Thus, to the extent Kelly alleges FINRA's regulatory activities violated Rule 15c2-11, *id.* at ¶ 8, the rule does not apply to FINRA, and the SAC fails to state a claim against FINRA as a matter of law.

### iii.    Kelly Does Not State a Claim Against FINRA for Violating Regulation SHO

Kelly's allegations regarding alleged violations of Regulation SHO fail for similar reasons. The SEC adopted Regulation SHO "to update short sale regulation in light of numerous market developments since short sale regulation was first adopted in 1938 and to address concerns regarding persistent failures to deliver and potentially abusive 'naked' short selling." *See Key Points About Regulation SHO*, available at https://www.sec.gov/investor/pubs/regsho.htm (last

visited November 10, 2025).[15] The SAC contends that "Regulation SHO . . . requires *broker-dealers* to timely close out fails-to-deliver and mandates a regulatory framework designed to ensure settlement transparency and market integrity." ECF 42, at ¶ 10; *see also* 17 C.F.R. § 242.200, *et seq*. As discussed above, FINRA is not a broker-dealer, *see supra*, thus Regulation SHO does not apply to FINRA's regulatory activities. The SAC therefore fails to state a claim against FINRA for violating Regulation SHO as a matter of law.

### iv.    Kelly Does Not State a Claim Against FINRA for Violating SEC Rule 10b-5

To state a claim under SEC Rule 10b-5, a plaintiff "must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 603 (9th Cir. 2014) (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc*., 552 U.S. 148, 157 (2008)). In the Ninth Circuit, a plaintiff is required to plead each of these elements with the requisite specificity to meet the heightened standard in Rule 9(b). *Id.* at 605 (holding that Rule 9(b) applies to all elements of a securities fraud action).[16] Kelly does not, and cannot, state a claim against FINRA for violating SEC Rule 10b-5.

To meet the heightened pleading standard, a complaint alleging a violation of SEC Rule 10b-5 must allege with specificity "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc*., 309 F. Supp. 3d 100, 116 (S.D.N.Y. 2018) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d

---

[15] A short sale involves the "sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller." 17 C.F.R. § 242.200(a).

[16] The Private Securities Litigation Reform Act of 1995 ("PSLRA") also requires that securities fraud claims be pled with particularity. 15 U.S.C. § 78u-4(b)(1) (a private action under the PSLRA "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if any allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed").

**epg**
LAW GROUP

DMS_US.374526143.3

87, 102 (2d Cir. 2007)). The SAC relies upon conclusory and unsupported allegations and lacks the specificity required by Rule 9 and the PSLRA. *See* ECF 42, at 16-19. Therefore, the SAC does not meet the heightened pleading standard required to state a claim for violating SEC Rule 10b-5.

Setting aside the lack of specificity, the SAC also fails to state a claim for violating SEC Rule 10b-5 because Kelly does not allege that FINRA made an intentional and material misrepresentation in connection with the sale or purchase of a security. *McGee v. SEC*, 733 Fed. Appx. 571, 574-75 (2d Cir. 2018); *see also generally* ECF 42. The SAC, relying on unsupported allegations, asserts that the corporate action notices failed to disclose purportedly material information. *See, e.g.*, ECF 42, at 17 ("By drafting corporate-action language that implied continued trading while secretly preparing to halt the market, FINRA misled investors and manufactured reliance on a false pretext."). The assertion in the SAC that the alleged "misrepresentations and omissions occurred in connection with the purchase or sale of a security, because they directly affected investors' ability to sell, transfer, or settle trades in MMTLP shares and the market's valuation of those securities," *id.* at 18, is insufficient to establish that FINRA engaged in *any* activity related to the purchase or sale of a security. *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 650 (9th Cir. 1988) (under Rule 10b-5, a "purchase or sale[] requires an actual purchase or sale of securities, or a contract to purchase or sell") (internal quotations omitted) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735 (1975)). Kelly does not allege that he purchased or sold his MMTLP shares based on FINRA's announcement of the corporate action; instead, Kelly expressly concedes that his allegations against FINRA relate to a security he merely held. ECF 42, at 16-17. Kelly therefore cannot establish the elements of a Rule 10b-5 claim against FINRA.[17]

For these reasons, Kelly fails to state a claim for relief under the Exchange Act. Accordingly, Counts I and III must be dismissed and leave to amend should not be afforded because any amendment of these claims would be futile.

---

[17] The SAC fails to allege any deception that occurred "in connection with the *purchase or sale* of any security," thus Kelly also lacks standing to assert this claim. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (emphasis added) (fraud alleged under Rule 10b-5 must "coincide" with an actual securities transaction).

