

1  WILLIAM LEE KELLY
2  Plaintiff, Pro Se
3  6126 Leaning Rock Ct.
4  North Las Vegas, NV 89031
5  Email: William.Lee.Kelly@gmail.com
6  Phone: 702-427-2763

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

**WILLIAM LEE KELLY**,

Plaintiff,

v.

**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. ("FINRA")**,

Defendant.

Case No. 2:25-cv-01195-APG-DJA

**PARTIAL OPPOSITION TO FINRA'S REQUEST FOR JUDICIAL NOTICE**

**I. INTRODUCTION**

Plaintiff does not oppose judicial notice of Exhibit A (the December 8, 2022 Corporate Action Notice). Plaintiff partially opposes judicial notice of Exhibit B (the December 20, 2022 Next Bridge press release) to the extent Defendant seeks judicial notice of the truth of its factual assertions, including the claim that the MMTLP spin-off "was successfully completed on December 14, 2022." Plaintiff further opposes FINRA's separate request for judicial notice of unspecified 'various FINRA rules and other publicly available filings' because it fails to identify, attach, or cite any specific document, rendering it facially defective under Fed. R. Evid. 201.

## II. ARGUMENT

### A. Judicial Notice Cannot Be Used to Declare Disputed Facts as True

Under Fed. R. Evid. 201(b), judicial notice is limited to facts "not subject to reasonable dispute." A court may notice the existence of a document—but not the truth of the matters asserted in that document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1000 (9th Cir. 2018).

Whether the MMTLP/Next Bridge distribution "successfully completed" is sharply disputed, and evidence directly contradicts the assertion:

1. TradeStation confirmed it did not have enough MMTLP shares to complete a 1:1 distribution for its customers. (Exhibit AZ)
2. FINRA itself disclosed that 2.65 million shares remained short after the spinout. (Exhibit L)

Both of these facts are incompatible with the conclusory statement in the press release. Accordingly, the assertion is neither "generally known" nor "accurately and readily determined" as required by Rule 201(b).

### B. Courts Routinely Reject Judicial Notice of Disputed Assertions in Press Releases

The Ninth Circuit prohibits using judicial notice to "smuggle in" contested facts under the guise of noticing a public document. *Khoja*, 899 F.3d at 1003.

The Court may notice that the press release was issued—nothing more.

**C. FINRA's Third Request Is Facially Defective and Overbroad**

FINRA's Request for Judicial Notice of "various FINRA rules and other publicly available filings… referenced in FINRA's Motion to Dismiss" is improper and should be denied in full. Fed. R. Evid. 201 requires courts to notice only specific, indisputable adjudicative facts from reliable sources—not vague categories of documents scattered across other filings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (RJN doctrines cannot be used to "smuggle in" extraneous materials at the pleading stage).

Here, FINRA identifies no specific rules or filings, attaches none, and provides no pinpoint citations, sources, or explanations of what facts the Court should notice. This abdicates their burden under D. Nev. LCR 7-2(e) and FRE 201(c)(2) (requiring opportunity to respond to proposed facts). Courts routinely deny such boilerplate requests. *E.g.*, *Ritchie v. United States*, 208 F. Supp. 3d 1134, 1141 (D. Nev. 2016) (denying RJN for failure to "clearly identify" documents and relevance).

Plaintiff does not oppose judicial notice of the text of any properly identified, undisputed FINRA rules (e.g., Rule 6490 as published at finra.org/rules) or SEC filings (e.g., via EDGAR), solely for their existence and facial contents—not for the truth of any disputed assertions therein. But absent specifics, the entire request fails.

**III. CONCLUSION**

Plaintiff respectfully requests that the Court:

1. Grant judicial notice of Exhibit A (December 8, 2022 Corporate Action Notice);

2. Deny judicial notice of the truth of the factual assertions in Exhibit B (Next Bridge press release), particularly the statement that the spin-off "was successfully completed," because that assertion is disputed and not subject to judicial notice under Rule 201(b); and

3. Deny judicial notice of unspecified 'various FINRA rules and other publicly available filings' in its entirety.

Respectfully Submitted,

Dated: November 20, 2025

**William Lee Kelly**
**Plaintiff, Pro Se**
6126 Leaning Rock Ct.
North Las Vegas, NV 89031
Email: William.Lee.Kelly@gmail.com
Phone: (702) 427-2763            Signature: /s/ *William Lee Kelly*

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2025, I served this Partial Opposition to FINRA's Request for Judicial Notice via email to FINRA's counsel at john.mitchell@faegredrinker.com and elias@epglawgroup.com, pursuant to consent given on July 19, 2025.

/s/ *William Lee Kelly*

Dated: November 20, 2025

1   **EXHIBIT AZ**

2   **Subject:** TradeStation Confirming They Don't Have Shares Available for Investors

3   **Source:** https://ecf.flsd.uscourts.gov/doc1/051127252128

4   > Upon the initial distribution of NBH common stock, broker-dealers, like TradeStation, were granted physical certificates based on their customers' former holdings of Meta Materials ("MMTLP"). The NBH certificate that TradeStation received excluded a large number of NBH shares that had been lent to other broker-dealers as part of TradeStation's Fully Paid Lending program. Despite TradeStation's best efforts, we have been unable to recall a portion of the lent-out shares because there is currently no market for the security. This means that we will not be able to honor some of our customers' requests to register and record their ownership in book entry form with AST because the shares are not backed by a physical certificate. If the

5

6

7

8

9

10

11

12

13

14

15

1  **EXHIBIT L**

2  **Subject:** FINRA FAQ - Short Positions In a Private Company – Nov. 6, 2023

3  **Source:** https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-
4  action-and-trading-halt

5

**14. How much short selling was there in MMTLP around the time of the Next Bridge / MMTLP corporate action? Was there a large short position in MMTLP shares?**

FINRA periodically collects short interest information from broker-dealers and publishes short interest reports twice each month based on that information. As explained in the March 16, 2023, MMTLP FAQs, Question No. 8, these reports reflect a snapshot of the total open short positions existing in a security on the books and records of broker-dealers on a given reporting settlement date. The last short interest reporting settlement date available for MMTLP was November 30, 2022, because the issuer cancelled the MMTLP shares and the symbol was deleted prior to the next short interest reporting settlement date. Thus, short interest data for MMTLP around the time of the corporate action was not made publicly available.[11]

Based on FINRA's subsequent regulatory efforts, FINRA estimates that there was an aggregate short interest position in MMTLP in accounts held at broker-dealers as of December 12[12] of approximately 2.65 million shares out of 165.47 million total shares outstanding, which is not a significant percentage—only 1.6%—of the total shares outstanding.[13] The short interest position in MMTLP had therefore decreased substantially—by nearly 60%—between November 15 and December 12. Specifically, short interest in MMTLP as of November 15, 2022, (approximately 6.4 million shares) declined around 27% to approximately 4.7 million shares as of November 30, 2022, and declined about a further 32% to approximately 2.65 million shares as of December 12.

6
7
8