**FAEGRE DRINKER BIDDLE & REATH LLP**
John P. Mitchell (admitted *pro hac vice*)
john.mitchell@faegredrinker.com
105 College Road E
Princeton, NJ 08540
Phone: 609-716-6500

**EPG LAW GROUP**
Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933

*Attorneys for Defendant FINRA*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM LEE KELLY, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY (FINRA),<br><br>    Defendant. | CASE NO.: 2:25-cv-01195-APG-DJA<br><br>**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, hereby responds to Plaintiff William Lee Kelly's ("Kelly") opposition to FINRA's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 56.

**I.    INTRODUCTION**

When the Court dismissed Kelly's First Amended Complaint ("FAC") with leave to amend, it stated "if Kelly chooses to amend his complaint, he should be aware of difficulties his second amended complaint would face." ECF 40 (the "Order") at 11. Specifically, the Court found **"[t]here are 'no exceptions' to regulatory immunity** as long as FINRA acts pursuant to the Exchange Act" and therefore "[t]o the extent Kelly's potential amended claims would be based on FINRA's decision to suspend trading," it would trigger application of FINRA's regulatory immunity. *Id*. at 11-12 (emphasis added). As noted in FINRA's Motion to Dismiss ("Motion"), the Second Amended Complaint ("SAC") arises entirely from FINRA's regulatory activities and

therefore fails to overcome the deficiencies identified in the Order. It is barred entirely by FINRA's absolute regulatory immunity for which there exists no "ultra vires" exception. And there are multiple other independent bases to dismiss the SAC, as follows:

**_First_**, Kelly fails in his opposition to the Motion ("Opposition") to address any of the authorities extending FINRA's regulatory immunity to his equitable claims for declaratory and injunctive relief, thus abandoning the argument. *Jenkins v. City of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (argument is abandoned when not addressed by opposition brief responding to motion).

**_Second_**, Kelly's constitutional claims again fail because Kelly concedes that FINRA is not a governmental actor, SAC at ¶ 6, and he cannot establish either a nondelegation or a due process violation under the facts alleged in the SAC.

**_Third_**, Kelly cannot establish that he possesses any private right of action to bring any of the claims asserted in his SAC.

**_Fourth_**, Kelly concedes in his Opposition that he cannot state SEC broker-dealer rule or regulation violations against FINRA and fails to proffer any specific particularized facts to support his claim that FINRA violated Rule 10b-5. Moreover, given that the trade halt was authorized by SEC-approved FINRA Rule 6440, and all FINRA's related conduct has been held subject to regulatory immunity, Kelly cannot state these claims.[1] The SAC's failure to state any independent cause of action against FINRA is fatal to Kelly's prayer for declaratory relief. Further, as the Opposition fails to address any of the factors necessary to establish cause for issuance of a preliminary injunction, Kelly abandons that argument as well. *Jenkins*, 398 F.3d at 1095 n.4.

/ / /

---

[1] In various sections of his Opposition, Kelly posits that there is "no precedent" foreclosing his claims. *See, e.g.*, Opp., p. 32. Not so. Several other MMTLP investor lawsuits have been dismissed pursuant to Rule 12 motions. *See, e.g.*, *Traudt v. Rubenstein et al.*, No. 2:24-cv-782, 2025 U.S. Dist. LEXIS 123280 (D. Vt. June 30, 2025); *Hensley v. TD Ameritrade, Inc.*, No. 3:23-cv-5159-DGE, 2023 U.S. Dist. LEXIS 246544 (W.D. Wash. Oct. 2, 2023); *Park v. FINRA*, No. 2:23-CV-69-RWS, 2023 U.S. Dist. LEXIS 238130 (N.D. Ga. Sep. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, No. 2:23-cv-00881-MCS-PVC, 2023 U.S. Dist. LEXIS 81166 (C.D. Cal. May 8, 2023); *Tawil v. FINRA*, No. 4:22cv440-RH-MAF, 2023 U.S. Dist. LEXIS 117247 (N.D. Fla. May 24, 2023).

DMS_US.374983026.2

***Fifth***, the SAC is a shotgun pleading that is not rectified by Kelly's filing of an improper Request for Judicial Notice.

