William Lee Kelly
Plaintiff, Pro Se
PO BOX 335446
North Las Vegas, NV 89033
Email: William.Lee.Kelly@gmail.com
Phone: 702-427-2763

**UNITED STATES DISTRICT COURT**

DISTRICT OF NEVADA

WILLIAM LEE KELLY,

Plaintiff,

v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.,

Defendant.

Case No. 2:25-cv-01195-APG-DJA

**PLAINTIFF'S RESPONSE TO DEFENDANT'S THIRD NOTICE OF SUPPLEMENTAL**

**AUTHORITY**

Plaintiff William Lee Kelly respectfully submits this response to Defendant FINRA's Third Notice of Supplemental Authority (ECF No. 70), which presents district court adoption orders from the Western District of Texas in *Spears v. Next Bridge Hydrocarbons, Inc.*, *Pease v. SEC*, and *Willcot v. SEC*, and a dismissal order from the District of Connecticut in *Rolo v. SEC et al.*, Case No. 24-cv-2053-VDO (D. Conn. Mar. 9, 2026). For the reasons set forth below, none of these authorities supports dismissal of Plaintiff's claims.

1

**I. THE ADOPTED TEXAS ORDERS AND ROLO APPLY NON-BINDING LAW FROM DIFFERENT CIRCUITS AND DO NOT ENGAGE THE CONTROLLING QUESTION IN THIS CASE**

**A. This Court Is Bound by Ninth Circuit Law, Not Fifth or Second Circuit Authority**

The Western District of Texas decisions apply Fifth Circuit law. *Rolo* applies Second Circuit law. Neither circuit has addressed whether FINRA's immunity under *Sparta Surgical Corp. v. NASD,* 159 F.3d 1209 (9th Cir. 1998), extends to ultra vires administrative acts — specifically, the unilateral modification of issuer-submitted corporate action data and the conversion of a temporary trading halt into a permanent market deletion. That question has never been addressed by any circuit.

This Court is bound by *Sparta Surgical*'s holding that immunity attaches only when an SRO performs functions "actually delegated" by Congress or the SEC, and that "conduct outside the Exchange Act does not receive immunity." 159 F.3d at 1214. None of the newly cited decisions apply or analyze this standard.

**B. The Adopted Texas Orders Do Not Resolve the Ultra Vires Question**

The threshold question is not whether FINRA's conduct was "regulatory," but whether the specific acts challenged were within any authority actually delegated to FINRA under the Exchange Act. That inquiry cannot be bypassed by labeling the conduct "regulatory." If the acts were not authorized, immunity does not attach. Accordingly, the

2

Court must first determine whether the specific conduct alleged here falls within FINRA's delegated authority before reaching any immunity analysis.

In adopting the Texas R&Rs, the district court found that "FINRA has absolute regulatory immunity" and that "the alleged conduct is unquestionably within the regulatory responsibilities of FINRA." *Willcot*, ECF No. 70-3 at 8. That conclusion rests on a foundational assumption — that the challenged conduct was "regulatory" in the first place — without making any affirmative finding that the specific acts fell within FINRA's delegated authority. The Texas court reached that conclusion without analysis, citing *Xu v. FINRA*, 503 F. App'x 7 (2d Cir. 2012), and *In re Facebook IPO*, 986 F. Supp. 2d 428 (S.D.N.Y. 2013), both of which addressed trading halts as a category without examining whether any specific underlying act — such as modifying issuer-submitted data — fell within or outside the SRO's delegated authority.

Plaintiff's theory is not that FINRA's trading halt decision was negligent or made in bad faith. Plaintiff's theory is that two specific acts — (1) unilaterally revising issuer-submitted corporate action data without authorization, and (2) structuring the halt to terminate "concurrent with deletion" of the MMTLP symbol, permanently eliminating all market access — fall outside any statutory delegation and therefore cannot receive immunity under *Sparta Surgical*. That threshold question was not presented, briefed, or decided in any of the Texas cases nor in *Rolo*.

