**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILLIAM LEE KELLY,

Plaintiff

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY,

Defendant

Case No.: 2:25-cv-01195-APG-DJA

**Order (1) Granting FINRA's Motion to Dismiss Kelly's Second Amended Complaint, (2) Denying FINRA's Motion for Judicial Notice, (3) Denying Kelly's Motion for Judicial Notice, (4) Denying Kelly's Motions to File a Surreply, and (5) Denying Kelly Leave to Amend His Complaint**

[ECF Nos. 47, 48, 55, 58, 59]

William Lee Kelly sues the Financial Industry Regulatory Authority (FINRA) regarding its decision to halt the trading of stocks that Kelly possessed. I dismissed Kelly's first amended complaint but gave him leave to amend. *Kelly v. Fin. Indus. Regul. Auth.*, No. 2:25-cv-01195-APG-DJA, 2025 WL 2962788, at *7 (D. Nev. Oct. 16, 2025). His second amended complaint (SAC) raises four claims against FINRA. First, he alleges FINRA committed securities fraud under Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5. Second, he alleges FINRA violated various provisions of the Securities Exchange Act of 1934 (the Exchange Act) by acting outside its delegated authority. Third, he alleges that FINRA's halt of securities trading violated his Fifth Amendment right to procedural due process. Finally, he brings a claim for declarative and injunctive relief. He also requests that I take judicial notice of several documents and filed two identical motions for leave to file a surreply in support of his

motion for judicial notice. FINRA also requested that I take judicial notice of two documents and various FINRA rules.[1]

I grant the motion to dismiss and decline to grant leave to Kelly to amend his complaint. I deny the motions for judicial notice because the documents attached to them would not change the outcome of this order. I also deny Kelly's motion to file a surreply as moot.

## I. MOTION TO DISMISS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To withstand a motion to dismiss, a complaint must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified).

I must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I consider "five factors in assessing the propriety of leave to amend—bad faith, undue delay,

[1] FINRA filed a "request for judicial notice." ECF No. 48 at 1. "All communications with the court must be styled as a motion, stipulation, or notice." LR IA 7-1(b). I will consider FINRA's "request" as a motion for the purposes of this order, but FINRA must comply with the Local Rules in the future.

prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

**A. Factual background.**

Kelly alleges the following facts in his SAC, which I accept as true when resolving the motions to dismiss.[2] FINRA is a private, self-regulating organization that conducts the day-to-day regulation of the national securities markets under the Exchange Act.[3] ECF No. 42 at 4. It is incorporated in Delaware and headquartered in Washington, D.C. *Id.*

On December 6 and 8, 2022, FINRA unilaterally revised the corporate-action notice of Meta Materials, Inc., identified with the symbol MMTLP, without issuer request or authorization. *Id.* at 5, 16-17. This created inconsistent and misleading public data that implied that participants could continue to trade MMTLP shares after December 8. *Id.* But FINRA issued a trading halt of MMTLP shares on December 9. *Id.*

William Kelly owned MMTLP shares at the time of FINRA's data alterations and trading halt. *Id.* at 4, 6. After the trading halt, Kelly could no longer sell or transfer his MMTLP shares. *Id.* at 5-6.

---

[2] Kelly stated in his SAC that he "incorporates by reference all exhibits, videos, and evidentiary materials previously submitted in his action for contextual completeness and preservation of the existing record, without re-attaching them" to the SAC. ECF No. 42 at 2. He later clarified this statement was not "repurpos[ing] prior pleadings as operative factual allegations" but rather "preserv[ing] the procedural history of the case." ECF No. 56 at 21. In resolving the motion to dismiss I take the factual allegations only from the SAC. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." (quotation omitted)).

[3] See *Sparta Surgical Corp. v. Nat'l Assn' of Sec. Dealers, Inc.*, 159 F.3d 1209, 1210-11, 1213 14 (9th Cir. 1998) (detailing the background of FINRA's predecessor, the National Association of Securities Dealers), abrogated on other grounds by *Merrill Lynch, Pierce, Fenner & Smith Inc., v. Manning*, 578 U.S. 374 (2016); *Turbeville v. Fin. Indus. Regul. Auth.*, 874 F.3d 1268, 1270-71, 1270 n.2 (11th Cir. 2017) (explaining FINRA's basic functions and that the National Association of Securities Dealers was FINRA's prior name).

**B. Kelly fails to state a claim under SEC Rule 10b-5.**

Kelly alleges that FINRA violated SEC Rule 10b-5 when it knowingly made false and misleading statements regarding the MMTLP trading halt and related corporate-action notice. Specifically, he alleges that FINRA falsely suggested that its actions regarding MMTLP were authorized by the SEC and that there would be no trading halt when FINRA already decided it was going to issue one. Kelly relied on these representations when determining "how to act regarding [his] MMTLP holdings" and later was unable to liquidate or transfer the shares. ECF No. 42 at 17-18. FINRA argues that Kelly fails to state a claim for a Rule 10b-5 violation because he does not allege that he purchased or sold MMTLP shares because of FINRA's announcements or actions.