**G.      Kelly Fails to State a Claim for Equitable Relief**

Kelly's claim for declaratory and injunctive relief included in Count IV also fails to state a claim. *See* ECF 42, at 20-21.

**i.      Kelly Cannot Bring a Claim for Injunctive Relief**

As an initial matter, "[a] request for a preliminary injunction is not a cause of action." *Kitchen v. Select Portfolio Servicing*, No. 15-cv-02297, 2016 U.S. Dist. LEXIS 21831, *12 (D. Nev. Feb. 23, 2016). However, to the extent the Court considers Kelly's request for a preliminary injunction as a distinct motion, Kelly's request fails to satisfy either of the two tests used in the Ninth Circuit to determine whether a preliminary injunction should issue. Under the traditional test articulated by the U.S. Supreme Court in *Winter v. N.R.D.C*, a plaintiff seeking an injunction must prove four factors: (1) likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) the balance of hardships tips in his favor; and (4) that an injunction is in the public interest." 555 U.S. 7, 20 (2008). "Alternatively, under the sliding scale approach, [a plaintiff] must demonstrate: (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in [his] favor, and (4) an injunction is in the public interest." *Amistad Christiana Church v. Life Is Beautiful, LLC*, 132 F. Supp. 3d 1246, 1254 (D. Nev. 2015); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Here, Kelly requests that this Court grant injunctive relief that requires FINRA to: (i) "[p]roduce and preserve all communications, trading data, blue-sheet records, and corporate-action filings related to MMTLP, Meta Materials, and Next Bridge Hydrocarbons";[18] (ii) modify its procedures for reviewing requests to announce corporate actions; and (iii) provide a written accounting to the Court of "all internal and inter-agency communications related to the MMTLP halt," among other things. ECF 42, at 21. However, for all of the reasons outlined above, the claims included in the SAC fail as a matter of law, and Kelly has no likelihood of success on the merits,

---

[18] Earlier in this case, Kelly sought the production of similar information via a motion for preliminary injunction, ECF 16, and this Court denied the motion because Kelly failed to establish a likelihood of success on the merits of the claims asserted in the FAC. Order at 10.

and he has not raised any serious questions on the merits. Moreover, Kelly makes no admissible showing of irreparable harm. Finally, notwithstanding his assertions related to other investors, this is an individual case and not a class action.  Thus, Kelly also fails to demonstrate that an injunction would be in the public interest. In sum, none of the equities weigh in Kelly's favor, and his request for a preliminary injunction should be denied.

### ii.    Kelly Cannot Bring a Claim for Declaratory Relief

Like his request for an injunction, Kelly's request for declaratory relief fails because "the Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action" when no other viable cause of action is stated. *See County of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1215-16 (N.D. Cal. 2017) (dismissing complaint for failure to state claim); *see also Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022) ("We agree with our sister circuits that have considered the issue that the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists."). As explained above, Kelly fails to state any viable cause of action against FINRA. *See supra.* Accordingly, Kelly's claim for declaratory relief fails as a matter of law.

Even if Kelly were able to state an independent cause of action, under the Declaratory Judgment Act, courts only have jurisdiction over matters that present an "actual controversy." 28 U.S.C. § 2201(a). There is no actual controversy presented by the SAC because, as explained above, FINRA has absolute regulatory immunity, Kelly has no private right of action against FINRA, and FINRA is not subject to constitutional claims. In sum, Kelly fails to cite any fact or authority to support finding otherwise and thus, his claim for declaratory relief must be dismissed.

## IV.    CONCLUSION

FINRA respectfully requests that the Court dismiss the SAC with prejudice and without further leave to amend. Kelly has already amended his pleading twice and, given that Kelly's claims are barred by absolute regulatory immunity, Kelly lacks any private right of action, and Kelly cannot establish governmental action to pursue his constitutional claims, further amendment

/ / /

/ / /

/ / /

would be futile. *See Carrico v. San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend properly denied where amendment would be futile).

DATED: November 18, 2025

**EPG LAW GROUP**

Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933

**FAEGRE DRINKER BIDDLE & REATH LLP**
John P. Mitchell (admitted *pro hac vice*)
john.mitchell@faegredrinker.com
105 College Road E
Princeton, NJ 08540
Phone: 609-716-6500

*Attorneys for Defendant FINRA*



DMS_US.374526143.3

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, I served a true and correct copy of the foregoing **DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by United States Mail at Las Vegas, Nevada, postage fully prepaid) upon the following:

William Lee Kelly
6126 Leaning Rock Ct.
North Las Vegas, NV 89031
William.Lee.Kelly@gmail.com
Phone: (702) 427-2763
*Plaintiff, Pro Se*

_____
Kimberly Rupe, EPG Law Group

DMS_US.374526143.3