***Finally***, the Opposition contains several nonexistent case citations and quotes that do not appear in the caselaw and may have been created by artificial intelligence ("AI") hallucinations. To avoid the unnecessary time and expense to FINRA in opposing AI hallucinated authority, and to conserve judicial resources, FINRA requests that the Court admonish Kelly from making future misrepresentations of legal authority. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-YGR, 2025 U.S. Dist. LEXIS 143212, *6 (N.D. Cal. July 25, 2025) (plaintiff's "self-represented status does not permit him to submit information blindly. Like every other person who appears before the court, he has an obligation to confirm that arguments and case law submitted to the court are supported by existing law [and not blind reliance on AI], and a failure to do so is sanctionable.").

The SAC should be dismissed with prejudice, and Kelly should be denied any further leave to amend.

## II. FINRA'S MOTION SHOULD BE GRANTED AND THE SAC DISMISSED

### A. Like the FAC, Regulatory Immunity Bars the SAC

Contrary to Kelly's incorrect assertions that the SAC "challenges a series of administrative acts for which FINRA has no statutory authority" (Opp. pp. 2, 9), the SAC complains only of FINRA's regulatory activities that arise under the Exchange Act, and the Complaint is therefore barred by regulatory immunity. *See* FINRA Rule 6440 (authorizing FINRA's imposition of a trade halt); *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 116 (2d Cir. 2011) (FINRA's enforcement and regulatory decisions constitute regulatory functions for which FINRA is immune from suit); *DL Cap. Grp., LLC v. NASDAQ Stock Mkt., Inc.,* 409 F.3d 93, 98 (2d Cir. 2005) (absolute immunity precludes claims related to an SRO's announcement regarding the suspension or cancellation of trades); *Hofman v. Fidelity Brokerage Servs., LLC*, No. 2:23-cv-00881-MSC-PVC, 2023 U.S. Dist. LEXIS 81166, at *14 (C.D. Cal. May 8, 2023) ("Facilitating trading of Meta Materials securities and publishing corporate action notices are functions within the ambit of FINRA's regulation and oversight of the over-the-counter market."); *In re Facebook, Inc., IPO*

*Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) (dismissing claim against an SRO alleging its decision not to halt trading of a security was negligent on regulatory immunity grounds because "[t]he capacity to suspend trading… is a quintessentially regulatory function"); *Opulent Fund, L.P. v, Nasdaq Stock Mkt., Inc.*, No. C-07-03683, 2007 U.S. Dist. LEXIS 79260, *13 (N.D. Cal. Oct. 12, 2007) (identifying suspension of trading as regulatory in nature). Indeed, in the Order dismissing Kelly's FAC, this Court found "'there are few functions more quintessentially regulatory than suspension of trading' for determining [regulatory] immunity." Order at 11 (citation omitted).

As with the FAC, Kelly attempts to shoehorn the SAC into what he characterizes as an "ultra vires" exception to FINRA's regulatory immunity. As this Court is aware, however, regulatory immunity is absolute and without exception – ultra vires or otherwise. *See* Order p. 11 ("[t]here are 'no exceptions' to regulatory immunity as long as FINRA acts pursuant to the Exchange Act.") (citation omitted); *see also DL Cap. Grp.*, 409 F.3d at 98 ("[P]recedent, not to mention common sense, strongly militates against carving out a 'fraud' exception to SRO immunity."); *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (rejecting the plaintiff's argument for a "bad faith" exception to the immunity doctrine, noting "our circuit does not recognize such an exception"), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374 (2016); *In re: Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC."); *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions.").

In an effort bolster his untenable ultra vires argument, Kelly misconstrues or miscites several judicial holdings, virtually all of which support application of absolute regulatory immunity to FINRA's activities related to MMTLP. For example, Kelly cites *Sparta Surgical* as

containing a series of proffered quotes that do not appear anywhere in the case. Opp. p. 9, 11, 13. Kelly's reliance on *Sparta Surgical* is misplaced as the case supports the application of immunity to FINRA's regulatory activities. *See Sparta Surgical*, 159 F.3d at 1214-15 ("When [FINRA] acts in this capacity to suspend trading, [FINRA] is performing a regulatory function cloaked in immunity" and rejecting the plaintiff's argument for a "bad faith" exception to the immunity doctrine.). Similarly, Kelly cites *Butz v. Economou*, 438 U.S. 478 (1978), several times, but he includes a quote that does not appear anywhere in the case. Opp. p. 3. In addition, *Butz* concerned the application of qualified immunity to federal officials working for the United States Department of Agriculture. *Butz*, 438 U.S. at 490-91. As such, it is inapposite to the facts in this case.