3

**C. The Texas Plaintiffs' Claims Were Materially Different**

The Texas plaintiffs asserted generic securities fraud, negligence, antitrust, and constitutional claims arising from the trading halt. None pleaded that FINRA performed issuer-level administrative functions without statutory authorization. None raised the Section 12(k) structural argument that Congress reserved permanent suspension authority exclusively to the SEC. None invoked Exchange Act § 19(b)'s requirement that functional market structure changes receive SEC approval before taking effect. None argued Exchange Act § 15A(b)(6)'s affirmative requirements as the boundary of FINRA's permitted conduct. The Texas dismissals addressed entirely different legal theories on entirely different records.

Additionally, in *Spears* and *Willcot*, the Texas court dismissed for lack of personal jurisdiction under state long-arm analysis — an issue that is not before this Court. This Court has already established, as law of the case, that Exchange Act Section 27, 15 U.S.C. § 78aa, provides personal jurisdiction for claims that FINRA violated the Exchange Act, provided FINRA has minimum contacts with the United States. ECF No. 40. The Texas personal jurisdiction analysis is wholly irrelevant to this proceeding.

**II. ROLO IS DISTINGUISHABLE AND ITS DISMISSAL WITHOUT PREJUDICE UNDERMINES FINRA'S POSITION**

FINRA's notice characterizes *Rolo* as further support for an unbreakable immunity wall. The opinion itself tells a different story.

4

First, *Rolo* dismissed without prejudice with leave to amend. *Rolo*, ECF No. 70-6 at 12. A court that views immunity as categorically foreclosing any possible claim does not grant leave to amend. The Connecticut court's grant of amendment opportunity confirms that it did not treat the immunity question as an absolute bar to any pleading.

Second, the *Rolo* immunity analysis is two sentences long. It cites *DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93 (2d Cir. 2005), and *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001), and concludes that "all of Plaintiff's claims against FINRA arise from its regulatory activities." ECF No. 70-6 at 8. This conclusion was driven by the plaintiff's own pleading, which characterized FINRA's conduct throughout as "regulatory failures," "regulatory negligence," "regulatory lapses," and "regulatory missteps." ECF No. 70-6 at 8 n.18. The plaintiff in *Rolo* conceded the regulatory characterization in his own complaint. Plaintiff here does the opposite: the Second Amended Complaint alleges that the specific acts at issue were not regulatory because they exceeded any delegated authority and therefore fall outside the scope of immunity entirely.

Third, *Rolo* applies Second Circuit SRO immunity doctrine, not Ninth Circuit *Sparta Surgical*. The Second Circuit cases cited in *Rolo* have not addressed the threshold question of whether acts performed without statutory delegation — as distinguished from acts performed negligently or in bad faith within the scope of delegation — are entitled to immunity. *Sparta Surgical*'s "actually delegated" framework is binding in this Circuit and requires the threshold analysis that *Rolo* never performed.

**III. THE SAME DAY FINRA FILED ECF 70, PLAINTIFF FILED A NOTICE OF SUPPLEMENTAL AUTHORITY PRESENTING UNANIMOUS SUPREME COURT AUTHORITY THAT REINFORCES PLAINTIFF'S STRUCTURAL ARGUMENT**

On March 25, 2026 — the same day FINRA filed ECF 70 — Plaintiff filed a Notice of Supplemental Authority presenting *Galette v. New Jersey Transit Corp.*, 607 U.S. ___ (2026), a unanimous Supreme Court decision issued March 4, 2026. The Court held that a separately incorporated entity — even one designated an "instrumentality" of the state exercising public functions — is not entitled to inherit sovereign immunity where the entity has been structured as legally distinct. The dispositive factor was legal separateness.

The contrast between the authorities now before the Court is instructive. FINRA presents four district court decisions from other circuits, all of which dismissed MMTLP-related claims by applying categorical immunity rules without engaging the threshold question of whether the specific challenged acts were within any statutory delegation. Plaintiff presents a unanimous Supreme Court decision reaffirming that legal separateness carries accountability consequences and that separately incorporated entities cannot selectively invoke governmental immunity while asserting corporate independence to avoid constitutional obligations.