Rule 10b-5 makes it unlawful to "employ any device, scheme, or artifice to defraud," or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The requirement to "establish fraud 'in connection with the purchase or sale of any security' . . . actually contains two separate elements: 'in connection with' and a 'purchase or sale.'" *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 650 (9th Cir. 1988). "The former requires a causal relationship between the fraud and the resulting injury. The latter . . . requires an actual purchase or sale of securities, or a contract to purchase or sell." *Id.* (simplified). Shareholders who "decided not to sell their shares" due to the alleged fraud cannot maintain a Rule 10b-5 action. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-38, 749 (1975).

Kelly does not allege that he purchased, sold, or entered into a contract to purchase or sell MMTLP shares due to FINRA's actions. He already held the shares when FINRA revised the

MMTLP corporate-action notice. The fact that FINRA's actions may have "influenced" other investors' trading decisions about their MMTLP shares does not allow Kelly to bring a Rule 10b-5 claim against FINRA. *See* ECF No. 56 at 27. I therefore dismiss this claim. *See Williams v. Sinclair*, 529 F.2d 1383, 1389 (9th Cir. 1975) (holding that shareholders could not maintain a Rule 10b-5 claim when they held "shares prior to" the alleged fraud and "retained those shares after" the fraud "without making any further purchase or sales").

**C. Kelly does not state a claim that FINRA violated the Exchange Act.**

Kelly next alleges that FINRA violated several provisions of, and rules promulgated under, the Exchange Act. FINRA argues that those provisions do not create a private right of action and Kelly fails to state a claim for them. FINRA is correct, so I dismiss this claim.

The first provision Kelly alleges that FINRA violated is 15 U.S.C. § 78o-3(b)(6), which sets out the purposes behind registering national securities associations. But § 78o-3(b)(6) does not by itself create a private cause of action. *Shahmirzadi v. Smith Barney, Harris Upham & Co.*, 636 F. Supp. 49, 52 (D.D.C. 1985).

The SAC then lists three regulations that FINRA violated: 17 C.F.R. §§ 240.15c2-11, 240.17a-4, and 242.203(b)(3). FINRA argues that these rules apply exclusively to broker-dealers and other market participants and not to self-regulating organizations like FINRA. Kelly now agrees that these regulations do not apply to FINRA, so he fails to state a claim that FINRA violated them. ECF No. 56 at 18.

In his response, Kelly for the first time cites two other provisions of the Exchange Act that FINRA allegedly violated. This argument fails for two reasons. First, a plaintiff cannot amend his complaint through briefing. *Broam v. Bogan,* 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Second, even if I were to consider these allegations as properly pleaded, neither provision creates

a private cause of action. The first new provision Kelly argues FINRA violated is 17 C.F.R. § 240.17a-1, which requires FINRA to preserve certain records. Section 240.17a-1 was promulgated under 15 U.S.C. § 78q(a), and the Supreme Court held that § 78q(a) does not "create a private cause of action in favor of anyone." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979); *Carapico v. Philadelphia Stock Exch.*, No. Civ. A. 93-3066, 1994 WL 50295, at *2 (E.D. Pa. Feb. 14, 1994), *aff'd,* 43 F.3d 1460 (3d Cir. 1994). Next, Kelly cites 15 U.S.C. § 78s(g)(1) to argue that FINRA failed to comply with its own rules. ECF No. 56 at 18. But there is no private right of action against FINRA for violating its own rules. *Kelly*, 2025 WL 2962788, at *4 (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)).

**D. I dismiss Kelly's Fifth Amendment claim for lack of personal jurisdiction**.

Kelly next alleges that FINRA's trading halt violated his procedural due process rights by depriving him of his right to control his securities without sufficient process. Kelly raised this same claim in his previous complaint. ECF No. 7 at 8-9. I dismissed that claim because I lacked personal jurisdiction. *Kelly*, 2025 WL 2962788, at *2-3, 5.

In its motion to dismiss the SAC, FINRA "reserve[d] its argument that the SAC is subject to dismissal because [I] lack personal jurisdiction over FINRA for the reasons discussed" in its motion to dismiss Kelly's previous complaint. ECF No. 47 at 3 n.3. I lack personal jurisdiction over FINRA for Kelly's Fifth Amendment claim for the same reasons I did in his previous complaint. FINRA is not subject to general jurisdiction in Nevada. *Kelly*, 2025 WL 2962788, at *2. Kelly has not pleaded sufficient facts in his SAC that FINRA targeted its actions at Nevada or had minimum contacts with Nevada to establish specific personal jurisdiction. *Id.* at *3. And I dismissed his only claims arising under the Exchange Act, so I may not assert pendent personal

jurisdiction over his Fifth Amendment claim. *Id.* at *5 (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). Even if I could assert pendent personal jurisdiction, I would decline to do so. *Id.* Therefore, I dismiss Kelly's Fifth Amendment claim without prejudice.