The other authorities cited by Kelly are equally specious. *Weissman v. NASD*, 468 F.3d 1306 (11th Cir. 2006), was the first case decided by the Eleventh Circuit before it reheard the case *en banc* in *Weissman v. NASD*, 500 F.3d 1293 (11th Cir. 2007). While Kelly lists the 2007 *Weissman* decision in his Table of Authorities, it is the 2006 *Weissman* decision he cites in his brief, including to hallucinated quotes that do not appear anywhere in either case. Opp. pp. 10, 13. Like the *Sparta Surgical* decision, *Weissman* supports applying regulatory immunity to FINRA's regulatory activities at issue in this case. *Weissman*, 500 F.3d at 1296 ("Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions.").

The other cases Kelly cites suffer from similar issues. *See* Opp. p. 10 (attributing a non-existent quote to *City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48–49 (2d Cir. 2017), which is a case that concerns the provision of co-location services and proprietary data feeds that the court determined were not regulatory functions); *id.* at 11 (citing *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011), which does not address regulatory immunity and does not stand for the proposition(s) for which Kelly cites it); *id.* at 12 (citing *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025), which does not address regulatory immunity and is inapposite to the issues in this case); *id.* at 2, 13 (attributing a non-existent quote to *DL Capital Group*, 409 F.3d at 99, and citing the case for

propositions that are not presented in this case). Some of these additional cases also support FINRA's assertion of regulatory immunity. *See City of Providence,* 878 F.3d at 46 ("An SRO and its officers are entitled to absolute immunity when they are, in effect, 'acting under the aegis' of their regulatory duties.") (citation omitted); *DL Capital Group,* 409 F.3d at 99 (affirming that absolute immunity applies to SROs performing regulatory activities and refusing to adopt a fraud exception to the immunity doctrine).

Kelly also does not address FINRA's argument, or the multiple authorities it cites, that regulatory immunity extends to his equitable claims, thereby abandoning the argument. *Jenkins*, 398 F.3d at 1095 n.4.

In sum, the SAC does not overcome FINRA's assertion of regulatory immunity. Thus, like the FAC before it, all of Kelly's claims against FINRA in the SAC are barred by regulatory immunity, and the SAC should be dismissed in its entirety with prejudice and without further leave to amend.

### B. Kelly's Constitutional Claims Fail

#### 1. FINRA Is Not a Governmental Actor

Relying on *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), Kelly suggests that "FINRA is a federal actor" when it engages in the conduct alleged in the SAC. Opp. p. 3. *Lebron*, however, supports FINRA's position that it is not a governmental actor. *Lebron* recognized an exceptional category of nominally private companies—there, Amtrak—that are actually "part of the Government" for constitutional purposes because the government "create[d]" the corporation for "governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 397, 400. Here, the SAC does not include any allegation that FINRA is "part of the Government," nor does it allege that FINRA was created for "government objectives." *See generally* SAC. Nor could the SAC be amended to include such allegations. FINRA does not possess any of the unusual characteristics that resulted in the Supreme Court determining that Amtrak is "part of the Government": The government did not create FINRA, *see Alpine*, 121 F.4th at 1321; the government does not appoint a single member of FINRA's Board of Governors, *see* FINRA Board of Governors,

DMS_US.374983026.2

https://www.finra.org/about/governance/finra-board-governors; and the government does not fund or otherwise control FINRA, *see Alpine*, 121 F.4th at 1321; *see also Santos-Buch v. FINRA,* 32 F. Supp. 3d 475, 484-85 (S.D.N.Y. 2014), *aff'd*, 591 Fed. App'x 32 (2d Cir. 2015); *Desiderio v. NASD, Inc.*, 191 F.3d 198, 206-07 (2d Cir. 1999) (discussing FINRA's predecessor, NASD). Thus, "*Lebron* is clearly distinguishable" because there "is no commonality between [FINRA] and Amtrak." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) (discussing NASD).

In the Opposition, Kelly also contends that while he admits FINRA is not a government agency, when it exercises delegated federal regulatory authority, FINRA is a state actor for constitutional purposes. Opp. p. 14 n.2. That contention is contrary to "a multitude of courts nationwide [that] have held . . . that FINRA is a private entity wholly separate from the SEC or any other government agency." *Scottsdale Cap. Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 105 (D.D.C. 2023), *rev'd in part on other grounds by Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024). Kelly's reliance on *Turbeville* and *Standard Investment* to argue "an SRO may be treated as a federal actor when it exercises regulatory authority delegated by Congress and supervised by the SEC," *see* Opp. pp. 14-15, does not undermine FINRA's position that it is not a state actor because the courts in those cases were not addressing constitutional claims. *See Turbeville v. FINRA*, 874 F.3d 1268, 1273-76 (11th Cir. 2017) (analyzing federal question jurisdiction); *Standard Inv. Chartered, Inc. v. NASD, Inc.*, 637 F.3d 112, 115-17 (2d Cir. 2007) (analyzing regulatory immunity). In addition, Kelly's contention that the Court must engage in a fact-intensive inquiry to determine whether FINRA engaged in state action, Opp. pp. 3, 11, ignores binding precedent that establishes "[a] threshold requirement of any constitutional claim is the presence of state action." *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998), *overruled on other grounds by EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003); *see also* Motion at 15. Here, Kelly has not alleged any facts that establish FINRA engaged in government action when it conducted its regulatory activities related to MMTLP. Nor could he.

/ / /



DMS_US.374983026.2

Kelly's reliance on *Alpine* to assert that FINRA's alleged conduct was ultra vires, *see* Opp. pp. 11-12, is also misplaced. In *Alpine*, the D.C. Circuit considered the applicability of the private-nondelegation doctrine in the "narrow" and "limited" context of an expedited and uncompleted FINRA disciplinary proceeding seeking expulsion of a FINRA member firm before the SEC had an opportunity to review the sanction. S*ee Alpine*, 121 F.4th at 1330. The trading halt about which Kelly complains does not fit into the narrow and limited context of an expedited FINRA disciplinary proceeding, and Kelly is not a FINRA member firm. Accordingly, the *Alpine* decision is wholly inapplicable to the facts presented in this case.

### 2. Kelly's Takings and Due Process Claims Fail for Other Reasons

Even setting aside that Kelly cannot establish that FINRA is a governmental actor, Kelly has not identified any deprivation of a constitutionally-protected liberty or property interest. Instead, Kelly asserts that intangible rights, such as "statutory entitlements and access to legally regulated processes," are constitutionally-protected rights that were abridged. Opp. p. 23. In support of this argument, Kelly cites *SIPC v. Vigman*, 764 F.2d 1309 (9th Cir. 1985), claiming that it recognizes "the right to sell securities as a protected property right." Opp. p. 23. *SIPC*, however, contains no discussion of this proposition. Instead, that case resolves questions about personal jurisdiction, and the application of a co-conspirator venue theory to an action under the Exchange Act. *SIPC*, 764 F.2d at 1313.

Kelly asserts that *Omnia v. United States*, 261 U.S. 502 (1923), is inapplicable to his takings claim because the trading halt resulted in a direct deprivation of his property rights rather than an incidental impact. *See* Opp. pp. 23-24. The protected property interest that FINRA purportedly deprived Kelly of is "the right to access, dispose of, and transfer lawfully held securities . . . ." Opp. pp. 10-11; *see also id.* at 13 (Kelly and similarly situated investors "were deprived of lawful trading, transfer and liquidation rights in MMTLP securities, suffering loss of property . . ."). As discussed in FINRA's Motion to Dismiss, MMTLP shares were not "taken" from Kelly because he was entitled to receive one Next Bridge share for each MMTLP share that he held on December 12, 2022. Motion at 17. In fact, Kelly already admitted he received Next Bridge shares in a prior version of his Complaint, and he cannot dispute that fact now. FAC (ECF

7, ¶ 17) ("[I]nvestors were forcibly transitioned into holding shares of a non-traded, privately held company—Next Bridge Hydrocarbons."); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (while amended pleadings supersede prior pleadings, amended pleadings cannot be inconsistent with prior pleadings). Thus, while Kelly's ability to access or liquidate his MMTLP shares may have been frustrated, the shares were not taken. Accordingly, Kelly fails to state a takings claim.

Further, contrary to Kelly's assertion, FINRA's discussion of *Mathews v. Eldridge*, 424 U.S. 319 (1976), in its Motion, is not circular, nor does it "collapse the state-actor inquiry into the due-process merits." Opp. p. 24. The SAC asserts that the trading halt was constitutionally deficient because it failed a three-part test set forth in *Mathews*. *See* ECF 42, at 15. The three-part test articulated in *Mathews,* which involved a governmental actor, is inapplicable here because FINRA is not a governmental actor, and governmental action is a condition precedent for any constitutional claim under the Fifth Amendment. *See supra*; *see also Duffield*, 144 F.3d at 1200.

At bottom, FINRA is not a governmental actor, Kelly's takings and due process claims fail as a matter of law, and those claims should be dismissed with prejudice.

### C. Kelly Has No Private Right of Action

Kelly apparently misunderstands FINRA's arguments regarding his lack of a private right of action. Kelly advances in his Opposition that the SAC, unlike the FAC, does not plead allegations that FINRA violated its own rules. Opp. pp. 16-17. Kelly argues that, instead, his claims are both constitutional in nature and purportedly brought pursuant to "sources of law that create a private right of action." *Id.* However, as discussed in the Motion, neither the Exchange Act nor any other statute or common law principle provides for a private right of action against an SRO, like FINRA, for alleged violations of its own rules *or of the federal securities laws*, including SEC rules and regulations. *See* Motion at 11-12 (collecting cases). Kelly does not refute or even address the authorities FINRA cited in its Motion. *See generally* Opp. The authorities upon which Kelly

DMS_US.374983026.2

relies address private rights of action against individual(s) or entities, not SROs like FINRA, and therefore they have no application here.[2]

Accordingly, Counts I, III, and IV in the SAC must be dismissed with prejudice.

### D.     Kelly's SAC Fails to State a Claim

#### 1.     Kelly Concedes the SAC States No Claim Against FINRA for Violation of SEC Rule 17

Kelly clarifies that he "does not allege that FINRA is directly subject to broker-dealer obligations under SEC Rules 15c2-11, 17a-4, or Regulation SHO § 203(b)(3)." Opp. at 18 ("These rules apply to member firms, not to FINRA."). As such, Kelly concedes that Count I in the SAC does not state a claim for FINRA's alleged violation of these rules and regulations. While Kelly offers a tortured and meandering explanation that FINRA is nonetheless in violation of the "framework" and "statutory purpose" of these provisions, he makes plain that his claims are based on allegations that FINRA violated its own rules and engaged in "ultra vires" conduct he contends falls outside FINRA's regulatory immunity. Opp. at 18-19, 25-26. This Court has already found that: (i) Kelly possesses no private right of action against FINRA for violation of its own rules (Order, p. 8), and (ii) that no exception exists to FINRA's regulatory immunity (Order, pp. 11-12).[3] Kelly's effort to resuscitate his failed claims for SEC rule violations is unavailing.

#### 2.     The SAC Does Not State a Claim Under SEC Rule 10b-5

FINRA's corporate action notice, as noted above, cannot form the basis for Kelly's alleged 10b-5 violation because it is subject to FINRA's regulatory immunity. *DL Cap. Grp.*, 409 F.3d at 98 (absolute immunity precludes claims related to an SRO's announcement regarding the

---

[2] *Superintendent of Ins. v. Bankers Life*, 404 U.S. 6 (1971), concerned claims against private entities. *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), concerned claims against a class of shareholders. Neither addresses whether a plaintiff can assert a private right of action against an SRO.

[3] Kelly also cites *Sparta Surgical* and *Weissman* to support his proposition that regulatory immunity does not apply to activities that undermine or obstruct federal securities laws, but those words do not appear in either case. In fact, as noted above, both cases support the application of FINRA's regulatory immunity here. *Sparta Surgical*, 159 F.3d at 1214-15 (abrogating immunity only for "private business" not alleged in the SAC here and holding suspension of trading as subject to immunity for which there is no "bad faith" exception); *Weissman*, 468 F.3d at 1313 (applying immunity to regulatory acts).



DMS_US.374983026.2

suspension or cancellation of trades); *Hofman*, 2023 U.S. Dist. LEXIS 81166, at *14 ("[P]ublishing corporate action notices are functions within the ambit of FINRA's regulation and oversight of the over-the-counter market."); *Standard Inv. Chartered*, 637 F.3d at 116 (FINRA's enforcement and regulatory decisions constitute regulatory functions for which FINRA is immune from suit).

The SAC further fails to state a claim under Rule 10b-5 because it does not, and cannot, meet the heightened pleading standard that is required for fraud claims. 15 U.S.C. § 78u-4(b)(1); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603-04 (9th Cir. 2014); FRCP 9(b). Kelly's Opposition merely recites the same conclusory and unsupported allegations regarding each element of the claim that is included in the SAC. Opp. pp. 27-28. The SAC fails to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state *with particularity all facts on which that belief is formed*." 15 U.S.C. § 78u-4(b)(1) (emphasis supplied).

Kelly's reliance on *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9h Cir. 2016), is misplaced as *Lloyd* merely discusses the generalized principle that facts stated "with particularity" can give rise to a "strong inference" of the single element of scienter. *Id*. *Lloyd*, however, does not extend to the other elements of fraud claims, nor does it absolve a plaintiff of the requirement to plead each element of a fraud claim with particularity. In fact, *Lloyd* does the opposite – it restates the heightened pleading requirement for alleging Rule 10b-5 violations and requires a plaintiff to allege facts showing "defendants engaged in knowing or intentional conduct" inclusive of "deliberate recklessness." *Id*. Kelly's conclusory and unsupported argument that FINRA acted with scienter because it "knew, or at a minimum recklessly disregarded, that no SEC rule or order authorized the U3 halt or deletion [and] that its own rules and procedures did not permit the course of conduct it chose . . .," Opp., p. 27, fails to satisfy the requirements outlined in *Lloyd*. In addition to the authorities establishing that FINRA engages in regulatory activity when it halts trading (Motion at 9), it is undisputed that FINRA Rule 6440, approved by the SEC, expressly authorizes FINRA to initiate a trade halt.

The authorities Kelly cites regarding the "purchase or sale" requirement of a Rule 10b-5 claim only serve to underscore the deficiencies in the SAC. Specifically, Kelly cites to *SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. 1993), and *Ambassador Hotel Co. v. Wei-Chaun Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999), for the proposition that representations intended to influence investor decisions may satisfy the "purchase and sale" requirement. But Kelly fails to identify any fact establishing that FINRA intended to influence investor decisions when it halted trading of MMTLP.

For these reasons, Kelly fails to state a claim for violations of Rule 10b-5.

### 3.     The SAC Does Not State a Claim for Declaratory Relief

"[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022). Here, Kelly fails to state any of his claims, each claim is barred by regulatory immunity, he lacks a private right of action, and FINRA is not a governmental actor against whom constitutional challenges may be asserted. As such, the SAC presents no actual controversy, and Kelly's request for declaratory relief fails because it is not an independent cause of action.

### 4.     The SAC Does Not State a Claim for Injunctive Relief

Similarly, "[a] request for a preliminary injunction is not a cause of action." *Kitchen v. Select Portfolio Servicing*, No. 15-cv-02297-RCJ-PAL, 2016 U.S. Dist. LEXIS 21831, *12 (D. Nev. Feb. 23, 2016). If the Court considers Kelly's request for a preliminary injunction as a distinct motion, Kelly's Opposition fails to address either of the two tests used in the Ninth Circuit to determine whether a preliminary injunction should issue. *Amistad Christiana Church v. Life Is Beautiful, LLC*, 132 F. Supp. 3d 1246, 1254 (D. Nev. 2015) (outlining alternative tests); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). As a result of Kelly's failure to address the standards required for issuance of a preliminary injunction, any request for such relief must be denied.

### E.     The SAC is an Improper Shotgun Pleading

Contrary to Kelly's assertions, Opp. p. 3, the SAC suffers from multiple defects – it is not streamlined, it does not present a clear legal framework, it does not contain discrete factual

allegations, and while it identifies four causes of action, they are not well-defined.

These defects are not merely stylistic. The SAC is structurally deficient and fails to provide fair notice of the factual basis for each asserted claim. Rather than presenting discrete factual allegations tied to discrete causes of action, the SAC commingles allegations, obscures which facts purportedly support which claims, and forces FINRA and the Court to speculate as to the operative theory of liability. These defects violate Federal Rule of Civil Procedure 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

The SAC is 24 pages long, and it does not have consecutively numbered paragraphs. Kelly haphazardly and inconsistently numbers sub-headings and the occasional paragraph, which contravenes Rule 10(b), and thus, also Rule 8(a). Kelly's Opposition fails to acknowledge "realleg[ing] and incorporat[ing] by reference all preceding paragraphs as though fully set forth herein" runs afoul of Rules 8(a) and 10(b). Like in the case of *Maxson v. Mosaic Sales Solutions Holding Co.*, No. 2:14-cv-02116-APG-NJK, 2016 U.S. Dist. LEXIS 30275, *7-8 (D. Nev. Mar. 7, 2016), the SAC does not present the allegations in a way that FINRA or the Court can discern how Kelly's alleged facts support any of Kelly's claims. *Id.* ("Where multiple claims are brought, the complaint should make clear which factual allegations purport to give rise to each of the various causes of action."). As this Court has held, "[o]paque, prolix and/or confusing complaints . . . are subject to potential dismissal under Rule 8(a), as such pleadings impose unfair burdens on judges and litigants in screening and responding to the pleading." *Hooks v. Williams*, No. 2:13-cv-01899-APG-PAL, 2014 U.S. Dist. LEXIS 59218, *4 (D. Nev. Apr. 28, 2014); *see also Ross v. Williams*, No. 2:21-cv-00630-APG-EJY, 2021 U.S. Dist. LEXIS 235759, *6 (D. Nev. Dec. 9, 2021) (under Rule 8, "a plaintiff may not allege facts that are extraneous and not part of the factual basis for a particular claim" and a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances"). Kelly's *pro se* status does not exempt him from complying with this Court's rules. *Maxson*, 2016 U.S. Dist. LEXIS 30275 at *8.

In response to FINRA's assertion that it is improper to refer to earlier filings and exhibits in an amended complaint, Motion at 12-13, Kelly purports to clarify that the "SAC's introductory



13

reference to earlier exhibits serve[s] only to preserve the procedural history of the case—not to repurpose prior pleadings as operative factual allegations," Opp. p. 21. Kelly's purported clarification only confirms the confusing nature of the SAC. Kelly asserts that the evidentiary materials he previously submitted in this action and attached as Exhibits A through CD to the Opposition—corporate-action records, trading data, broker communications, FOIA correspondence, Congressional letters, OTC and FINRA statements, and regulatory filings—are appropriate for the Court to consider in ruling on FINRA's Motion because they are: "(1) matters of public record, (2) incorporated by reference, or (3) central to the claims and whose authenticity is not disputed." Opp. pp. 21-22. This assertion is contrary to caselaw, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. *See Cap. Express Lines, Inc. v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-01639-DAB-DB, 2025 U.S. Dist. LEXIS 3168, *5 (E.D. Cal. Jan. 6, 2025) ("The court declines to take judicial notice of any of plaintiff's exhibits [attached to its opposition to the motion to dismiss] because plaintiff improperly seeks to use these exhibits to supplement the allegations of its complaint."). Kelly's inclusion of 70 exhibits to his Opposition is an improper attempt to prevent dismissal of the SAC that is fatally flawed. There are numerous problems with Kelly's approach.

<u>First</u>, the SAC does not reference each of the attached documents. Indeed, beyond referring to and incorporating his prior filings, the SAC does not refer to any documents extensively and Kelly fails to identify which of the documents corresponds to which allegation or claim in the SAC. *See Ferris v. Wynn Resorts Ltd.*, No 2:18-cv-00479-APG-DJA, 2021 U.S. Dist. LEXIS 141616, *17 (D. Nev. July 28, 2021) (a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim") (citation omitted). As this Court has held, "[e]xhibits do not substitute for factual allegations in the complaint, so [plaintiff] cannot simply refer to exhibits instead of pleading his claims." *Bouari v. U.S.*, No. 2:21-cv-01974-APG-DJA, 2023 U.S. Dist. LEXIS 149015, *3 (D. Nev. Aug. 23, 2023); *see also Estorga v. Santa Clara Valley Transp. Auth.*, No. 16-cv-02668-BLF, 2016 U.S. Dist. LEXIS 123453, *3-4 (N.D. Cal. Sept. 12, 2016) (declining to consider or take judicial notice of exhibits attached to plaintiff's opposition to motion to dismiss because the

complaint did not allege the contents of the exhibits plaintiff attached to the opposition and thus failed to incorporate them by reference, and because defendant objected to the exhibits, in part, because plaintiff did not provide the basis for judicial notice in accordance with the rules of evidence).

Second, Kelly only asks the Court to take judicial notice of seven of the 70 exhibits attached to his Opposition. *See* Kelly's Motion for Judicial Notice [ECF 55] (seeking judicial notice of Exhibits E, CD, AY, K, L, I, and AO to the Opposition). Kelly has not explained in his Opposition why he seeks judicial notice of these seven documents or how judicial notice of these documents corresponds to the claims he purports to assert. *See Ferris*, 2021 U.S. Dist. LEXIS 141616 at *18. "Judges are not like pigs, hunting for truffles buried in briefs." *Id.* at *19 (citation omitted). Additionally, FINRA separately files its Opposition to Kelly's Motion for Judicial Notice and incorporates those objections here. *See* FINRA's Opposition to Request for Judicial Notice filed contemporaneously herewith.

For these reasons, the SAC is an improper shotgun pleading, and the Opposition does not salvage the SAC to prevent dismissal.

## III.   FURTHER AMENDMENT WOULD BE FUTILE

While Kelly does not request further leave to amend, the facts and repeated legal deficiencies of Kelly's multiple amended Complaints demonstrate that further amendment would not cure the defects of his SAC. Every court that has considered the issue has determined that FINRA is not a governmental actor, and Kelly cannot amend his complaint to establish any basis to assert constitutional claims against FINRA. Moreover, because FINRA's only connection to the allegations in the SAC is its regulatory activities, regulatory immunity precludes Kelly's grievances. For the same reason, Kelly cannot state a private right of action against FINRA. Finally, Kelly failed to state any claim upon which relief could be granted. Accordingly, further amendment would be futile, and this Court should dismiss the SAC with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (court retains discretion to deny leave to amend where amendment would be futile); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (a court's

discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint").

## IV. CONCLUSION

For the reasons stated herein and in FINRA's Motion, this Court should dismiss the SAC with prejudice.

DATED: December 17, 2025

EPG LAW GROUP

_____
Elias George, NV Bar No. 12379
elias@epglawgroup.com
5940 South Rainbow Blvd.
Las Vegas, NV 89118
Phone: 702-358-0933

FAEGRE DRINKER BIDDLE & REATH LLP
John P. Mitchell (admitted *pro hac vice*)
john.mitchell@faegredrinker.com
105 College Road E
Princeton, NJ 08540
Phone: 609-716-6500

*Attorneys for Defendant FINRA*



DMS_US.374983026.2

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2025, I served a true and correct copy of the foregoing **DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by United States Mail at Las Vegas, Nevada, postage fully prepaid) upon the following:

William Lee Kelly
6126 Leaning Rock Ct.
North Las Vegas, NV 89031
William.Lee.Kelly@gmail.com
Phone: (702) 427-2763
*Plaintiff, Pro Se*

_____
Kimberly Rupe, EPG Law Group



DMS_US.374983026.2