FINRA is a private Delaware non-profit corporation. It asserts corporate separateness when resisting constitutional obligations. It cannot simultaneously claim the absolute immunity of a governmental entity when facing liability for conduct that exceeds its statutory authority. *Galette*'s unanimous reaffirmation that legal separateness cannot be

6

selectively invoked is directly relevant to the threshold immunity question this Court must resolve.

**IV. THE CENTRAL QUESTION REMAINS UNRESOLVED IN EVERY CIRCUIT**

The accumulation of district court dismissals in other circuits does not resolve — and has not addressed — the question that governs this case: whether *Sparta Surgical*'s immunity framework extends to FINRA's acts of (1) unilaterally modifying issuer-submitted corporate action data without authorization, and (2) structuring a trading halt to achieve permanent deletion of a security from the market, without any SEC authorization, SEC rulemaking, or congressional delegation of that authority.

Congress reserved permanent trading suspension authority exclusively to the SEC under Exchange Act § 12(k), 15 U.S.C. § 78l(k). FINRA Rule 6440 authorizes only temporary halts. No SEC order, rule, or directive authorized FINRA's conduct. Former SEC Chair Gensler confirmed in congressional testimony that the halt was "something FINRA did separately." Functional market structure changes require SEC approval under Exchange Act § 19(b) before taking effect. None was obtained.

Every case FINRA has cited — including the newly adopted Texas orders and *Rolo* — assumed without analysis that the challenged conduct was regulatory. None asked the prior question: was this conduct within any statutory delegation at all? Under *Sparta Surgical*, that threshold question must be answered before immunity attaches. It has not been answered

7

in any of the cited cases, and it cannot be answered against Plaintiff on the current record without examining the specific statutory framework Plaintiff has pleaded.

The D.C. Circuit's decision in *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2023), confirms that courts can and do examine whether FINRA has exceeded the boundaries of its delegated authority. The fact that every MMTLP district court has declined to conduct that examination does not mean the examination is improper — it means the question remains open.

Courts do not extend immunity by assumption; they apply it only after confirming the existence of delegated authority. FINRA's position assumes the conclusion it must prove. It characterizes all challenged conduct as "regulatory" without addressing whether the specific acts fall within any delegated authority. Under *Sparta Surgical*, that assumption is insufficient. Because immunity attaches only after the Court determines that the challenged conduct falls within FINRA's delegated authority, dismissal at the pleading stage is improper where, as here, Plaintiff plausibly alleges that FINRA acted outside that authority.

8

**V. CONCLUSION**

FINRA's Third Notice of Supplemental Authority presents four district court decisions from other circuits, none of which apply Ninth Circuit law, none of which engaged the ultra vires threshold question, and all of which assumed without analysis that FINRA's conduct was regulatory. The newly adopted Texas orders and *Rolo* do not advance FINRA's position beyond the authorities already before the Court and already distinguished by Plaintiff.

The controlling question in this case — whether FINRA's specific acts of modifying issuer-submitted corporate action data and permanently deleting MMTLP from the market fall within any statutory delegation under the Exchange Act — has not been addressed by any court. Under *Sparta Surgical*'s "actually delegated" framework, that question must be resolved before immunity attaches. It cannot be resolved by assumption, and it cannot be resolved against Plaintiff at the pleading stage where Plaintiff has plausibly alleged that the specific acts at issue exceeded any authority Congress delegated to FINRA. Plaintiff respectfully requests that the Court deny FINRA's Motion to Dismiss and that the cited authorities be given no greater weight than it is due.

Respectfully submitted,

Dated: March 26, 2026

/s/ *William Lee Kelly*

William Lee Kelly
Plaintiff, Pro Se
PO BOX 335446
North Las Vegas, NV 89033
Email: William.Lee.Kelly@gmail.com
Phone: 702-427-2763

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, I emailed a true and correct copy of the foregoing Plaintiff's Response to Defendant's Third Notice of Supplemental Authority to the Clerk of the Court for filing into the CM/ECF system, pursuant to the District's procedures for pro se litigants. I also served a courtesy copy via email to counsel for Defendant FINRA at john.mitchell@faegredrinker.com and elias@epglawgroup.com.

/s/ *William Lee Kelly*

Plaintiff, Pro Se

Dated: March 26, 2026