**E. I dismiss Kelly's claim for declaratory and injunctive relief.**

Kelly raised a separate claim for declaratory and injunctive relief in his SAC. He requests that I declare that FINRA's conduct regarding MMTLP shares violated the Exchange Act and the relevant SEC rules. And he seeks injunctive relief relating to FINRA's communications of the MMTLP shares, its handling of corporate-action data, and its future trading halts. Because I have dismissed all his other claims, including his claims that FINRA violated the Exchange Act and SEC rules, and because I do not have personal jurisdiction over the constitutional claim, he has no viable underlying claim to support these forms of relief in this case. So I also dismiss this claim.

**F. I decline to give Kelly leave to amend his complaint.**

This is Kelly's third attempt to state a claim against FINRA for its conduct regarding the MMTLP trading halt. He again failed to do so. I therefore decline to give him leave to file a third amended complaint.

**G. I warn Kelly about using generative AI in the future.**

FINRA states that Kelly's opposition to its motion to dismiss contains several nonexistent case citations and quotations that do not appear in Kelly's cited caselaw. I reviewed the citations in the first few pages of Kelly's opposition and found several quotes that did not appear in the cited cases. These false quotes appear on page 2, lines 11-12; page 3, lines 3-4; and page 9, line 20 to page 10, line 5 of Kelly's opposition. ECF No. 56 at 2-3, 9-10.

When a party presents a filing to a court, the party certifies "that to the best of the [party's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b). This imposes an "affirmative duty of investigation . . . as to law . . . before motions are filed." *Golden Eagle Distrib. Corp., v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986). This extends to attorneys and pro se litigants alike. Fed. R. Civ. P. 11(b). "A fake opinion is not existing law, and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Whiting v. City of Athens, Tenn.*, 170 F.4th 455, 461 (6th Cir. Mar. 13, 2026) (quotations omitted).

There has been a rise in fake authority cited in briefs, usually as the result of using generative AI software, like ChatGPT, to draft pleadings. *Chavez-DeRemer v. NAB, LLC*, No. 2:21-CV-00984-JAD-EJY, 2025 WL 2308676, at *3 (D. Nev. Aug. 11, 2025). Generative AI often invents fake cases and legal precedent in its drafting, and using it is no excuse for not verifying the veracity of citations. *See Whiting*, 170 F.4th at 461 ("Citing even a single fake case can be sanctionable because no brief, pleading, motion, or any other paper filed in any court should contain any citations—whether provided by generative AI or any other source—that a lawyer [or pro se party] has not personally read and verified." (simplified)). Citing fake legal authority is not harmless. It wastes the other parties' and the court's resources trying to track down the nonexistent cases. *Id.* at 467 ("Citing fake cases unnecessarily burdens the court and the taxpayers, so courts can and should fine the offending lawyers to reimburse the court for its time." (simplified)). And it "can harm the reputation of judges and courts whose names are

falsely invoked as authors of the bogus opinions and the reputation of a party attributed with fictional conduct." *Id*. at 461-62 (simplified).

Going forward, Kelly is reminded of his duty under Federal Rule of Civil Procedure 11(b)(2) and that citing fake cases drafted by generative AI violates this rule. Failure to comply in the future may result in sanctions, such as an order to pay a penalty into court or nonmonetary sanctions, such as striking claims or defenses. Fed. R. Civ. P. 11(c)(4).

## II. THE PARTIES' MOTIONS FOR JUDICIAL NOTICE

Both sides move for me to take judicial notice of various documents related to FINRA's trade halt of MMTLP shares. Kelly also moves for leave to file a surreply in support of his motion for judicial notice. I looked at all of the attached documents, and I deny both motions for judicial notice because the documents would not change the outcome of this order even if I considered them. None of the documents shows that Kelly purchased, sold, or entered into a contract to purchase or sell MMTLP shares due to FINRA's conduct. Nor do they offer sufficient facts to establish specific personal jurisdiction over FINRA in Nevada. Accordingly, I deny the motions for judicial notice and Kelly's motions for leave to file a surreply as moot.

## III. CONCLUSION

I THEREFORE ORDER that defendant Financial Industry Regulatory Authority's motion to dismiss **(ECF No. 47) is GRANTED**. Plaintiff William Kelly's Fifth Amendment claim is dismissed without prejudice to file it in a court that has jurisdiction over it. All other claims are dismissed with prejudice.

I FURTHER ORDER that FINRA's motion for judicial notice **(ECF No. 48) is DENIED as moot**.

I FURTHER ORDER that Kelly's motion for judicial notice **(ECF No. 55) is DENIED as moot**.

I FURTHER ORDER that Kelly's motions for leave to file a surreply in support of its motion for judicial notice **(ECF Nos. 58, 59) are DENIED as moot**.

I FURTHER ORDER the clerk of court to enter judgment accordingly and to close this case.

DATED this 19th day of August, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE